JAMES L. DAY (WSBA #20474)
THOMAS A. BUFORD (WSBA #52969)
LESLEY BOHLEBER, (WSBA #49150)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Phone: (206) 292-2110
Fax: (206) 292-2104
Email: jday@bskd.com, tbuford@bksd.com,
 lbohleber@bskd.com

ANTHONY A. BONGIORNO (*Pro Hac Vice* Pending)
ERIC D. WOLKOFF (*Pro Hac Vice* Pending)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Phone: (617) 712-7100
Fax: (617) 712-7200
Email: anthonybongiorno@quinnemanuel.com
 ericwolkoff@quinnemanuel.com

SUSHEEL KIRPALANI (*Pro Hac Vice* Pending)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Phone: (212) 849-7200
Fax: (212) 849-7100
Email: susheelkirpalani@quinnemanuel.com

HONORABLE WHITMAN L. HOLT

*Attorneys for Plaintiffs Astria Health, et al.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

In re:

ASTRIA HEALTH, et al.,

Debtors.[1]

Jointly Administered Under:
Lead Case No. 19-01189-WLH11
Chapter 11

---

[1] The Debtors, along with their case numbers, are as follows: Astria Health (19-01189-11), Glacier Canyon, LLC (19-01193-11), Kitchen and Bath Furnishings, LLC (19-01194-11), Oxbow Summit, LLC (19-01195-11), SHC Holdco, LLC (19-01196-11), SHC Medical Center - Toppenish (19-01190-11), SHC Medical Center - Yakima (19-01192-11), Sunnyside Community Hospital Association (19-01191-11), Sunnyside Community Hospital Home Medical Supply, LLC (19-01197-11), Sunnyside Home Health (19-01198-11), Sunnyside Professional Services, LLC (19-01199-11), Yakima Home Care Holdings, LLC (19-01201-11), and Yakima HMA Home Health, LLC (19-01200-11).

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC     -1-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

| | |
|---|---|
| ASTRIA HEALTH, et al., | |
| Plaintiffs, [2] | Adversary No. _____ |
| vs. | **COMPLAINT** |
| CERNER CORPORATION AND CERNER REVWORKS, LLC, | |
| Defendants. | |

Plaintiff Astria Health ("Astria" or the "Reorganized Debtor"), by and through its undersigned attorneys, brings this action to avoid obligations, recover transfers, disallow claims, and otherwise hold Defendants Cerner Corporation and Cerner RevWorks, LLC (collectively "Cerner") accountable for intentional misrepresentations made by Cerner to induce Astria to enter into a multi-million dollar goods and services contract for an electronic health record ("EHR") and billing system that Cerner knew would not function as advertised, if at all. Cerner's faulty EHR and billing and collections platforms failed so spectacularly that they drove Astria, a revered non-profit hospital system in Eastern Washington, into bankruptcy in May 2019.

## NATURE OF THE ACTION

1. Astria is the largest non-profit healthcare system based in Eastern Washington. The Astria system is headquartered in the heart of Yakima Valley, Washington.

---

[2] The Plaintiffs are as follows: Astria Health, SHC Holdco, LLC, SHC Medical Center – Toppenish, SHC Medical Center – Yakima, and Sunnyside Community Hospital Association, (collectively "Astria" or the "Plaintiff").

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

2.    Astria (previously known as "Regional Health" or the "Sunnyside Community Hospital Association") grew from a single hospital operation to three hospitals on September 1, 2017.  On that date, Astria, which had owned Sunnyside Hospital (later renamed Astria Sunnyside Hospital ("Sunnyside")), acquired two additional historic for-profit hospitals from Community Health Systems ("CHS")— Yakima Regional Medical & Cardiac Center, now referred to as Astria Regional Medical Center ("Yakima"), based in Yakima, Washington, and Toppenish Community Hospital, now referred to as Astria Toppenish Hospital ("Toppenish"), based in Toppenish, Washington (the "Transaction").

3.    When the Transaction closed, all three hospitals, Sunnyside, Yakima, and Toppenish joined together to create the Astria healthcare system, then a $240 million-plus per year, non-profit based in, supporting, and supported by people throughout the Yakima Valley.

4.    Yakima was founded in August 1891 in Yakima, Washington when the Sisters of Charity of Providence agreed to take care of sick government workers and residents of Yakima, creating Yakima's first hospital.  Astria was forced to close Yakima on January 13, 2020, due to the cash collection issues caused by Cerner's faulty billing and collections system.

5.    Yakima was a 214-bed hospital that provided a full complement of medical services including the Yakima Valley's only open-heart surgery, advanced imaging, comprehensive robotics, neurosurgery, and a Commission on Accreditation of Rehabilitation Facilities accredited inpatient rehabilitation. The Astria Heart Institute (part of Yakima) was a Level I Cardiac and Level II Stroke center, with a Level III

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC                    -3-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

1  Trauma designation, and a commitment to continuous reinvestment in state-of-the-art

2  technology. Yakima owned 14 clinics with various specialties.

3      6.     Sunnyside, located in Sunnyside, Washington, is a 38-bed critical access

4  hospital. Services offered at Sunnyside include medical, surgical, labor/delivery and

5  nursery care, 24-hour emergency, laboratory, imaging services, physical therapy,

6  rehabilitation, urgent care, oncology, cardiology, and clinics. Members of the

7  Sunnyside medical staff include specialists in emergency medicine, family practice,

8  internal medicine, general surgery, neurosurgery, cardiology, pediatrics,

9  obstetrics/gynecology, orthopedics, otolaryngology, radiology, and inpatient

10  hospitalization. Sunnyside was originally established as Valley Memorial Hospital in

11  1946 and Sunnyside General Hospital in 1962, merging in 1986 as Sunnyside

12  Community Hospital.

13      7.     Toppenish was originally established by a group of residents as Toppenish

14  Community Hospital in 1944.  It is a 78-bed community hospital located in Toppenish,

15  Washington.  It provides a full complement of inpatient and outpatient services,

16  including a 24-hour Emergency Department and Level IV Trauma Services, Intensive

17  Care Unit, 24/7 Inpatient Physicians (Hospitalists), a Family Maternity Center,

18  Inpatient and Outpatient General, OB/GYN and Orthopedic Surgical services.  It also

19  has an Inpatient Psychiatric Unit, a Level 2 Stroke Center, and a Level 2 Cardiac

20  Center.  Toppenish also has a Native American Spiritual Center, which provides a place

21  for Native Americans of all faiths to practice the healing rituals and ceremonies

22  important in their beliefs.

23

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC          -4-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

8. In addition to the three hospitals, Astria also owns non-profit outpatient Astria Health Centers (14 medical clinics and 24 specialty clinics), an Ambulatory Surgical Center, Astria Hearing and Speech, and Astria Home Health and Hospice.

9. Cerner is a Kansas City-based health technology company that markets supposedly comprehensive EHR and billing records software and services solutions to hospitals and other healthcare providers. Cerner touts its billing and collections platform as a tool that becomes an "extension" of a hospital's organization, optimizing financial performance and controlling the cost to collect revenue.

10. Beginning around December 2016, Cerner began to pursue Astria's business. These efforts continued and became more aggressive as Astria moved through the process of acquiring Yakima and Toppenish. As part of these efforts, Cerner made numerous intentional misrepresentations about the capabilities, features, and pricing of its goods and services.

11. On June 30, 2017, in reliance on Cerner's misrepresentations, Astria contracted with Cerner to provide a comprehensive EHR system for Sunnyside, and assuming that the Transaction closed, Toppenish, and Yakima as well (the "Business Agreement"). A copy of the Business Agreement is attached as Exhibit 1.[3]

12. After the Transaction, CHS continued to provide its billing and collections platform to Toppenish and Yakima for one year. Within 6 months of the Transaction, around March 2018, Astria began to evaluate third party vendors for billing and

---

[3] Exhibit 1 will be separately filed under seal.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC    -5-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

collections software and services. One of the vendors Astria evaluated to potentially provide a billing and collection platform was Cerner.

13. On June 6, 2018, in the final stages of their decision, several members of Astria's executive team met with the Mitchell Clark, the president of Cerner's EHR product, CommunityWorks, who was also in charge of its billing and collections platform, called RevWorks. Mr. Clark made material misrepresentations, on which Astria relied, to induce Astria to enter into the RevWorks contract.

14. On June 26, 2018, in reliance on Cerner's misrepresentations, Astria signed a contract with Cerner to provide the RevWorks platform for the three hospitals (the "RevWorks Agreement"). The RevWorks Agreement is attached as Exhibit 2.[4]

15. After signing the RevWorks Agreement, Astria learned of multiple news reports and public lawsuits regarding serious cash collection issues various hospital systems had with RevWorks. Upon information and belief, these serious issues with RevWorks were known by Cerner, and the Cerner executive, on June 6, 2018. Had Cerner told Astria about these issues, Astria would never have contracted with Cerner for the RevWorks product.

16. From the time the rollout began, the Cerner system fundamentally failed to operate correctly. Astria quickly learned that Cerner's systems and services were defective and that Astria did not receive fair value in exchange for entering into the RevWorks Agreement. To the contrary, as a result of issues with RevWorks, Astria suffered a significant and catastrophic decline in cash flow from collections on

---

[4] Exhibit 2 will be separately filed under seal.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

accounts receivable, thereby jeopardizing Astria's ability to continue meeting its obligations to third parties as they came due.

17.     The lack of cash flow due to issues with RevWorks further caused Astria to default or otherwise fall behind on its obligations to lenders and other creditors, which, in turn, constricted its liquidity and caused it to file for Chapter 11 bankruptcy protection.

18.     The issues with Cerner's systems caused Astria hundreds of millions of dollars in damage and harm. Ultimately, the cash collection issues were so severe that Astria Regional Medical Center, a hospital that had existed for 128 years, was forced to close.

## **PARTIES**

19.     Plaintiff Astria Health is a Washington nonprofit corporation with its principal place of business at 1806 Yakima Valley Highway, in Sunnyside, Washington.

20.     Plaintiff Sunnyside Community Hospital Association is a Washington nonprofit corporation with its principal place of business at 1806 Yakima Valley Highway, in Sunnyside, Washington.

21.     Plaintiff SHC Holdco, LLC ("SHC") is a Washington limited liability corporation with its principal place of business at 1806 Yakima Valley Highway, in Sunnyside, Washington. Astria is the sole member of SHC. SHC is, in turn, the sole member of SHC Medical Center – Toppenish d/b/a Astria Toppenish Hospital and SHC Medical Center – Yakima d/b/a Astria Regional Medical Center.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC                    -7-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

21-80005-WLH    Doc 1    Filed 03/22/21    Entered 03/22/21 17:48:08    Pg 7 of 43

22.     Plaintiff SHC Medical Center – Yakima d/b/a Astria Regional Medical Center is a Washington nonprofit corporation with its principal place of business at 1806 Yakima Valley Highway, in Sunnyside, Washington.

23.     Plaintiff SHC Medical Center – Toppenish d/b/a Astria Toppenish Hospital is a Washington nonprofit corporation with its principal place of business at 502 West 4th Avenue in Toppenish, Washington.

24.     Defendant Cerner Corporation is a Delaware corporation with its principal place of business at 2800 Rockcreek Parkway in Kansas City, Missouri.

25.     Defendant Cerner RevWorks, LLC is a Delaware corporation.   Upon information and belief, its principal place of business is at 1025 Creekside Ridge Drive in Roseville, California.

## JURISDICTION, VENUE, AND CHOICE OF LAW

26.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334.

27.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409, as well under 28 U.S.C. § 1391(b), (c), and (d), because Defendants resided, transacted business, were found, or had agents in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District.  All counts of this Complaint are statutorily core matters under 28 U.S.C. § 157(b)(2)(A), (B), (C), (H) and/or (O).  Plaintiff consents to entry of a final order on all claims in this Complaint by this Court.

28.     In Section 6.13 of the Business Agreement, the parties agreed that the contract will be governed by, interpreted, and enforced in accordance with the laws of

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC          -8-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

the State of Washington, excluding Washington's conflict of laws rules that would apply the substantive law of another jurisdiction. The RevWorks Agreement incorporates the Business Agreement by reference.

29. This Court has personal jurisdiction over the nonresident Defendants for the reasons set forth below and, in any event, under Washington's long-arm statute, Wash. Rev. Code § 4.28.185, and Fed. R. Civ. P. 4(k)(1)(a).

## **ADDITIONAL JURISDICTIONAL ALLEGATIONS**

30. On June 30, 2017, Astria (then known as Regional Health), entered into the Business Agreement with Cerner Corporation. On June 26, 2018, Astria entered into the RevWorks Agreement with Cerner RevWorks, LLC.

31. Astria filed for chapter 11 relief under Title 11 of the United States Code (the "Bankruptcy Code") in this Court on May 6, 2019. (Dkt. No. 1). Pursuant to sections 1107 and 1108 of the Bankruptcy Code, Astria was authorized to remain in possession of and operate their assets as a debtor in possession (Astria, together with its debtor affiliates, the "Debtors").

32. Cerner voluntarily submitted to the personal jurisdiction of this Court by filing proof of claim number 364-1 against the Debtors on August 1, 2019. Cerner further availed itself of the Court's jurisdiction by filing a motion to compel payment of an administrative expense claim against the Debtors on July 22, 2020 (Dkt. No. 1573).

33. Cerner also filed a motion for a determination that arbitration is required on November 13, 2020 (Dkt. No. 1995). On December 10, 2020, the Court entered a minute order denying Cerner's motion to compel arbitration of the disputes between the Debtors, on the one hand, and Cerner on the other (Dkt. No. 2111).

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC     -9-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

34.     The Court held a hearing to consider confirmation of the Debtors' plan of reorganization on December 18, 21, and 23, 2020.  Pursuant to the Modified Second Amended Plan of Reorganization, dated December 22, 2020 (modifying the Second Amended Plan of Reorganization (Dkt. No. 1986), as modified, the "Plan"), filed by the Debtors (Dkt. No. 2196) and approved by order of the Court on December 23, 2020 (Dkt. No. 2217) (the "Confirmation Order"), the Reorganized Debtors were vested with all property of the Debtors.  Included among such property were executory contracts assumed by the Debtors and claims and causes of action against Cerner (defined as "Vendor Claims" in the Plan).  Pursuant to the Plan, the capital structure, including the ownership, of the Debtors changed.  The Reorganized Debtors are now owned by AH System and are responsible for carrying out certain provisions of the Plan (Dkt. No. 2217).

35.     Cerner is the counterparty to both an assumed contract with the Reorganized Debtors, for which the cure cost and alleged entitlement to payment of administrative expenses remains in dispute, and to any claims that may be asserted by Cerner in connection with a contract rejected by the Debtors (to the extent not previously terminated).  Pursuant to the Confirmation Order, the Court excused Cerner from filing a claim against the Debtors in respect of any damages arising from rejection, and ordered that all litigation between the parties should take place in this one proceeding.

36.     The Confirmation Order further provided that the Reorganized Debtors would have a period of time in which to commence this adversary proceeding.  By stipulations dated, January 20, 2021 (Dkt. No. 2269, Order at Dkt. No. 2275) and

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC                    -10-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

February 16, 2021 (Dkt. No. 2329), the Reorganized Debtors and Cerner ultimately agreed the adversary proceeding may be commenced by no later than March 22, 2021. The Court approved the latest stipulation on February 17, 2021 (Dkt. No. 2339).

## FACTUAL BACKGROUND

### Electronic Health Records

37.     Since 2006, the United States Department of Health and Human Services has been promulgating regulations with the intent of transitioning all healthcare providers to electronic medical records systems.  Beginning in 2015, hospitals that failed to be "meaningful EHR [electronic health records] user[s]" would face increasing reductions in the payments they received from the government under Medicare, Medicaid, and other federal programs. *See, e.g.*, 42 U.S.C. § 1395ww(b)(3)(B)(ix)(I). Because of these meaningful use regulations, hospitals, including those owned by Astria, were essentially required to hire companies like Cerner to implement EHR systems.

### Cerner's Fraudulent Misrepresentations

38.     Beginning in December 2016, Astria started to evaluate EHR providers, including Cerner.  This process accelerated when Sunnyside formally began the process of acquiring Yakima and Toppenish after initiating a Washington State Department of Health Certification of Need on April 17, 2017.

39.     Cerner aggressively pursued Astria's business.  Between December 2016 and June 2017, Cerner repeatedly misrepresented its products' capabilities and the proficiency of its employees, in order to induce Astria to pick it as its sole EHR provider after the Transaction.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC     -11-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

40.    For example, in a mid-April 2017 presentation made by a Cerner CommunityWorks Client Executive to Astria executives, Cerner misrepresented its products as comprising "A Truly Integrated System," wherein its EHR would include "Prescriptions, Patient record[s], Clinical workflows, [and] Revenue cycle." It also falsely described its "Solutions & Services" as "Comprehensive," which included "Enterprise Analytics & Device Integration" and "Revenue Cycle." Specifically, it described its Revenue Cycle Management solution as a "single health-information system" that would increase net revenue and cash collections and decrease Astria's accounts receivable over 90 days, discharged not finally coded days in accounts receivable, and the cost of cash collection.

41.    As another example, in a proposal dated May 10, 2017, Cerner stated that its EHR and "Revenue Cycle Applications" software "fully integrates clinical data with the appropriate financial information to manage patient accounting across the entire continuum of care." As Astria would later learn, this statement was false—Cerner's own EHR system did not fully or properly integrate with Cerner's own RevWorks platform.

42.    Cerner also assured Astria that it would provide comprehensive support through its Application Management Services (AMS). For example, in a presentation shared with Astria executives on May 12, 2017, Cerner outlined the four levels of its CommunityWorks Support Structure, and listed Cerner's responsibilities for "Incident Management" as including "24x7x365 – After Hours, Weekends, Holidays" support and "Troubleshoot & Repair."

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC         -12-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

43.     Throughout its aggressive sales pitch, Cerner cherry-picked success stories and statistics, while omitting any mention of its many dissatisfied customers.   For example, on May 24, 2017, a Cerner CommunityWorks Client Executive shared with an Astria executive a "value estimate based on success [they] have seen from other clients" because Cerner "felt it would be beneficial to use proof points as oppose [sic] to just throwing out numbers/estimates."   The statistics presented in this document suggested that, based on the experience of Cerner's other customers, Astria could expect improvements in charge capture as soon as one month after go live, a reduction in its accounts receivable, equating to millions of dollars in savings, and decreased A/R across ambulatory clinics in a one year time period.   Despite the fact that Cerner knew other customers were unhappy, experiencing technical challenges and financial losses, Cerner presented only the upside Astria should expect if it chose to contract with Cerner, and it omitted other customers' complaints and issues with Cerner's products. In this same document, Cerner also represented that Astria would "[s]ave up to 80% on cost spent maintaining IT system with savings up to $6M over 5 years," based on "Cerner AMS savings estimate tool."

44.     On June 30, 2017, Astria (then known as Regional Health) signed the Business Agreement with Cerner, which contemplated that the Transaction would close later that year and that Cerner would provide its EHR software and services to Sunnyside, Toppenish and Yakima, as well as other facilities in the Astria system.

45.     On September 1, 2017, the Transaction closed and the Astria non-profit system was formed.   CHS, the prior for-profit owner of Toppenish and Yakima, offered to continue to provide a billing and collections platform for the Toppenish and Yakima

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

hospitals for one year.  In March 2018, six months into the acquisition, it became clear that CHS was not going to provide billing and collection systems for Astria beyond the one year cutoff, so Astria needed to find another provider for its billing and collection system, separate and apart from its EHR system.

46.     Around that time, Astria began to evaluate multiple vendors that could provide a centralized billing and collections system for Astria to use across its hospital system.

47.     Cerner claimed in multiple presentations that RevWorks would improve Astria's billing and collection process.  For example, in a March 13, 2018 presentation, Cerner claimed RevWorks would "optimize financial performance," "control [Astria's] cost to collect," "increase yield," "accelerate cash," and "decrease cost."

48.     In Cerner's "Standard Scope" document, shared multiple times in March and April 2018, Cerner misrepresented that its RevWorks billing and collection platform (otherwise known as revenue cycle management or "RCM") would "[r]eview and research all rejections and denials with dates of service" once it went live, and that it would perform this accounts receivable management service in a timely manner ("[d]aily"). This same document also misrepresented that the RevWorks platform would "[e]dit and resubmit denied and rejected claims" "[d]aily."  All of this was to be done, according to Cerner, by "trained medical billing specialists."

49.     Cerner also repeatedly touted its RevWorks service's integration with its EHR platform.  It claimed that it could quickly set up RevWorks and that clinical patient data would seamlessly transfer from its EHR solution to RevWorks for claims processing.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC                    -14-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

21-80005-WLH    Doc 1    Filed 03/22/21    Entered 03/22/21 17:48:08    Pg 14 of 43

50. For example, on June 20, 2018, a Cerner CommunityWorks executive sent Astria a document (the "June 20th Document") that argued that Astria should use RevWorks rather than another third party vendor for billing and collections. It contains a number of misstatements regarding RevWorks' ability to integrate with Cerner's CommunityWorks EHR system. For example, the June 20th Document states, "Our operational experience with CommunityWorks hospitals along with our ability to optimize the Cerner Patient Accounting solution will *immediately* drive efficiency in the revenue cycle." (emphasis added). Furthermore, the document states that "having Cerner as your technology provider allows for a *quick and easy integration* into [its] RCM services." (emphasis added). Cerner also wrote that RevWorks "creates a *seamless and integrated* revenue process on Astria Healthcare CommunityWorks system, improving both patient and physician satisfaction while driving loyalty and quality in brand name." (emphasis added).

51. In contrast, if Astria chose to use another vendor, Cerner predicted a parade of horribles. The June 20th Document questioned how a third party vendor could possibly "figure out the technical and operational components" of integrating with Cerner CommunityWorks by Astria's required deadline. Cerner also claimed that Astria would lose functionality if it went with another vendor. The month prior, on May 25, 2018, a Cerner executive emailed Astria, threatening that if Astria decided to go with another billing and collections vendor, Cerner would "immediately halt and push both June and August go-lives." Cerner further argued that involving a third party vendor would require a "6 month project consisting of multiple rounds of testing." Cerner's statements were misleading and overstated. In the height of irony, when

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

Cerner's RevWorks system failed, it was Cerner that ultimately recommended that Astria hire another billing and collections vendor to clean up the mess Cerner had created.

52.     As described below, Astria's RevWorks implementation was far from being immediate, quick, easy, seamless, or integrated and Cerner's employees were anything but specialists. RevWorks was a highly manual, laborious and flawed system. Cerner knew of RevWorks' failures from the experiences of other customers, a fact that it deliberately withheld.

53.     Indeed, as part of its marketing effort, senior Cerner officials made statements to senior Astria officials denying any problems with RevWorks. Those comments were made in response to direct questions from Astria based on a public report of such a problem.

54.     Specifically, on June 6, 2018, in the final stages of their decision, several members of Astria's executive team, including Astria's Chief Executive Officer, met with Mitchell Clark, Cerner's President of CommunityWorks, who was in charge of Cerner's CommunityWorks EHR platform and RevWorks. Astria's executives were concerned about a recent news article that stated that another hospital system using RevWorks was facing significant cash collection issues because of flaws in the RevWorks platform. Mr. Clark told Astria that the issue that hospital was facing was a one-off, that those issues do not otherwise happen with RevWorks, and that Cerner had fixed the issue for the hospital. He also assured the Astria executives that the issue would not happen to Astria.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC          -16-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

21-80005-WLH    Doc 1    Filed 03/22/21    Entered 03/22/21 17:48:08    Pg 16 of 43

55. After the meeting, Cerner went into damage control. The very next day, Mr. Clark followed up with Astria via email, underscoring that RevWorks combined with the CommunityWorks EHR platform would allow Cerner to have an "end to end responsibility of the software solution and the business offices services." He also wrote that using RevWorks would allow Cerner to "not only best optimize the software but also direct and control the process to have the best opportunity to exceed cash collections targets." Mr. Clark made these statements despite the fact that they were untrue—Cerner knew that there were serious issues with the integration between RevWorks and CommunityWorks and that, in reality, far from being a fully integrated system, a significant amount of manual processing was necessary to translate clinical data from CommunityWorks into claims that could be successfully processed through the RevWorks platform.

56. On June 8, 2018, as further follow up from this meeting, a Director in Cerner's CommunityWorks division emailed Astria executives, stating that, if Astria signed the RevWorks Agreement, Cerner would work "side by side with Astria, ensuring that [Astria has] a strong financial position" to "provide the outstanding patient service that Astria is known for having." In an attempt to assuage Astria's concerns and further conceal the very significant issues other clients were having with RevWorks, the Cerner executive modified the contract to "align a RevWorks Client Owner to Astria." This person would "provide constant monitoring as well as monthly status meetings that will be onsite as needed." Additionally, Cerner stated that it "expanded" the guaranties and warranties in the RevWorks Agreement, "to help with your concerns around cash flow."

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC          -17-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

21-80005-WLH    Doc 1    Filed 03/22/21    Entered 03/22/21 17:48:08    Pg 17 of 43

57. In reliance on Cerner's assurances and misstatements, Astria signed the RevWorks Agreement, dated June 26, 2018. After Astria signed the RevWorks Agreement, Astria's executives learned that, despite Cerner's representations to the contrary, the problems Astria had learned of were not a "one-off" issue. In fact, prior to June 2018, numerous clients had sued Cerner or otherwise suffered reported losses due to Cerner's faulty EHR and RevWorks platforms. For instance, Astria learned that hospitals in different systems across Michigan, Wisconsin, Texas, California, and New York had all suffered serious issues with Cerner's billing and collections platform, resulting in millions of dollars of losses for each system. The following table sets forth some of the information that was known to Cerner (and, upon information and belief, Mitchell Clark) on June 6, 2018:

### *News Articles Related to Issues with Cerner*

| Article Date(s) | Hospital | Location | Notes |
|---|---|---|---|
| March 14, 2014 | Trinity Health | North Dakota | Following April 2012 claims that Cerner's patient accounting solution did not work, in December 2013, the parties entered into arbitration and the article states that the parties reached a $106 million settlement. |
| September 22-October 5, 2017 | Agnesian Healthcare | Wisconsin | Cerner touted revenue cycle successes that were misleading and not representative of other health care systems' experiences. Agnesian experienced issues with Cerner's software in 2015. Agnesian believed Cerner's account that the problems had been fixed in 2016, but later discovered, in 2017, more coding errors that had caused write-offs of reimbursable charges. Agnesian filed a Complaint on September 15, 2017. |

QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

## News Articles Related to Issues with Cerner

| Article Date(s) | Hospital | Location | Notes |
|---|---|---|---|
| October 30, 2017 | Medical Center Health System | Texas | MCHS went live with Cerner's system in April 2017. A consultant's report, issued in the fall of that same year showed several billing issues following the launch of Cerner's billing and collections system. |
| April 20, 2018 | Tulare Regional Medical Center | California | Tulare implemented the Cerner billing and collections system in 2016, and it caused a "$1M month over month shortfall in cash," which led to the hospital's inability to pay its bills. For example, Tulare's billing and collections consultant had to follow up on unpaid invoices from March to November 2016 in August 2017. Collections were also delayed due to required manual billing and collections workarounds. |
| July 23, 2018 | Banner Health | Arizona | Banner filed numerous medical error reports following the 2017 roll-out of Cerner's software. In October 2017, the hospitals' occurrence log shows numerous incidents of such errors as a result of switching to Cerner. Incidents included "inability to reliably deliver medications, order tests, and care for critically ill patients," as well as "multiple computer/printer glitches" and issues that incorrectly listed medical residents as the physicians in charge. |

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC

-19-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

| News Articles Related to Issues with Cerner | | | |
|---|---|---|---|
| Article Date(s) | Hospital | Location | Notes |
| March 20, 2019 | Glens Falls Hospital | New York | Glens Falls implemented Cerner's billing and collections system in November 2016, and soon after the hospital failed to collect $12.6 million in bills due to issues with Cerner, which was a 31% increase compared to the prior year. In 2017, the billing system failed to send out approximately $38 million in bills in a timely manner. Audited financial statements from 2012-2017 and IRS filings from 2014-2017 showed that Glens Falls' losses illustrated that Cerner was responsible. |

58. Cerner also repeatedly overstated the expertise of the staff it would assign to work on RevWorks for Astria. For example, during a March 13, 2018 presentation, a Cerner sales executive told Astria that "once a physician enters charges into the EHR system," it had a "team of specialists" that would "take over all revenue cycle operations to ensure maximum results." It also bragged that it would staff "experts in revenue cycle process" who engaged in "an ongoing training program creating an environment of continuous improvement." As described below, after signing the contract with Cerner, Astria later learned that, far from using experts, Cerner was outsourcing much of the claims and collection process to a third party staffing company overseas, which, upon information and belief, lacked revenue cycle expertise.

**The Agreements with Cerner**

59. The June 30, 2017 Business Agreement, which is a contract for goods and services, states that Regional Health (which was later renamed Astria) "wishes to implement a System pursuant to the terms and conditions of this Agreement" and that

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC          -20-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

"Cerner agrees to provide and assist in implementing certain Licensed Software, Sublicensed Software and Equipment."  Cerner System Schedule No. 1 is an 89 page document that is part of the Business Agreement and details the products and services Astria agreed to purchase and Cerner agreed to provide in a "Solution Description." The primary solution Cerner agreed to provide to Astria was its CommunityWorks suite of software and services, part of which included the CommunityWorks Revenue Cycle suite of software.

60.    Section 2.2 states that Cerner agrees to provide "Support services" which are set forth in Exhibit A.  The Support services include Cerner's commitment to obtain "[k]nowledge of client technical environment, supporting an efficient and effective problem resolution process..."

61.    Cerner System Schedule No. 1 contains further detail on the software and services Cerner agreed to provide.  For instance, on page 5, the System Schedule states that Astria will pay a fixed multimillion dollar fee for Cerner's system over time (the "Fee Fixed Technology Fee").  Pages 5 through 6 further set forth milestones associated with those fees.  One of those milestones is that, post conversion to Cerner, Sunnyside's net AR days will ultimately return to within 20% of the pre-Cerner baseline.

62.    Page 10 of System Schedule No. 1 also states that Cerner will provide its "CommunityWorks Revenue Cycle Suite Acute" solution, which includes patient accounting, among other software functionality.

63.    As part of System Schedule No. 1, Cerner also agreed to provide "Application Management Services" which were comprehensive information

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC                    -21-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

21-80005-WLH    Doc 1    Filed 03/22/21    Entered 03/22/21 17:48:08    Pg 21 of 43

technology support through which Cerner would address technical issues with its services and software.

64.  The Business Agreement also includes warranties, including a "Functionality Warranty" at Section 5.1 that states that Cerner's software will, without "Material Error", "perform the functions" set forth in the contract. A "Material Error" is defined as "an error that materially, adversely affects operation of the entire System or that creates a serious loss of functionality important in the daily operation of a single module and for which a work around is not available." Furthermore, Section 5.2 includes a "Services Warranty" that states that Cerner will perform the services in a professional manner in accordance with the "Solution Description."

65.  The June 26, 2018 RevWorks Agreement between Astria (then known as Regional Health) and Cerner RevWorks LLC, a division of Cerner, sets forth at pages 3-4 "Revenue Cycle Management services" that Cerner will provide Astria using software described as a "Revenue Cycle Management solution." The tasks Cerner will perform include "Claim generation and submission," "Accounts receivable (A/R) follow-up and management," "Denial management," "Submission of appeals," "Remit and cash posting," and "Key Performance Indicator (KPI) reporting." In order to complete these tasks, Cerner is supposed to work with Astria to "obtain [Astria's] information and workflow definitions" to perform the revenue cycle workflow functions necessary to start performing billing and collection functions for Astria's hospitals.

66.  Page 3 of the RevWorks Agreement states that Cerner will "provide trained medical billing specialists to provide Services" for Astria. Additionally, it will

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC                    -22-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

adhere to Astria's procedures for administrative adjustments and write-offs and late charge processing.

67. In exchange for these billing and collection services, on page 1, the RevWorks Agreement states that Astria will pay Cerner a percentage of its total net receipts each month in arrears (the "RevWorks Monthly Fee").

68. The RevWorks Agreement also contains guaranties and warranties. On page 2, the RevWorks Agreement contains a "Net Collections Guarantee"—Cerner guaranteed that net collections under RevWorks would be equal to 90% of the "Baseline Average Net Collections" percentage after 180 days of the RevWorks go-live. The Baseline Average Net Collections is a calculation of Astria's total net receipts divided by total net charges over the 6 month period prior to deploying RevWorks. Basically, Cerner guarantees that its RevWorks platform will collect revenue at a level within 90% of Astria's prior collection system. Furthermore, pursuant to the guarantee, if 10 percent or more of all rejected or denied claims are errors attributable primarily to the Cerner software, Astria "may submit a notice to Cerner," and Cerner is supposed to "engage a team of Cerner revue cycle experts, at Cerner's expense, to investigate and identify issues regarding Client's revenue cycle performance…and will work with [Astria] until such time as the Cerner software issues preventing staff from achieving less than or equal to 10% of rejected or denied claims are resolved."

69. On page 10, the RevWorks Agreement also includes an "Accounts Receivable Warranty." This warranty is triggered if a key metric, net days in accounts receivable, increases under RevWorks more than 10 percent over Astria's average net

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC     -23-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

21-80005-WLH    Doc 1    Filed 03/22/21    Entered 03/22/21 17:48:08    Pg 23 of 43

days in accounts receivable for the 18 months prior to the RevWorks go-live (the "Warranty Trigger Level"). Upon notice of such a failure, Cerner is supposed to "engage a team of Cerner revenue cycle experts, at Cerner's expense, to investigate and identify issues regarding [Astria's] revenue cycle performance." It must also "provide software coding or other changes to remedy mutually agreed upon issues with the Cerner Revenue Cycle solution, and will work with [Astria] until" net days in accounts receivable is equal to or less than the Warranty Trigger Level.

70.     When the Warranty Trigger Level is exceeded, Section 2.2 of the Accounts Receivable Warranty allows Astria to defer payment of the RevWorks Monthly Fee and the Business Agreement's Fee Fixed Technology Fee, and receive a "Warranty Payment," as described in the agreement.

71.     The import of the Net Collections Guarantee and the Accounts Receivable Warranty was that, even in a worst case scenario, RevWorks' billing and collection system was to perform within 90% of Astria's prior system. And, in fact, Cerner represented that RevWorks would outperform Astria's prior billing and collection system.

### Cerner's Failure to Deliver on its Promises

72.     After Astria signed the Business Agreement in June 2017, Cerner began to build the EHR program at Sunnyside. This build took about one year and the CommunityWorks EHR and RevWorks platforms went live at Sunnyside in June 2018. The Cerner EHR system and RevWorks platform went live at Toppenish and Yakima in August 2018.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC                    -24-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

73.     The Cerner billing team's responsibilities included follow-up related to insurance claims, including correcting any claims that had errors, ensuring that claims were submitted to insurance companies in a timely manner, and following up with insurance companies when claims were denied.   Cerner was also contractually responsible for posting payments to patient accounts and making sure that payments in the patient accounting software reconciled with deposits, as well as the patient payment collection process, the patient refunds process, and the collection agency process.

74.     When RevWorks went live, the three hospitals immediately began to have serious cash collections issues.   Prior to the conversion, collections were 97% of net revenue.   After the conversion to RevWorks, collections dropped to 54% of net revenue.

75.     After the go-live date, Astria learned of numerous problems with the billing and collections platform.   For example, Cerner built the billing rules for RevWorks exclusively around Sunnyside, but Sunnyside had cost-based billing, whereas Toppenish and Yakima used diagnosis-related group (DRG) billing systems. As a result, Toppenish and Yakima's claims to government payors were rejected, resulting in significant cash shortfalls at each hospital.

76.     In addition, RevWorks did not fully integrate with Cerner's EHR solution and the two programs struggled to communicate with each other.   For instance, clinical procedures entered into the EHR platform were not properly mapped within the RevWorks system to the relevant charge, which caused claims to be denied.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC                          -25-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

21-80005-WLH    Doc 1    Filed 03/22/21    Entered 03/22/21 17:48:08    Pg 25 of 43

77. By January 2019, RevWorks was causing Astria significant, multimillion dollar cash collection issues. RevWorks failed to meet either the Net Collections Guarantee or the Accounts Receivable Warranty at any point in time.

78. Astria learned that the RevWorks platform was not processing claims correctly, accurately communicating with the CommunityWorks EHR product, or promptly identifying claims that contained errors, and the Cerner team was unable to follow-up in a timely manner with insurance companies and other payors when claims were denied. Payment posting was highly manual, instead of automated, and a multimillion dollar backlog of unposted cash began to build. As a result, Cerner was unable to manage and follow-up on Astria's growing accounts receivables and there were times when Astria could not even tell patients whether it had received their or their insurer's payments. Astria elevated the many issues it was facing to Cerner on numerous occasions and continued to learn from Cerner of more and more problems with the RevWorks platform.

79. For example, on January 4, 2019, Astria's Chief Financial Officer and others had a telephone conference with Cerner. The group discussed the fact that RevWorks' supposedly automated processes were not working—cash needed to be manually posted to Astria's financial systems. Despite the importance of timely posting cash, a multimillion dollar backlog of unposted cash was building. Astria requested that Cerner provide cash projections for the next few months, but Cerner was reluctant to commit to provide such projections—particularly given the issues it was facing with the RevWorks platform. Cerner promised to increase staffing to assist with the manual posting issues.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC    -26-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

21-80005-WLH    Doc 1    Filed 03/22/21    Entered 03/22/21 17:48:08    Pg 26 of 43

80.    On January 30, 2019, Astria spoke with representatives from Cerner on a teleconference.  Astria and Cerner discussed that, due to RevWorks, Astria had a growing backlog of unposted cash—at that point it was approximately $16.5 million.  Due to the state of RevWorks' records, a full reconciliation of deposits was not possible and Cerner's team continued to discover more and more unposted claims.  Due to all of the manual work involved, Cerner committed to double its team from 6 to 12 full time employees.  However, at that point, Cerner's management anticipated that it would take more than 20 days to post all of the cash.  Furthermore, due to RevWorks' inability to properly process claims, more than 30 days of Astria's revenue was tied up in claims denials.

81.    On February 4, 2019, Astria again spoke with Cerner.  Astria underscored the fact that, due to RevWorks, it had experienced an unexpected $30 million cash shortfall since the go-live.  On average, it took 25 days (almost a full month) for each claim to be reviewed by someone from Cerner.  Cerner said its goal was to "touch" every claim within 14 days, which was still an unacceptable delay.

82.    On February 21, 2019, Astria and Cerner management spoke on a teleconference.  Astria's management asked for a productivity report related to billing and collections.  Cerner said that no "single" productivity report was available.  It admitted that instead of using trained Cerner medical billing specialists, it was having many claims processed by an "off-shore" partner.  Astria learned of this because Cerner admitted that in order to provide a productivity report, it would need to combine its own reports with those from the "off-shore" partner.  Additionally, far from the goal of 90% clean claims, only 75% of claims generated by RevWorks were without defects.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC          -27-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

To even achieve that percentage, Cerner admitted that every claim needed to be manually reviewed before it was released. Cerner did not know how long it was taking to process these claims on average and had no anticipated date by which the RevWorks system would be able to handle the claims automatically. Cerner also told Astria that there were more than 20,000 accounts that it knew had paid cash that was not yet posted to the accounts receivable system. Although it believed the number was more than 20,000 accounts, it did not even know exactly how many accounts were affected.

83. On February 25, 2019, Astria and Cerner spoke again, but no member of senior management from Cerner attended the call. Cerner admitted that it was still working on a number of backlogged issues. For instance, the cash posting backlog remained at approximately $18 million.

84. During a February 27, 2019 call, in a telling admission of the failings of RevWorks, a Cerner executive offered to purchase some of Astria's outstanding accounts receivables, but did not provide specifics or a dollar amount.

85. On March 18, 2019, Astria attended an in-person meeting in Kansas City with Cerner. During the meeting, the Cerner team was forced to admit that "this system RevWorks is largely a manual process; [it is] not state of art." Astria then learned that RevWorks does not have a contract management function. Meaning, if Astria received a payment from a payor, such as an insurer, RevWorks could not compare the payment against Astria's payor contracts to determine whether the payment was in the correct amount. Because of this lack of functionality, there was no way to know whether follow-up associated with the payment was necessary. Furthermore, Cerner and Astria discussed a number of serious issues with RevWorks

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC          -28-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

21-80005-WLH    Doc 1    Filed 03/22/21    Entered 03/22/21 17:48:08    Pg 28 of 43

that were causing claims to be denied. Towards the end of the meeting, Cerner offered to hire an outsourced firm at their cost for a period of time to remediate all of the issues with RevWorks. Another vendor Astria had previously considered for a billing and collections platform was mentioned, and Cerner suggested that it would pay for Astria to hire that vendor to help.

86. On March 28, 2019, Astria and Cerner had another call to discuss the continuing issues with RevWorks. During that call, Astria and Cerner discussed the fact that RevWorks' collection rate was only 21 percent. Self-pay collections at Sunnyside which had been approximately $1 million a month pre-conversation declined by at least 80%. During an April 5, 2019 follow-up call with Cerner, it became clear that the self-pay collection system was not tested prior to go-live because it was not considered a priority by the Cerner team. As a result, self-pay collections was identified as yet another area requiring an entirely manual review.

87. As of September 2020, RevWorks was still making serious, inexcusable, errors that should have been corrected before go-live. Astria continued to work with Cerner to hunt for them all. For example, on September 30, 2020, a Cerner programmer acknowledged that cash from a hospital cafeteria was getting routed to patient accounts receivables.

88. These are just some of the communications between Astria and Cerner that detail the many serious problems caused by RevWorks and the notice that Cerner had of these issues. The problems with RevWorks continued throughout 2020, resulting in catastrophic cash flow problems for Astria. Throughout this time, Cerner failed to follow-up on accounts receivable issues and cash posting issues. Astria also

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC                    -29-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

experienced unacceptably high claims denial rates, and Cerner failed to properly address claims denials in a timely manner.

### Astria's Ensuing Insolvency and Damages

89.     Due to the implementation of the EHR system and the shortfall in cash collections, Astria lost so much money that it was unable to purchase basic supplies, and it had to decrease the number of procedures within its healthcare system, which, in turn, resulted in an even further decrease in revenues.

90.     Astria also lost providers and services due to the lack of cash. Volumes dropped, which resulted in additional providers and staff quitting. For example, Astria lost a rehabilitation provider and a skilled oncologist, which resulted in a more than ten million dollar decline in yearly net revenues. Astria was also required to replace departed staff with agency personnel at a multimillion dollar yearly cost.

91.     Astria's lack of cash flow, due to issues with RevWorks, caused it to default or otherwise fall behind on its obligations to lenders and creditors, which significantly limited its liquidity and, in turn, caused Astria to have to file for chapter 11 bankruptcy protections on May 6, 2019. Ultimately, in January 2020, due to cash collection issues caused by RevWorks, Astria was forced to close Astria Regional Medical Center, a hospital that had existed and provided health care services to the surrounding communities for 128 years. Astria has suffered damages totaling hundreds of millions of dollars as a result of Cerner's misrepresentations and inability and refusal to live up to its promises.

92.     In addition, the problems with the Cerner system will continue to damage Astria in ways that cannot yet be quantified.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC                    -30-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

21-80005-WLH    Doc 1    Filed 03/22/21    Entered 03/22/21 17:48:08    Pg 30 of 43

# COUNT I

## FRAUD IN THE INDUCEMENT

### (Against All Defendants)

93.     Astria incorporates the preceding paragraphs by reference.

94.     As set forth in detail above, Cerner made repeated representations regarding the functions, capabilities, and performance of its systems.

95.     As described in paragraphs 38 through 58, Cerner's representations of material fact were false and known by Cerner to be false at the time they were made, or were made recklessly without knowledge concerning the representations.

96.     For example, during a mid-April 2017 presentation by a Cerner CommunityWorks Client Executive to Astria executives, Cerner misrepresented its products as comprising "A Truly Integrated System," wherein its EHR would include "Prescriptions, Patient record[s], Clinical workflows, [and] Revenue cycle."  Cerner also falsely described its Revenue Cycle Management, as a "single health-information system," that would increase net revenue and cash collections and decrease Astria's accounts receivable over 90 days, discharged not finally coded days in accounts receivable and the cost of cash collection.

97.     As another example, in a proposal dated May 10, 2017, Cerner stated that its EHR and "Revenue Cycle Applications" software "fully integrates clinical data with the appropriate financial information to manage patient accounting across the entire continuum of care."  As Astria would later learn, this statement was false—Cerner's own EHR system did not fully or properly integrate with Cerner's own RevWorks platform.

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

98.     As set forth in detail above, Cerner also repeatedly cherry-picked success stories, suggesting its EHR and billing and collections software functioned as advertised, while omitting references to its many dissatisfied customers.

99.     Furthermore, on June 6, 2018, Astria met with Cerner's President of CommunityWorks and RevWorks.  When asked specifically about a recent news article that stated that another hospital system using RevWorks was facing significant cash collection issues because of flaws in the RevWorks platform, Cerner told Astria that the issue that hospital was facing was a one-off, that those issues do not otherwise happen with RevWorks, and that Cerner had fixed the issue for the hospital.  Cerner also assured the Astria executives that the issue would not happen to Astria.  However, far from being a one-off problem, Cerner (and, upon information and belief, Cerner's President of CommunityWorks and RevWorks, Mitchell Clark) knew that there were serious issues with the RevWorks platform, which had manifested themselves at multiple hospital systems.  Cerner (and, upon information and belief, Mitchell Clark) knew it had already faced multiple multimillion dollar lawsuits associated with its flawed RevWorks platform and was well aware that RevWorks was deeply flawed, highly manual, and did not work properly.

100.    Cerner made these misrepresentations to induce Astria to enter into the Business Agreement and the RevWorks Agreement, which Astria did on June 30, 2017 and June 26, 2018 respectively.

101.    Astria did not know these representations were false when made, and reasonably relied, had a right to rely, and acted upon them.  It would not have entered

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

1    into either the Business Agreement or the RevWorks Agreement had it known the truth

2    about Cerner's representations.

3        102.   As a result of these misrepresentations and Astria's reliance on the same,

4    Astria has sustained and continues to sustain the substantial damages set forth herein,

5    and to be further determined at trial.

## COUNT II

## NEGLIGENT MISREPRESENTATION

### (Against All Defendants)

9        103.   Astria incorporates the preceding paragraphs by reference.

10       104.   Acting in the course of its business, Cerner supplied false information—as

11    described in paragraphs 38 through 58, for example—for the guidance of Astria in its

12    business transaction, specifically in expanding and continuing with the Business

13    Agreement and entering into the RevWorks Agreement.

14       105.   This information was false because RevWorks was not "seamless and

15    integrated" with CommunityWorks and it involved highly manual processes.

16    Additionally, Cerner overstated the expertise of the staff it would assign to work on

17    RevWorks for Astria. Instead of using a Cerner trained "team of specialists," as it

18    promised, it outsourced much of the claims and collection process to an overseas

19    staffing company. Senior Cerner officials also made statements to senior Astria

20    officials denying any problems with RevWorks. Those comments were made in

21    response to direct questions from Astria based on public reports of such problems.

22       106.   Cerner failed to exercise reasonable care in obtaining and communicating

23    this information to Astria.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC     -33-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

107. Astria reasonably relied upon the information Cerner provided, and Cerner knew that Astria was relying upon this information to distinguish RevWorks from other billing and collections options in entering into the RevWorks Agreement and expanding and continuing with the Business Agreement.

108. As a result of these misrepresentations and Astria's reliance on the same, Astria has suffered significant damages.

**COUNT III**

**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT, R.C.W. § 19.86, ET SEQ.**

**(Against All Defendants)**

109. Astria incorporates the preceding paragraphs by reference.

110. Astria is a "person" as defined in R.C.W. § 19.86.010(1) and is therefore protected by the Washington Consumer Protection Act, R.C.W. § 19.86, et seq., which prohibited Cerner from using unfair or deceptive acts or practices in trade or commerce that impacts a public interest in Washington.

111. In fraudulently inducing Astria to enter into the RevWorks Agreement, Cerner and engaged in unfair or deceptive acts or practices affecting the people and the economy, and therefore trade or commerce, in Washington. Cerner's actions impacted a public interest because they targeted and led to the bankruptcy of a non-profit hospital system that provided critical services to the community in Yakima Valley, Washington, described in paragraphs 4 through 8.

112. Cerner's acts or practices were unfair or deceptive because they not only had a capacity to deceive Astria, but also were intended to deceive Astria. Cerner

COMPLAINT AGAINST CERNER CORP. AND CERNER REVWORKS, LLC     -34-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

21-80005-WLH    Doc 1    Filed 03/22/21    Entered 03/22/21 17:48:08    Pg 34 of 43

unreasonably interfered with Astria's decision-making by intentionally making affirmative material misrepresentations regarding its system to Astria.

113. There is a real and substantial potential that Cerner will repeat its conduct, and Cerner's actions impacted many individuals in Washington due to their impact on the Astria non-profit hospital system.

114. Cerner also made false representations that goods and services provided by it had characteristics, uses, benefits, and qualities that they did not have. Additionally, Cerner made false representations that its goods and services were of a particular standard, quality, or grade when, in fact, they were of a lower standard, quality, or grade.

115. Astria suffered significant harm as a result of Cerner's unfair or deceptive acts or practices, including, but not limited to, lost good will and damage to its business reputation.

116. Astria is entitled to recover treble damages, attorneys' fees, and such other relief as this Court considers necessary and proper pursuant to R.C.W. § 19.86.090.

**COUNT IV**

**<u>GROSS NEGLIGENCE</u>**

**(Against All Defendants)**

117. Astria incorporates the preceding paragraphs by reference.

118. Cerner held itself out as an expert in all aspects of the design, build, implementation, and service and support of an EHR system and billing and collections platform to meet Astria's needs.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC    -35-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

21-80005-WLH    Doc 1    Filed 03/22/21    Entered 03/22/21 17:48:08    Pg 35 of 43

119. Astria engaged Cerner to provide its professional services for the design, build, implementation, and service and support of an EHR system and billing and collections platform. The most important of those needs was safely and accurately serving patients who entrusted their most sensitive health concerns and medical history to Astria to receive required care. Another key need was improving Astria's financial efficiency and performance.

120. Cerner's failure to provide a comprehensive, functioning EHR system and billing and collections platform to Astria, a non-profit healthcare system that provides critical health services to patients in Yakima Valley, demonstrated utter unconcern for the safety of others, and such reckless disregard of its duties to Astria as to imply a conscious indifference to consequences.

121. Additionally, Cerner's gross negligence is evident from the fact that, despite its representations that it was expert in billing and collections systems, it sold Astria a professional billing and collections platform that never worked.

122. As a proximate result of Cerner's gross negligence in the discharge of its common law and contractual duties to Astria, Astria incurred the monetary damages set forth herein, making Cerner liable for all damages proximately suffered, plus punitive damages, interest, and attorneys' fees.

## COUNT V

## AVOIDANCE OF OBLIGATIONS AND TRANSFERS UNDER 11 U.S.C. § 548

### (Against All Defendants)

123. Astria incorporates the preceding paragraphs by reference.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC                -36-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

21-80005-WLH    Doc 1    Filed 03/22/21    Entered 03/22/21 17:48:08    Pg 36 of 43

124. Astria entered into the Business Agreement on June 30, 2017 and the RevWorks Agreement on June 26, 2018, each within two years of filing for bankruptcy on May 6, 2019.

125. In total, prior to filing for bankruptcy, Astria made payments to Cerner equal to $2,436,577.17 for the CommunityWorks EHR system and RevWorks platform (the "Cerner Transfers").

126. Cerner's inability to provide properly functioning billing and collection platform and an integrated EHR system as agreed upon in the Business Agreement and RevWorks Agreement caused Astria to experience a significant decline in cash flow from collections on accounts receivable.

127. Astria's lack of cash flow made it unable to generally pay its debts as they came due and caused it to default or otherwise fall behind on its obligations to lenders and creditors, which in turn significantly constricted its liquidity and, in turn, caused the need for chapter 11 protections.

128. As such, Astria became insolvent as a result of entering into the Business Agreement and/or RevWorks Agreement, and Astria did not receive a reasonably equivalent value in exchange for entering into one or both of these contracts.

129. Under 11 U.S.C. § 548(a)(1)(B), Astria is entitled to avoid any obligations under the Business Agreement and/or RevWorks Agreement.

130. Any claims asserted by Cerner in respect of such avoided obligations must be disallowed.

131. The Cerner Transfers were not made to satisfy any valid antecedent obligations and are themselves avoidable.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC                    -37-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

1  132.  Pursuant to 11 U.S.C. § 550(a)(1), Astria is entitled to recover the Cerner

2  Transfers from Cerner.

3  **COUNT VI**

4  **AVOIDANCE OF OBLIGATIONS AND TRANSFERS UNDER 11 U.S.C. § 544**
   **AND**
5  **WASHINGTON STATE LAW**

6  **(Against All Defendants)**

7  133.  Astria incorporates the preceding paragraphs by reference.

8  134.  Under the Washington Uniform Voidable Transactions Act, R.C.W.

9  § 19.40 et seq. (or its predecessor, with respect to any obligation incurred prior to

10  July 23, 2017), made available to Astria through 11 U.S.C. § 544, Astria is entitled to

11  avoid any obligations under the Business Agreement and/or RevWorks Agreement.

12  135.  Any claims asserted by Cerner in respect of such avoided obligations must

13  be disallowed.

14  136.  The Cerner Transfers were not made to satisfy any valid antecedent

15  obligations and are themselves avoidable.

16  137.  Pursuant to 11 U.S.C. § 550(a)(1), Astria is entitled to recover the Cerner

17  Transfers from Cerner.

18  **COUNT VII**

19  **DISALLOWANCE OF ALL CLAIMS ASSERTED BY CERNER**

20  **(Against All Defendants)**

21  138.  Astria incorporates the preceding paragraphs by reference.

22  139.  Cerner is a transferee of voidable transfers under sections 544, 548, and

23  550 of the Bankruptcy Code.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC       -38-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

140. Cerner has not returned the voidable transfers.

141. Pursuant to 11 U.S.C. § 502(d), any claims asserted by Cerner must be disallowed.

## COUNT VIII

## BREACH OF CONTRACT

### (Against All Defendants)

142. Astria incorporates the preceding paragraphs by reference.

143. In the alternative to Astria's fraudulent inducement and avoidance allegations set forth above, the Business Agreement and RevWorks Agreement are valid and enforceable contracts between Astria and Cerner.

144. Because of the failures and inadequacies described above, Cerner has deprived Astria of the fundamental benefit of the bargain: Cerner was obligated to provide and properly support a working EHR system and billing and collections platform, and it has not done so.

145. Cerner has thus materially breached, and continues to breach, its obligations under the Business Agreement and the RevWorks Agreement in numerous ways.

146. For example, Cerner has materially breached Sections 5.1 and 5.2 of the Business Agreement, warranting that it will, without "Material Error," "perform the functions" set forth in the contract; and did not perform the services in a professional manner in accordance with the "Solution Description."

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC

-39-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

21-80005-WLH    Doc 1    Filed 03/22/21    Entered 03/22/21 17:48:08    Pg 39 of 43

147.   Cerner also materially breached both the Net Collections Guarantee and the Accounts Receivable Warranty throughout the duration of the RevWorks Agreement.

148.   In addition to its express contractual duties, Cerner had an implied duty in contract of good faith and fair dealing with respect to its performance of all aspects of its contracts with Astria.   That duty prohibited Cerner from destroying or injuring Astria's right to receive the fruits of its contracts.   Cerner breached its duty of good faith and fair dealing through the conduct described above.

149.   By its conduct, Cerner breached its implied duty of good faith towards Astria.

150.   Astria has suffered and continues to suffer significant financial losses (as well as other non-monetary harm) as a result of these breaches.

## COUNT IX

## **BREACH OF WARRANTY**

### **(Against All Defendants)**

151.   Astria incorporates the preceding paragraphs by reference.

152.   In the alternative to Astria's fraudulent inducement and avoidance allegations set forth above, Cerner also breached numerous warranties owed to Astria.

153.   For example, in Section 5.1 of the Business Agreement, Cerner warrants that its software would perform the functions set forth in the contract "without Material Error."   A "Material Error" is defined as "an error that materially, adversely affects operation of the entire System or that creates a serious loss of functionality important in the daily operation of a single module and for which a work around is not available."

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC                    -40-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

154. As described above, Cerner has repeatedly breached this warranty as a result of poor performance.

155. Cerner also warrants in Section 5.2 of the Business Agreement that it will perform the services in a professional manner in accordance with the "Solution Description."

156. Cerner has repeatedly breached this warranty as a result of the failures and delays described above.

157. On page 2, the RevWorks Agreement contains a "Net Collections Guarantee"—Cerner guaranteed that net collections under RevWorks would be equal to 90% of the "Baseline Average Net Collections" percentage after 180 days of the RevWorks go-live.

158. The Baseline Average Net Collections is a calculation of Astria's total net receipts divided by total net charges over the 6 month period prior to deploying RevWorks.

159. Due to its poor performance, Cerner repeatedly breached the Net Collections Guarantee.

160. On page 10, the RevWorks Agreement also includes an "Accounts Receivable Warranty." This warranty is triggered if a key metric, net days in accounts receivable, increases under RevWorks more than 10 percent over Astria's average net days in accounts receivable for the 18 months prior to the RevWorks go-live (the "Warranty Trigger Level").

161. Due to its poor performance, Cerner repeatedly breached the Accounts Receivable Warranty.

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC     -41-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

162.    Astria was induced by these warranties to purchase software and services from Cerner.

163.    As a result of these breaches, Astria has suffered considerable financial losses that continue to mount.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

I.    Enter judgment in favor of Astria and against Cerner on each count in this Complaint;

II.    Award Astria damages in an amount to be determined at trial;

III.    Award Astria treble damages for Cerner's knowing violations of the Washington State Consumer Protection Act;

IV.    Avoid the obligations incurred under the Business Agreement and/or the RevWorks Agreement, and recover the $2,436,577.17 transferred to Cerner, pursuant to 11 U.S.C. § 544, 548(a)(B), and 550(a); R.C.W. § 19.40;

V.    Disallow any claims (including administrative expenses) asserted by Cerner against the Debtors or Reorganized Debtors;

VI.    Award Astria the costs and reasonable attorneys' fees they incur in connection with this action and the bankruptcy; and

///

///

///

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC

-42-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

VII.   Award any other relief the Court deems just and equitable.

DATED this 22nd day of March, 2021.

BUSH KORNFELD LLP


By_____*/s/ James L. Day*_____
   JAMES L. DAY (WSBA #20474)
   THOMAS A. BUFORD (WSBA #52969)
   LESLEY D. BOHLEBER, WSBA #49150

QUINN EMANUEL URQUHART & SULLIVAN LLP
ANTHONY A. BONGIORNO (*Pro Hac Vice* Pending)
ERIC D. WOLKOFF (*Pro Hac Vice* Pending)
SUSHEEL KIRPALANI (*Pro Hac Vice* Pending)

*Attorneys for Plaintiffs Astria Health, et al.*

COMPLAINT AGAINST CERNER CORP.
AND CERNER REVWORKS, LLC                    -43-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ec22mt01cm

21-80005-WLH    Doc 1    Filed 03/22/21    Entered 03/22/21 17:48:08    Pg 43 of 43