JAMES L. DAY (WSBA #20474)
THOMAS A. BUFORD (WSBA #52969)
LESLEY BOHLEBER, (WSBA #49150)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Phone: (206) 292-2110
Fax: (206) 292-2104
Email: jday@bskd.com, tbuford@bksd.com,
       lbohleber@bskd.com

ANTHONY A. BONGIORNO*
ERIC D. WOLKOFF*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Phone: (617) 712-7100
Fax: (617) 712-7200
Email: anthonybongiorno@quinnemanuel.com
       ericwolkoff@quinnemanuel.com

SUSHEEL KIRPALANI*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Phone: (212) 849-7200
Fax: (212) 849-7100
Email: susheelkirpalani@quinnemanuel.com

*Attorneys for Plaintiffs Astria Health, et al.*
*Admitted Pro Hac Vice*

HONORABLE WHITMAN L. HOLT

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>ASTRIA HEALTH, et al.,<br><br>Debtors.[1] | Jointly Administered Under:<br>Lead Case No. 19-01189-WLH11<br>Chapter 11 |

---

[1] The Debtors, along with their case numbers, are as follows: Astria Health (19-01189-11), Glacier Canyon, LLC (19-01193-11), Kitchen and Bath Furnishings, LLC (19-01194-11), Oxbow Summit, LLC (19-01195-11), SHC Holdco, LLC (19-01196-11),

i

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

| | |
|---|---|
| ASTRIA HEALTH, et al., | |
| Plaintiffs, [2] | Adversary No. 21-80005-WLH |
| vs. | Plaintiffs' Opposition to Defendants' Partial Motion to Dismiss |
| CERNER CORPORATION AND CERNER REVWORKS, LLC, | |
| Defendants. | |

SHC Medical Center - Toppenish (19-01190-11), SHC Medical Center - Yakima (19-01192-11), Sunnyside Community Hospital Association (19-01191-11), Sunnyside Community Hospital Home Medical Supply, LLC (19-01197-11), Sunnyside Home Health (19-01198-11), Sunnyside Professional Services, LLC (19-01199-11), Yakima Home Care Holdings, LLC (19-01201-11), and Yakima HMA Home Health, LLC (19-01200-11).

[2] The Plaintiffs are as follows: Astria Health, SHC Holdco, LLC, SHC Medical Center – Toppenish, SHC Medical Center – Yakima, and Sunnyside Community Hospital Association, (collectively "Astria" or the "Plaintiff").

PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................ 1

II. BRIEF FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............ 1

    A. Cerner Induces Astria to Enter Agreements ........................................ 1

    B. Cerner's Fails to Deliver on its False Promises ................................... 3

    C. Cerner Causes Astria's Insolvency ..................................................... 4

III. LEGAL STANDARD ................................................................................. 5

IV. ARGUMENT .............................................................................................. 5

    A. Astria States a Claim under the Washington Consumer Protection Act ...................................................................................................... 5

        1. Astria Adequately Pleads Unfair or Deceptive Conduct .................. 7

        2. Plaintiffs Adequately Plead Public Interest Impact ....................... 14

    B. There is No Applicable Waiver ......................................................... 18

V. CONCLUSION .......................................................................................... 20

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Anderson v. Valley Quality Homes, Inc.*,
  84 Wash.App. 511 (1997) .......................................................................................... 9

*Becker v. Cmty. Health Sys., Inc.*,
  184 Wash. 2d 252 (2015) .......................................................................................... 5

*Behnke v. Ahrens*,
  172 Wash. App. 281 (2012) ............................................................... 8, 12, 14, 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 5

*Bund v. Safeguard Props. LLC*,
  No. 16-cv-920(MJP), 2018 WL 3917930
  (W.D. Wash. Aug. 16, 2018) .................................................................................. 14

*Connelly Co. v. Primo Water Corp.*,
  No. 14-CV-00340(JLQ), 2016 U.S. Dist. LEXIS 6103
  (E.D. Wash. Jan. 19, 2016) ................................................................................ 17-18

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) .................................................................................. 14

*Diaz v. Int'l Longshore & Warehouse Union, Local 13*,
  474 F.3d 1202 (9th Cir. 2007) .................................................................................. 5

*Eastlake Const. Co., Inc., v. Hess*,
  102 Wash. 2d 30 (1984) ............................................................................................ 9

*Eastside Physical Therapy, Inc. v. U.S. Auto. Ass'n*,
  No. 78134-1-I(BMA), 2019 WL 4785609
  (Wash. App. Sept. 30, 2019) .................................................................................... 7

*First State Ins. Co. v. Kemper Nat'l Ins. Co.*,
  94 Wash.App. 602 (1999) ....................................................................................... 13

*Folweiler Chiropractic, PS v. Am. Family Ins. Co.*,
  5 Wash. App. 2d 829 (2018) ................................................................................ 7, 8

*FTC v. Sperry & Hutchinson Co.*,
  405 U.S. 233 (1972) .................................................................................................. 7

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
  105 Wash. 2d 778 (1986) ................................................................................ *passim*

*Harris v. U.S. BankCorp.*,
  No. 19-cv-00291(BJR), 2019 WL 5536402
  (W.D. Wash. Oct. 25, 2019) ................................................................................... 12

*Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*,
  134 Wash. App. 210 (2006) .................................................................................... 13

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*,
  162 Wash. 2d 59 (2007) ...................................................................................... 8, 13

*In re. Feiler*, 218 F.3d 948
  (9th Cir. 2020) ......................................................................................................... 20

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

-iv-

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

21-80005-WLH    Doc 35    Filed 05/17/21    Entered 05/17/21 16:05:54    Pg 4 of 28

*In re. Park West Galleries, Inc., Mktg. & Sales Practice Litig.*
   No. 09-MDL-2076 (RSL), 2010 U.S. Dist. LEXIS 64690
   (W.D. Wash. June 25, 2010)..................................................................19
*Keyes v. Bollinger,*
   31 Wash. App. 286 (1982)......................................................................9
*Klem v. Wash. Mut. Bank,*
   176 Wash. 2d 771 (2013).......................................................................7
*M.A. Mortenson Co. v. Timberline Software Corp.,*
   140 Wash. 2d 568 (2000).....................................................................16
*Magney v. Lincoln Mut. Sav. Bank,*
   34 Wash. App. 45 (1983)........................................................................7
*MGIC Indem. Corp. v. Weisman,*
   803 F.2d 500 (9th Cir. 1986).................................................................14
*Miller v. Dalton,*
   No. 35163-7-III,
   5 Wash.App.2d 1019 (Sept. 18, 2018) ...................................................9
*Navarro v. Block,*
   250 F.3d 729 (9th Cir. 2001)..................................................................5
*Nordstrom, Inc. v. Tampourlos,*
   107 Wash. 2d 735 (1987)................................................................15, 16
*PacifiCorp Env't Remediation Co. v. Dep't of Transp.,*
   162 Wash. App. 627 (2011)..................................................................12
*Potter v. Wilbur-Ellis Co.,*
   62 Wash. App. 318 (1991)....................................................................11
*Premera Blue Cross v. Canon Sols. Am., Inc.,*
   No. 16-cv-0411 (JCC), 2017 WL 714216
   (W.D. Wash. Feb. 23, 2017)..................................................................20
*Rocky Mountain Fire & Casualty Co. v. Dairyland Ins. Co.,*
   452 F.2d 603 (9th Cir. 1971).................................................................12
*Rush v. Blackburn,*
   190 Wash. App. 945 (2015)..............................................................15, 16
*Short v. Demopolis,*
   103 Wash. 2d 52 (1984)..........................................................................6
*Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.,*
   64 Wash. App. 553 (1992)....................................................................13
*Starr v. Baca,*
   652 F.3d 1202 (9th Cir. 2011) ................................................................5
*State v. Kaiser,*
   161 Wash. App. 705, 722-23 (2011) ......................................................8
*Swartz v. KPMG ("Swartz I"),*
   401 F. Supp. 2d 1146 (W.D. Wash. 2004) .......................................11-12
*Swartz v. KPMG ("Swartz II"),*
   476 F.3d 756 (9th Cir. 2007) ................................................................12

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

–v–

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

21-80005-WLH   Doc 35   Filed 05/17/21   Entered 05/17/21 16:05:54   Pg 5 of 28

*Synergy Greentech Corp. v. Magna Force, Inc.*,
   No. 15-cv-5292(BHS), 2016 WL 3906908
   (W.D. Wash. July 19, 2016) .......................................................................19

*Thompson v. Huston*,
   17 Wash. 2d 457 (1943) ............................................................................19

*Travis v. Wash. Horse Breeders Ass'n*,
   111 Wash. 2d 396 (1988)........................................................................12-13

*Trujillo v. Northwest Trustee Servs. Inc.*,
   183 Wash. 2d 820 (2015) ..........................................................................15

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

-vi-

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

21-80005-WLH   Doc 35   Filed 05/17/21   Entered 05/17/21 16:05:54   Pg 6 of 28

# I. INTRODUCTION

In their more than 40-page Complaint, Plaintiffs (collectively, "Astria") have set forth detailed factual allegations in support of each of their nine causes of action. Dkt. No. 1, Complaint (hereinafter, "Compl."). Defendants Cerner Corporation and Cerner RevWorks, LLC (collectively, "Defendants" or "Cerner") move to dismiss just one of these claims, Count III, alleging violations of the Washington Consumer Protection Act, R.C.W. § 19.86 *et seq.* (the "CPA"). Defendants rely on mistakenly narrow and rigid interpretations of the relevant case law to argue that Astria has not met two of the five elements of a CPA claim: unfair or deceptive conduct and public interest impact. However, it is clear when one applies the relevant standards that Astria has sufficiently pled each and every element of its CPA claim. In the alternative, Defendants insist that Plaintiffs waived their rights to bring a CPA claim against Cerner because of an Allocation of Risk provision in the Business Agreement. Defendants are once again mistaken. Astria cannot be held to the terms of a contract that is unenforceable because of fraud or constructive fraud, as alleged in the Complaint.

Therefore, for the reasons stated more fully below, Plaintiffs respectfully request that the court deny Defendants' Partial Motion to Dismiss. (Dkt. No. 20).

# II. BRIEF FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Cerner Induces Astria to Enter Agreements

Defendants began their aggressive pursuit of Astria's[3] business in December

---

[3] Plaintiffs are Astria Health, Sunnyside Community Hospital Association ("Sunnyside"), SHC Medical Center – Yakima d/b/a Astria Regional Medical Center

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

2016. Compl. ¶ 39. From that point onward, Cerner engaged in a campaign of omissions and falsehoods, promising fully integrated Electronic Health Records ("EHR") and billing and collections platforms despite the knowledge that these platforms did not work properly and had failed at numerous other hospitals. *Id.* ¶¶ 39-58, 72-88. Astria signed the Business Agreement on June 30, 2017 and the RevWorks Agreement on June 26, 2018, in reliance on Cerner's misrepresentations of the quality and capabilities of its integrated billing and collections platform and its past performance at other hospitals. *Id.* ¶¶ 39-44, 45-58.

For example, on June 6, 2018, when Astria asked directly about a recent news article stating that another hospital system using RevWorks was facing significant cash collection issues because of flaws in Cerner's billing and collections platform, Cerner's President of CommunityWorks and RevWorks made numerous misrepresentations, including saying the issue that hospital was facing was a one-off, that those issues do not otherwise happen with Cerner's platform, that Cerner had fixed the issue for the hospital, and that the issue would not happen to Astria. Cerner made those misrepresentations despite the knowledge that its platform had failed at numerous other hospitals, which had each suffered significant cash collection issues as a result. It failed to disclose any of those prior incidents to Astria and continued to represent that its customers were happy with its products and services.

───────────────────────

("Yakima"), SHC Medical Center – Toppenish d/b/a Astria Toppenish Hospital Washington ("Toppenish"), and SHC Holdco LLC (collectively "Astria" or "Plaintiffs").

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

-2-

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

Additionally, in marketing materials shared in 2017 and 2018, including a "Standard Scope" document, Cerner consistently overstated both its system's and billing specialists' capabilities. *Id.* at ¶ 38-54. According to Cerner, RevWorks was supposed to fully integrate with the EHR system covered by the Business Agreement, improve efficiency, and optimize financial performance. *Id.* ¶¶ 47, 50. In addition, despite knowledge of evidence to the contrary, Cerner repeatedly touted its cherry-picked success stories and denied that any other customers had run into issues with RevWorks. *Id.* ¶¶ 53-58.

### B. Cerner's Fails to Deliver on its False Promises

Cerner's platform went live at Sunnyside in June 2018 and at Toppenish and Yakima in August 2018. *Id.* ¶ 72. Far from Cerner's promises that its platform and services would increase net revenue and cash collections (*Id.* ¶ 40), when RevWorks went live, all three hospitals saw *immediate* cash collection decline from 97% of net revenue pre-Cerner, to 54% of net revenue after the conversion (*Id.* ¶ 74), which only continued to drop as the issues with Cerner's platform and services snowballed. For example, by March 2019, cash collections had dropped further, to a mere 21%. *Id.* ¶ 86.

Further, and again contrary to Cerner's repeated promises, its EHR platform did not fully integrate with RevWorks. *Id.* ¶¶ 52, 76, 78. Cerner also set up billing rules for two of the hospitals incorrectly, which resulted in rejected claims that led to immediate cash shortfalls. *Id.* ¶ 75. Aside from comprehensive, seamless integration, (*e.g.* ¶¶ 50, 76), the RevWorks platform was also supposed to "[e]dit and resubmit denied and rejected claims" "[d]aily," (*Id.* at ¶ 48); however, it did not have that

PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

-3-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

capability, and Cerner did not have the bandwidth to timely address the multimillion dollar backlog that continued to accumulate exponentially. *Id.* ¶¶ 78-79.

These are just a few examples of the many problems, which, in totality, resulted in cash collections and posting far below pre-Cerner numbers and what Cerner had promised through the Guarantee and Warranty provided in the RevWorks Agreement. *See, e.g., id.* ¶¶ 68, 71, 77, 147, 151-163. Simply put, the RevWorks platform was neither processing claims properly nor identifying and correcting its errors. *Id.* ¶¶ 75-78. Astria raised these issues with Cerner executives repeatedly, to no avail. *Id.* ¶¶ 79-88. Cerner was simply unable to fix its faulty system or provide the expertise and/or manual labor necessary to process claims and work around the software's many deficiencies. Astria's cash collection and posting backlog continued to climb, causing hundreds of millions of dollars of damages to Astria. *Id.* ¶¶ 80- 91. These problems persisted through 2020. *Id.* ¶¶ 87-88.

### C. Cerner Causes Astria's Insolvency

Due to the crippling cash flow problems caused by Cerner's EHR and RevWorks systems, Astria filed for Chapter 11 bankruptcy protection in this court on May 6, 2019. *Id.* ¶ 91. As the cash collections issues with RevWorks compounded, Astria was forced to close Astria Regional Medical Center, which had existed and provided care to the Yakima Valley community for 128 years. *Id.* Defendants filed a proof of claim against Astria on August 1, 2019 and a motion to compel payment of an administrative expense claim on July 22, 2020. *Id.* ¶ 32. On March 22, 2021, Astria filed the Complaint in this adversary proceeding. Finally, Defendants filed their Partial Motion to Dismiss Count III (the "Motion") on April 22, 2021, which Astria opposes here.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

-4-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

## III. LEGAL STANDARD

Dismissal of a claim pursuant to Fed. R. Civ. P. 12(b)(6) is only appropriate where it is clear from the pleading, "'beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.'" *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Becker v. Cmty. Health Sys., Inc.*, 184 Wash. 2d 252, 257-58 (2015) ("[U]nless it appears beyond doubt that the plaintiff[s] can prove no set of facts consistent with the complaint that would entitle [them] to relief, the motion to dismiss must be denied"). In its application of this deferential standard to the pleading, the court must accept Plaintiffs' allegations, as well as all reasonable inferences it can draw therefrom, as true and construe them in the light most favorable to the plaintiffs. *See Diaz v. Int'l Longshore & Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007). If plaintiffs plead "enough facts to state a claim to relief that is plausible on its face," the court must deny the motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible" in this context, if it raises "'a reasonable expectation that discovery will reveal evidence' to support the allegations." *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).

## IV. ARGUMENT

### A. Astria States a Claim under the Washington Consumer Protection Act

The Washington Consumer Protection Act ("CPA") is a comprehensive statute that is to be "liberally construed that its beneficial purposes may be served." R.C.W. § 19.86.920. Indeed, "the CPA, on its face, shows a carefully drafted attempt to bring

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

-5-

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

within its reaches *every person*[4] who conducts unfair or deceptive acts or practices *in any trade or commerce.*" *Short v. Demopolis*, 103 Wash. 2d 52, 61 (1984) (emphasis added). To state a claim under the CPA plaintiffs must allege facts showing: (1) unfair or deceptive conduct by defendants; (2) occurring in trade or commerce; (3) a public interest impact; (4) injury to plaintiffs in their business or property; and (5) a causal link between defendants' unfair or deceptive conduct and the harm to plaintiffs. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986); R.C.W. § 19.86.020.

As a threshold matter, Cerner implicitly concedes that Astria satisfied three of these elements. Defendants only dispute whether Astria pled facts sufficient to meet the other two: The first: unfair or deceptive conduct; and the third: public interest impact. In arguing for dismissal of the CPA claim, Cerner incorrectly applies the legal standards associated with these two elements. First, when arguing that Astria has not pled unfair or deceptive conduct, Defendants focus only on whether Astria has sufficiently pled deceptive conduct (it has), ignoring Astria's allegations of unfair conduct. Second, in arguing that their actions had no public interest impact, Defendants ignore the myriad circumstances giving rise to a public interest impact. In determining whether conduct had a public interest impact, courts in Washington are guided by broad factors; Cerner's suggestion that a rigid and narrow legal test applies is

---

[4] The CPA defines "person" so as to "include, where applicable, natural persons, corporations, trusts, incorporated associations and partnerships." R.C.W. 19.86.010. Accordingly, Defendants are "persons" under the CPA.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

-6-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

21-80005-WLH    Doc 35    Filed 05/17/21    Entered 05/17/21 16:05:54    Pg 12 of 28

mistaken.  The chief foundational question is simply whether the public was actually injured or could have been injured by the alleged conduct.  As the Complaint makes clear, the answer here is resoundingly yes.  Cerner's conduct drove a non-profit hospital system into bankruptcy, resulting in the closure of a hospital that provided vital health services to the community.  Under such circumstances, there is no doubt that the Complaint pleads conduct that caused a public interest impact.

Because the Complaint contains sufficient allegations to support the first and third elements of the CPA, Defendants' Motion to Dismiss must be denied.

### 1. Astria Adequately Pleads Unfair or Deceptive Conduct

A claim under the CPA "may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *See Klem v. Wash. Mut. Bank*, 176 Wash. 2d 771, 787 (2013); *see also Eastside Physical Therapy, Inc. v. U.S. Auto. Ass'n*, No. 78134-1-I (BMA), 2019 WL 4785609 at *7 (Wash. App. Sept. 30, 2019) (acknowledging the three options outlined in *Klem* and further observing that a "plaintiff could [also] prevail if it could show how the conduct was unfair or deceptive under a 'case-specific analysis of those terms'"); *Folweiler Chiropractic, PS v. Am. Family Ins. Co.*, 5 Wash. App. 2d 829, 837 (2018).

Unfair acts or practices include conduct that "(1). . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) [ ] is immoral, unethical, oppressive, or unscrupulous; [or] (3) [ ] causes substantial injury to consumers (or competitors or other businessmen)."  *Magney v. Lincoln Mut. Sav. Bank*, 34 Wash. App. 45, 57 (1983) (quoting, *FTC v. Sperry & Hutchinson Co.*,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

-7-

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

21-80005-WLH    Doc 35    Filed 05/17/21    Entered 05/17/21 16:05:54    Pg 13 of 28

405 U.S. 233, 244 n. 5 (1972)); *see also Folweiler*, 5 Wash. App.2d at 837 (citing *Magney*, 34 Wash. App. at 57).

Deceptive conduct is that which has the capacity to deceive a substantial portion of the public (*e.g.*, has the capacity to be repeated) and that which is likely to mislead a reasonable consumer. *See Behnke v. Ahrens,* 172 Wash. App. 281, 292-296 (2012) (purpose of "capacity to deceive 'a substantial portion of the public'" standard is to "rule out those deceptive acts and practices that are unique to the relationship between plaintiff and defendant" and to capture conduct that was "repeated" with "other clients" or is "likely to be repeated with other future clients"); *see also Indoor Billboard / Washington, Inc. v. Integra Telecom of Wash., Inc.*, 162 Wash. 2d 59, 75 (2007) ("'[K]nowing failure to reveal something of material importance is "deceptive" within the [meaning of the] CPA'") (quoting *Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wash. App. 104, 116 (2001)). "Whether a deceptive act has the capacity to deceive a substantial portion of the public is a question of fact." *Behnke*, 172 Wash. App. at 292.

Although it need only plead that Cerner engaged in conduct that was *either* unfair *or* deceptive, Astria has adequately pled that Cerner engaged in conduct that was both unfair *and* deceptive. *See id.* (a plaintiff need only plead that the conduct was either unfair or deceptive, it need not plead both).

First, Astria has pled unfair conduct in that, by contracting to deliver services and software it knew it could not provide, Cerner engaged in conduct that was inherently unfair. *See State v. Kaiser*, 161 Wash. App. 705, 719, 722-23 (2011) (where the defendant "induced [the plaintiffs] to enter into agreements that misrepresented material facts" and "purposefully withheld material information" the agreements are

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

-8-

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

21-80005-WLH    Doc 35    Filed 05/17/21    Entered 05/17/21 16:05:54    Pg 14 of 28

"as a matter of law . . . unfair and unconscionable [and] violated the CPA") (internal citation and quotation marks omitted); *Keyes v. Bollinger*, 31 Wash. App. 286, 292 (1982) (finding an unfair or deceptive act by contractor who 'estimat[ed]' or represent[ed] probable completion or repair dates to purchasers, with which 'estimates' he [wa]s unable to substantially comply due to reasons which should be reasonably foreseeable in light of [his] knowledge and experience"); *see also Anderson v. Valley Quality Homes, Inc.*, 84 Wash.App. 511, 522-23 (1997) (describing the "deceptive acts" of inducing sales then failing to ensure the bases for the inducements were correct, "trying to shift responsibility" and "failing to comply with or ensure compliance with installation requirements of its own manual").

Additionally, Cerner's tactics amount to a classic "bait and switch" of promising one thing and delivering something inferior in its place. *See, e.g., Eastlake Const. Co., Inc., v. Hess*, 102 Wash. 2d 30, 49 (1984) (finding "ample evidence" of "numerous unfair and deceptive acts [] including misrepresentations and substitutions of unauthorized materials"); *Miller v. Dalton,* No. 35163-7-III, 5 Wash.App.2d 1019, at *13 (Sept. 18, 2018) ("bait and switch" where a seller offers one product to draw the customer in, to ultimately provide something inferior can violate the CPA).

The Complaint alleges numerous examples of Cerner's promises that it knew it could not and would not deliver, as well as its bait and switch tactics. For instance, Cerner contracted to perform billing and collections services for Astria, promising at the time that it had had a "team of specialists" that would "take over all revenue cycle operations to ensure maximum results." *See* Compl. ¶¶ 38-51. Instead, after Astria signed the contract and begun to suffer significant losses, Astria learned that, far from

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

-9-

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

21-80005-WLH    Doc 35    Filed 05/17/21    Entered 05/17/21 16:05:54    Pg 15 of 28

using a "team of specialists," Cerner had outsourced much of its work to a third-party overseas staffing company that employed individuals who lacked revenue cycle expertise. *Id.* ¶¶ 58, 82, 104. Furthermore, despite promising to provide support, as it continuously failed to perform its obligations under the Agreements, Cerner often sought to avoid its responsibilities, leaving Astria to fend for itself. *Id.* ¶¶ 72-88.

Second, seemingly acknowledging that misrepresentations are the prototypical example of deceptive conduct, Cerner argues that its alleged misdeeds are exempt from the CPA because its misstatements were made only to Astria.[5] Next, Cerner argues that, because it markets its products and services to hospitals and other healthcare providers, its conduct is not capable of deceiving a substantial portion of the public and is not actionable under the CPA. Motion at 13. Cerner is incorrect in both respects.

The Complaint alleges that Cerner markets an EHR product and billing and collections service that is inherently faulty. Specifically, the Complaint sets forth detailed allegations explaining that Cerner's EHR and RevWorks platforms do not work. *See, e.g.,* Complaint at 4, 43, 52, 55, 57, 58, 99. By representing that its

---

[5] Indeed, the Complaint alleges that Cerner marketed and misrepresented the capabilities of its products and services and promised that doing business with Cerner would be beneficial to its customers' bottom line. Compl. ¶¶ 11-14, 39-43, 47-51, 53-58, 71, 105. The misrepresentations related to material, indeed foundational, terms of the transactions (*i.e.* that the products worked, in the first instance, that Cerner's systems could integrate well with one another, that Cerner's employees had the requisite expertise to assist if problems arose).

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

-10-

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

products and services perform as intended, which is necessarily something Cerner does every time it makes a sale, Cerner has deceived and injured numerous hospitals across the country.[6]  Indeed, the Complaint contains a chart listing other hospitals that Astria alleges have been deceived by Cerner's misrepresentations that its EHR and billing and collections software and services perform as intended, as well as an exemplar "Standard Scope" document, whose title suggests it was routinely shared in sales pitches.  *See, e.g.*, Compl. at 18-20 (chart); *Id.* ¶ 48.

Furthermore, the relevant test is not even whether Cerner has *already* made its misrepresentations to other hospitals, but whether its actions, if they continue, have the *capacity* to deceive.  *See Potter v. Wilbur-Ellis Co.,* 62 Wash. App. 318, 327 (1991) (a seller's representations are "not intended to make sales to only one customer"; it is the fact that they [have] the "capacity to deceive" that is dispositive).  Indeed, the purpose of the CPA is to stop conduct "*before* injury occurs."  *Hangman Ridge*, 105 Wash. 2d at 785.  There is no doubt that if Cerner is allowed to continue to market its faulty software and services, its actions have the capacity of deceiving other hospitals.

Next, Cerner mistakenly suggests that because it markets its software and services to hospitals and health care providers, it can never deceive a "substantial portion of the public."  Cerner's reliance on *Swartz v. KPMG*, 401 F. Supp. 2d 1146,

---

[6]   The Complaint alleges some of these other hospitals that Cerner deceived, but Astria requires targeted discovery to determine the full reach of Cerner's misrepresentations.  Taking inferences in Astria's favor, it is reasonable to expect that there are others, of which it is not yet aware.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

-11-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

21-80005-WLH    Doc 35    Filed 05/17/21    Entered 05/17/21 16:05:54    Pg 17 of 28

1153 (W.D. Wash. 2004) ("*Swartz I*") and *Swartz v. KPMG*, 476 F.3d 756 (9th Cir. 2007) ("*Swartz II*") for this argument is misplaced.  The Washington State Court of Appeals has expressly rejected Swartz's holding that a product marketed to a "select audience" is exempt from liability under the CPA as a matter of law.[7]  *Behnke*, 172 Wash. App. at 292 ("The Behnkes rightfully complain that Swartz misinterprets Washington law").  Indeed, "Washington courts have not tried to decide as a matter of law whether the potential victims of a deceptive act or practice are sufficiently numerous to qualify as 'a substantial portion of the public.'"  *Id*.; *see also Harris v. U.S. BankCorp.*, No. 19-cv-00291 (BJR) , 2019 WL 5536402 at *6 (W.D. Wash. Oct. 25, 2019) (denying motion to dismiss and noting that there is no "threshold number as a matter of law" for a substantial portion of the public and that Washington courts have declined to make such a determination as a matter of law).  Thus courts have found CPA violations under a variety of circumstances where the likely target fell within a particular group of clients. *See, e.g., Travis v. Wash. Horse Breeders Ass'n*, 111 Wash.

---

    [7]  *Rocky Mountain Fire & Casualty Co. v. Dairyland Ins. Co.*, 452 F.2d 603, 603-04  (9th Cir. 1971) ("A federal court . . . is bound to follow the considered dicta as well as the holdings of state court decisions") (quoting *U.S. Fidelity & Guaranty Co. v. Anderson Constr. Co.,* 260 F.3d 172, 176 (9th Cir. 1958));  *PacifiCorp Env't Remediation Co. v. Dep't of Transp.*, 162 Wash. App. 627, 663 (2011) ("Our interpretation of our statutes is binding on the federal courts") (internal citation and quotation marks omitted).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

-12-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

21-80005-WLH    Doc 35    Filed 05/17/21    Entered 05/17/21 16:05:54    Pg 18 of 28

2d 396, 406 (1988) (a seller of expensive race horses may be liable under the CPA); *see also Indoor Billboard/Washington, Inc.*, 162 Wash. 2d at 68 (involving a provider of multiline business telecom services); *Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*, 134 Wash. App. 210, 227 (2006) (nonprofit corporation that represented over 500 mobile home park owners and managers in the state of Washington could be held liable under the CPA for a model rental agreement); *First State Ins. Co. v. Kemper Nat'l Ins. Co.*, 94 Wash.App. 602 (1999) (excess liability carrier had a Consumer Protection Act claim against a primary insurer); *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wash. App. 553, 560 (1992) (florist had been misled as to the terms of the contract by a sign-maker and entered into the agreement in reliance of the seller's misstatements).

Finally, Cerner's market, as a Fortune 500 company (Motion at 19), is not as narrow as it would suggest. According to the Washington Department of Health, there are over one hundred hospitals in Washington alone, not counting numerous other health care providers who operate outside hospitals. Cerner may have already solicited any number of them before Astria, or they may have had (or still have) plans to do so. Whether Astria was first, last, or somewhere in between, the misrepresentations in Defendants' sales pitch, *i.e.* that its products and services work and that it had and would provide support staff with the requisite expertise, have already deceived or have the potential to deceive each and every one of these hospitals.[8] *See, e.g.* Compl. ¶ 48 ("Standard Scope" document).

---

[8] *See 2019 Year End Reports by Hospital*, WASH. DEP'T OF HEALTH, https://www.doh.wa.gov/DataandStatisticalReports/HealthcareinWashington/Hospitala

DEFENDANTS' PARTIAL MOTION TO
DISMISS

-13-

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

21-80005-WLH    Doc 35    Filed 05/17/21    Entered 05/17/21 16:05:54    Pg 19 of 28

## 2. Plaintiffs Adequately Plead Public Interest Impact

The public interest impact analysis requires a highly fact-intensive inquiry that is not typically ripe for a motion to dismiss. *See Behnke*, 172 Wash. App. at 292 ("[D]etermining whether the complained of conduct affects the public interest . . . is factual in nature") (citing *Hangman Ridge*, 105 Wash. 2d at 719). Although Defendants suggest there is a single and rigid test for whether a public interest impact has been shown, there are actually numerous ways for plaintiffs to plead a public interest impact.

For example, "a claimant may establish that the act or practice is injurious to the public interest because it... (3)(a) [i]njured other persons; (b) had the capacity to injure other persons or (c) has the capacity to injure other persons." R.C.W. § 19.86.093; *see also Bund v. Safeguard Props. LLC*, No. 16-cv-920 (MJP), 2018 WL 3917930 at *6 (W.D. Wash. Aug. 16, 2018) (company that wrongly locked defaulted mortgagees out of their homes engaged in conduct that injured or had the capacity to injure other

---

ndPatientData/HospitalFinancialData/YearEndReports/2019HospitalYearEndReports (last visited May 16, 2021); *see also MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) ("On a motion to dismiss, [courts] may take judicial notice of matters of public record outside the pleadings"); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("It is appropriate to take judicial notice of [ ] information, as it was made publically available by government entities, . . . and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein").

PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

-14-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

persons and satisfied the public interest requirement). Here, Defendants' unfair and deceptive conduct caused a charitable hospital system, Astria to enter bankruptcy and close a non-profit hospital, depriving the local community of care on the eve of an unprecedented global pandemic. Compl. ¶ 91 (Astria Regional Medical Center closed in January 2020). Such conduct not only had the capacity to injure the public, but was actually injurious to the public.

Although the court need look no further than the injury to the public alleged here, courts may also examine broad factors evidencing a public interest impact, which differ depending on whether the transaction at issue is a "consumer transaction" or a "private dispute." Although Defendants present these factors as a rigid test, courts merely look to see if some of them are present, suggesting, on the whole, a public interest impact. *Hangman Ridge*, 105 Wash. 2d at 791 ("not one of these factors is dispositive, nor is it necessary that all be present."); *see also Trujillo v. Northwest Trustee Servs. Inc.*, 183 Wash. 2d 820, 836 (2015) (plaintiffs' allegations show public interest impact by meeting only one factor: because plaintiffs "state that other plaintiffs have or will likely suffer injury in the same fashion").

Consumer transactions typically involve the sale of goods and private disputes typically involve the provision of services. *See Hangman Ridge*, 105 Wash. 2d at 789-90; *Nordstrom, Inc. v. Tampourlos*, 107 Wash. 2d 735, 742 (1987) ("Typically, these cases involve disputes between a purchaser of goods and a seller [consumer transaction], or disputes between an individual paying for services and the party rendering them [private dispute]."); *see also Rush v. Blackburn*, 190 Wash. App. 945, 968 (2015) (the "provision of professional services" are typically involved for cases

PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

-15-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

with "essentially [ ] private dispute[s]").  Although Defendants suggest this case involves only a private dispute, where Cerner sold Astria both software and services, "such a neat distinction between consumer and private disputes is not [always] workable" (*Nordstrom*, 107 Wash. 2d at 742), but the "public interest element may be satisfied in these cases all the same." *Rush*, 190 Wash. App. at 969-70.

Simply put, because Astria alleged that it was induced to purchase both goods[9] (assets,[10] as defined by the CPA) and related services that did not function as promised (the EHR platform, the Revenue Cycle Management software, and the RevWorks billing and collections support), the court should examine both sets of factors, for a more fulsome analysis of the various "indicia of an effect on public interest." *Hangman Ridge*, 105 Wash. 2d at 791.

Astria has pled facts supporting either or both set(s) of factors.  For each, the first factor is whether the acts were conducted in the course of the defendant's business, a fact not in dispute here.  Additionally, when analyzing a consumer transaction, the court may consider whether the <u>consumer transaction</u>: (i) is part of a pattern or generalized course of conduct; (ii) has been repeated by the defendant before the act involving the plaintiff; (iii) has a "real and substantial potential" to be repeated by the

---

[9]  *See, e.g.*, *M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wash. 2d 568, 578 (2000) (software falls within definition of "good" under Article 2 of the U.C.C.).

[10]  "'Assets' shall include any property, tangible or intangible, real, personal, or mixed, and wherever situate, and any other thing of value." R.C.W. § 19.86.010.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

-16-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

21-80005-WLH    Doc 35    Filed 05/17/21    Entered 05/17/21 16:05:54    Pg 22 of 28

defendant; and/or (iv) *if* it involves a single transaction, whether many consumers were affected or are likely to be affected by it. *Hangman Ridge*, 105 Wash. 2d at 790.

Similarly, when examining a <u>private dispute,</u> the court may also consider whether: (i) the defendant(s) advertises to the public; (ii) the defendant(s) actively solicited the particular plaintiff(s), indicating potential solicitation of others; and/or (iii) the plaintiff(s) and defendant(s) occupied unequal bargaining positions in this context. *Id.* at 790-91.

Defendants concede that two of the factors are met, acknowledging that the acts at issue occurred in the course of Cerner's business, (*see* Motion at 16), and that they actively pursued and solicited Astria. *Id.*[11] The majority of the other factors under either test essentially boil down to whether Cerner engaged in a pattern of misconduct that actually affected or could affect the public in the future. Astria's Complaint provides numerous examples of Cerner's *modus operandi* of convincing other hospitals to buy their products and services, which do not work (*see, e.g.* Compl. ¶ 121), followed by these customers' raising complaints and suffering major financial consequences. *See id.* at 18-20 (chart). This history demonstrates a pattern, which has shown no signs of stopping to date. *See, e.g.*, *Connelly Co. v. Primo Water Corp.*, No.

---

[11]  Defendants separate the two clauses related to active solicitation, suggesting that "indicating potential solicitation of others" must be independently pled. Setting aside that this is a strained and erroneous reading of this factor, Astria *did* allege that Cerner solicited other hospitals who ultimately suffered damages due to Cerner's faulty billing and collections products and services. Compl. at 18-20 (chart).

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

-17-

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

14-CV-00340 (JLQ), 2016 U.S. Dist. LEXIS 6103, at *10 (E.D. Wash. Jan. 19, 2016) (noting that the harm to other entities (besides plaintiff) was "supportive of the broader impact of Defendant's actions"). There were two transactions between Cerner and Astria; however, as illustrated by the chart (Compl. p. 18-20), other hospital consumers have also already been affected by Cerner's faulty products and services, and even more are likely to be unless Cerner is held responsible for its repeated misconduct.

With regard to relative bargaining power, Cerner mistakenly argues that Astria's and Cerner's equal sophistication means they have equal bargaining positions; however, this theory fails. *See, Behnke*, 172 Wash. App. at 294 ("Anyone, regardless of wealth or sophistication, can fall victim to deception in trade or commerce"). Indeed, the parties were not in equal positions vis-à-vis these transactions: Cerner knew its products did not work and that its staff lacked expertise, and Astria did not. As alleged, even when Astria asked the right questions, Defendants did not share the full truth, so as to allow Astria to make a truly informed decision. Instead, they continued to make promises about their products, services, and people, while omitting the issues contemporaneously faced by its other customers. *See* Compl. at ¶¶ 11-14, 39-43, 47-51, 53-58, 71, 105.

Accordingly, under either set of applicable factors, Astria has alleged sufficient facts to support the public interest impact element of the CPA at this stage.

### B. There is No Applicable Waiver

Defendants attempt to evade CPA liability by clinging to a waiver provision in the Business Agreement. (Motion at 21); however, Astria has alleged that it was induced to enter the Business Agreement by actual or constructive fraud, and therefore

PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

-18-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

21-80005-WLH   Doc 35   Filed 05/17/21   Entered 05/17/21 16:05:54   Pg 24 of 28

that the Agreement (together with its purported waiver of rights) is void or voidable (*see* Compl. Count I; Counts V-VII. As such, Astria has alleged sufficient facts to support the conclusion that it is not bound by any terms of the Business Agreement. *See Thompson v. Huston*, 17 Wash. 2d 457, 463 (1943) ("Fraud vitiates everything, and a contract obtained by fraud is, the fraud being established, a nullity").

Counts I (Fraud in the Inducement), and V-VII (Avoidance and Disallowance Claims), (Compl. ¶¶ 95-102; 123-141) allege fraudulent and constructively fraudulent conduct that would render the Business Agreement (and RevWorks Agreement) null and void, and Defendants do not challenge any of those claims, here.

In short, Astria would not have entered into the Business Agreement (or the RevWorks Agreement), had it known the truth about Cerner's misrepresentations. Accepting as true Astria's allegations and reasonable inferences drawn therefrom, as the court must at this stage, the waiver provision in the Business Agreement cited by Defendants (Motion at 21) is unenforceable, as part of the unenforceable Business Agreement. *See, e.g. Synergy Greentech Corp. v. Magna Force, Inc.*, No. 15-cv-5292 (BHS), 2016 WL 3906908 at *2 (W.D. Wash. July 19, 2016) (explaining that a void contract "produces no legal obligation" and "[t]hus, the result is that the contract is of no effect, is null, and is incapable of being enforced") (citing 25 Wash. Prac. § 1.7 (3d ed.)) (internal quotation marks omitted); *see also In re Park West Galleries, Inc., Mktg. & Sales Practices Litig.*, No. 09-MDL-2076 (RSL), 2010 U.S. Dist. LEXIS 64690, at *15 (W.D. Wash. June 25, 2010) ("A contract induced by a fraudulent or material misrepresentation is voidable by plaintiffs") (citing Restatement (2d) of Contracts § 164(1)). Moreover, Astria would also be free from any purported obligations under the

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

contract, including the waiver, if the contract is avoided, pursuant to 11 U.S.C. §§ 544, 548. *See* 5 COLLIER ON BANKRUPTCY, at ¶ 548.10[1] (16th ed. 2021) ("Avoidance is the setting aside or nullification of a transaction. Nullification generally means that the transfer is retroactively ineffective and that the transferee legally acquired nothing as a result of the transfer. In short, the trustee may act as if the transfer had not occurred. If the trustee avoids an obligation, nullification means that the transferee acquired no rights as a result of the transaction . . . ."); *see also In re. Feiler*, 218 F.3d 948, 952-53 (9th Cir. 2000) (applying the "general rule of bankruptcy" that "[o]nce avoided, [a] transaction is a nullity and is treated as if it never happened" because "it is well recognized that . . . § 548 gives a trustee power to avoid transactions by which a debtor would otherwise be bound"); *Premera Blue Cross v. Canon Sols. Am., Inc.*, No. 16-cv-0411 (JCC), 2017 WL 714216, at *1 (W.D. Wash. Feb. 23, 2017) (a defendant cannot invoke a contract as a defense where plaintiff alleges they were induced to enter the contract through fraud or misrepresentation.).

Accordingly, the waiver provision does not bar Astria's CPA claim.

## V.    CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the court deny Defendants' Partial Motion to Dismiss Count III, brought under the Washington Consumer Protection Act, R.C.W. 19.86 *et seq.* If the court is inclined to grant this partial motion to dismiss, Plaintiffs respectfully request that it be without prejudice to their re-pleading this cause of action.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

-20-

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

RESPECTFULLY SUBMITTED this 17th day of May, 2021.

ATTORNEYS FOR PLAINTIFFS

/s/ James L. Day
James L. Day (WSBA #20474)
Thomas A. Buford (WSBA #52969)
Lesley Bohleber, (WSBA #49150)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Phone: (206) 292-2110
Fax: (206) 292-2104
jday@bskd.com
tbuford@bksd.com,
lbohleber@bskd.com


/s/ Eric D. Wolkoff
Anthony A. Bongiorno (Admitted *Pro Hac Vice*)
Eric D. Wolkoff (Admitted *Pro Hac Vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Phone: (617) 712-7100
Fax: (617) 712-7200
anthonybongiorno@quinnemanuel.com
ericwolkoff@quinnemanuel.com

Susheel Kirpalani (Admitted *Pro Hac Vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Phone: (212) 849-7200
Fax: (212) 849-7100
Email: susheelkirpalani@quinnemanuel.com

*Attorneys for Plaintiffs Astria Health, et al.*

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

-21-

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union, Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

## **CERTIFICATE OF SERVICE**

I certify that on May 17, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which in turn automatically generates a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system in this case. The Notice of Electronic Filing for the foregoing identifies all recipients.

By   /s/ James L. Day
       James L. Day, WSBA #20474

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO
DISMISS

-22-

QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
T 617.712.7100 / F 617.712.7200

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
T 206 292 2110 / F 206 292 2104

ee17m701xj

21-80005-WLH   Doc 35   Filed 05/17/21   Entered 05/17/21 16:05:54   Pg 28 of 28