Barry W. Davidson (WSBA No. 07908)
Bruce K. Medeiros (WSBA No. 16380)
DAVIDSON BACKMAN MEDEIROS PLLC
1550 Bank of America Financial Center
601 W. Riverside Avenue
Spokane, Washington 99201
Telephone: (509) 624-4600
Facsimile: (509) 623-1660
Email : bdavidson@dbm-law.net
Email : bmedeiros@dbm-law.net

Patrick N Fanning (*admitted pro hac vice*)
PEAK Litigation LLP
4900 Main Street, Suite 160
Kansas City, MO 64112
Telephone: 816-281-5404
Email : pfanning@peaklitigation.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br>ASTRIA HEALTH, et al.,<br>Debtor(s) | Case No. 19-01189-WLH11 |
| ASTRIA HEALTH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CERNER CORPORATION AND<br>CERNER REVWORKS, LLC,<br><br>Defendants. | Adv. Proc. No. 21-80005-WLH<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF PARTIAL MOTION TO DISMISS** |

Cerner's Reply ISO Motion to Dismiss - 1

## I. INTRODUCTION

Astria has not offered well-pleaded facts to establish other Washingtonians "have been or will be injured in exactly the same fashion" as Astria claims it was injured, a threshold requirement for any CPA claim according to the Washington Supreme Court. Instead, Astria's best argument for why the Court should allow its CPA claim to survive is based on pure dicta from the Washington State Court of Appeals in *Behnke v. Ahrens*, 172 Wash. App. 281 (2012).

The intermediate appellate court's dicta in *Behnke* is inconsistent with other (non-dicta) holdings from the same court and the Ninth Circuit. Moreover, Astria fails to appreciate that the non-dicta portion of the *Behnke* opinion—holding that "[t]o establish an unfair or deceptive act, there must be shown a real and substantial potential for repetition"—is equally fatal to is CPA claim. *See Behnke*, 172 Wash. App. at 295.

Astria also cannot get around the fact it is a sophisticated business entity "not representative of bargainers vulnerable to exploitation," which the Washington State Court of Appeals has also explained is fatal to a CPA claim. *See Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 635 (Wash. Ct. App. 1997) (affirming dismissal of a tire dealership's CPA claims against Goodyear because "as a matter of law Goodyear's alleged unfair and deceptive acts did not affect the public interest").

Cerner's alleged conduct does not qualify as an "unfair or deceptive practice" under the CPA. Cerner's alleged conduct in this entirely private dispute between two parties likewise does not affect the public interest. The CPA is not intended to be a vehicle for sophisticated parties to litigate their private disputes.

II. ARGUMENT

    A. <u>Astria cannot satisfy the Washington Supreme Court's requirement to show other Washingtonians "have been or will be injured in exactly the same fashion" as Astria.</u>

Astria focuses its Objections on the Washington Court of Appeals' dicta in *Behnke v. Ahrens*, 172 Wash. App. 281 (2012), which Astria claims somehow overturns the Ninth Circuit Court of Appeals' decision in *Swartz v. KPMG* ("*Swartz II*"), 476 F.3d 756, 761 (9th Cir. 2012). In addition to failing to provide relevant governing authority that would overrule the logic and holding in *Swartz II*, Astria has not (and cannot) meet the Washington Supreme Court's requirement that any plaintiff who asserts a CPA claim establish other Washingtonians "have been or will be injured in exactly the same fashion" as plaintiff (Astria) claims it was injured. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 3d 778, 790 (1986).

Astria does not dispute *Hangman Ridge* controls when outlining the elements of a CPA claim. In fact, Astria relies on *Hangman Ridge* in its Objections so many times the Table of Authorities simply lists "*passim*" rather than specifically calling

Cerner's Reply ISO Motion to Dismiss - 3

out all pages where the cite appears. Nevertheless, Astria impliedly admits it cannot plead facts demonstrating any other Washingtonian consumer has "been or will be injured in exactly the same fashion" as Astria. Instead, this is precisely the type of private dispute the court in *Hangman Ridge* determined should not be dragged into the CPA's purview.

While Astria attempts to paint Cerner as the corporate version of a fly-by-night snake-oil salesman, Cerner's more than 40-year track record and position as one of the leading EHR vendors in the US and abroad tells a completely different story. The best argument Astria can muster is a generic listing of other lawsuits or disputes involving Cerner litigation (with non-Washington entities) involving materially different healthcare organizations and products and services from those at issue in the instant case. Suffice it to say, alleging a Fortune 500 company has previously had business disputes with six clients—without pleading the other business entities have any connection to the State of Washington—is not probative evidence demonstrating other Washington consumers are at risk of suffering "injur[y] in exactly the same fashion" as Astria. *See Hangman Ridge*, 105 Wash. 3d at 790.

Astria has not pleaded (and does not refute) Cerner's argument that the software solutions and services at issue in this private dispute were never marketed to the general public. And Astria has not pleaded any non-conclusory or concrete

facts to demonstrate Cerner has marketed the same software, solutions, and services at issue here to any other healthcare system or organization in the State of Washington. Astria's speculative, conclusory, and hypothetical claim of some conjectural risk to one of Washington's few healthcare organizations cannot support a CPA claim.

In fact, in the non-dicta portion of the *Behnke* case Astria relies on so heavily in its Objections, the appellate court held: "[t]o establish an unfair or deceptive act, there must be shown a real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated." *Behnke*, 172 Wash. App. at 295 (citing *Michael v. Mosquera-Lacy*, 165 Wash. 2d 595, 604-05 (2009), and *Burns v. McClinton*, 135 Wash. App. 285, 303-06 (2006)).

The plaintiffs in *Behnke* alleged the defendant (their prior attorney) failed to disclose a direct financial interest in the same transaction where he was providing plaintiffs legal advice (a clear conflict of interest). *Behnke*, 172 Wash. App. at 295. In support of their claim the attorney's conduct violated the CPA, plaintiffs offered evidence the defendant wrote engagement letters to other clients in similar transactions and had similarly failed to disclose his personal stake in the transaction and, thus, the attorney was likely to repeat his deceptive or unfair conduct to injure other clients. *Id.* The Court of Appeals disagreed.

Cerner's Reply ISO Motion to Dismiss - 5

The *Behnke* court reasoned, at best, plaintiffs could demonstrate the defendant represented other clients with respect to the particular controversial transaction at issue. "[B]ut it does not establish that the alleged deceptive act—failure to disclose aspects of his continuing financial relationship with Heritage—was repeated with these other clients or was likely to be repeated with other future clients." *Behnke*, 172 Wash. App. at 295. Accordingly, the *Behnke* court held: "[g]iven the belated, conclusory, and speculative nature of the Behnkes' response below, the trial court did not err in dismissing the Consumer Protection Act claim . . .." *Id.*

The plaintiffs in *Behnke* could at least point to specific additional Washington clients who had hired the same defendant, for essentially the same services in the same controversial transaction, who could have also been harmed in the same fashion as plaintiffs. Nevertheless, the *Behnke* court held plaintiffs' evidence was not sufficient to establish a CPA claim. Astria's claim is even more tenuous because it cannot plead similar facts to the plaintiffs in *Behnke* (evidence of other similar transactions involving similar software or services). Instead, Astra fails to identify a single well-pled fact to suggest Cerner similarly marketed or sold the same products or services at issue to any other Washington healthcare organization (or

even to the six clients located outside the state who allegedly had previous disputes with Cerner).[1]

Astria has failed to plead any facts to "show[] a real and substantial potential for repetition, as opposed to a hypothetical possibility of an [alleged] isolated unfair or deceptive act's being repeated." *Behnke*, 172 Wash. App. at 295. According to both the Washington Supreme Court and the Washington Court of Appeals (Western District), Astria's claims should be dismissed due to the absence of a fundamental element. *See Hangman Ridge*, 105 Wash. 3d at 790; *see also Behnke*, 172 Wash. App. at 295.

---

[1] As with any other technology, Cerner's software solutions are ever-evolving. Some technology is replaced entirely by newer technology. New code versions are released and installed by various clients according to their particular goals, financial ability, and need. And ancillary services to design, install, and support the various solutions likewise evolve over time. Thus, Astria's attempt to use a 2014 dispute with a hospital system outside Washington State, for example, as supposed evidence of similar (not identical) prior injury does nothing to establish an alleged real and concrete risk another Washington hospital will suffer an alleged "injur[y] in exactly the same fashion" as Astria alleges.

Cerner's Reply ISO Motion to Dismiss - 7

B. **Whether a given act or specific conduct has "the capacity to deceive a substantial portion of the public" is a question of law—not a question of fact.**

"An act is unfair or deceptive if it 'had the capacity to deceive a substantial portion of the public.'" *State v. LA Investors, LLC*, 2 Wash. App. 2d 524, 538 (2018) (quoting *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 47 (2009)). Throughout its Objections, Astria attempts to conflate the first element for a CPA claim with the separate and independent (third) element requiring Astria to demonstrate a "public interest impact." *See Hangman Ridge*, 105 Wash. 2d at 780 (setting forth the five elements of a CPA claim). However, Astria should not be allowed to attempt to confuse the issues of law with the issues of fact.

"Whether an act is unfair or deceptive under the CPA is a question of law." *LA Investors*, 2 Wash. App. 2d at 538 (citing *State v. Mandatory Poster Agency, Inc.*, 199 Wash. App. 506, 520-22, *review denied*, 189 Wash. 2d 1021 (2017)). Moreover, the question of capacity to deceive a substantial portion of the public is also a question of law for the Court (and not a question of fact). *LA Investors*, 2 Sash. App. at 539-40 ("We determine the issue is one of law, not fact. Accordingly, we conclude that the trial court properly analyzed whether LRO's mailer had the capacity to deceive a substantial portion of the public as a question of law . . ..");

Cerner's Reply ISO Motion to Dismiss - 8

*Goodyear Tire*, 935 P.2d at 635 ("Whether a particular act or practice gives rise to a CPA violation is a question of law.").[2]

---

[2] After explaining the question of whether a "particular act or practice gives rise to a CPA violation is a question of law," the *Goodyear Tire* court went on to hold that because the case involved a dispute between two sophisticated parties in a business transaction, as a matter of law the plaintiff's CPA claim failed. The court stated, "as a matter of law Goodyear's alleged unfair and deceptive acts did not affect the public interest." *Goodyear Tire*, 935 P.2d at 635. Despite the court's allusion to "the public interest" (i.e., terminology most closely aligned with the third element of a CPA claim), the court's rationale and holding was clearly focused on the first element (*i.e.*, what conduct qualifies as unfair or deceptive as a matter of law) rather than the third.

Astria focuses nearly all its effort on the third element, offering up an improper strawman argument alleging its closure of one of its hospitals, allegedly due to Cerner's conduct, adversely affected the public. Cerner disputes Astria's position and the facts do not support it. But for purposes of this Motion, Astria's arguments are simply irrelevant. Before Astria's strawman "public interest" argument can be relevant, Astria must satisfy the first element of demonstrating

Cerner's Reply ISO Motion to Dismiss - 9

The Court may (and should) determine and resolve the issue. The issue is ripe. Astria's response makes clear it cannot plead facts supporting the essential element of whether Cerner's alleged conduct had the capacity to deceive a substantial portion of the public. The parties need not waste time and resources arguing about the CPA when Astria's claims and alleged injury concern a one-off, private, dispute between two sophisticated business entities who negotiated their non-consumer deal at arms' length.

C. <u>Dicta by the Washington court of appeals does not negate the Ninth Circuit Court of Appeals' clear and unambiguous precedent</u>.

Beyond failing to explain how it could possibly make a threshold showing that Washington consumers have "been or will be injured in exactly the same fashion," Astria asks the Court to ignore directly relevant binding Ninth Circuit precedent to save its CPA claim. According to Astria, the Court must ignore the Ninth Circuit's instruction that "a scheme marketed to a 'select audience' of

---

Cerner's conduct and the nature of the dispute "gives rise to a CPA violation." Factually and legally indistinguishable cases from the Washington Supreme Court, the Washington Court of Appeals, and the Ninth Circuit demonstrate Astria cannot meet its legal burden.

Cerner's Reply ISO Motion to Dismiss - 10

persons . . . lacks the capacity to deceive the substantial portion of the public." *Swartz v. KPMG* ("*Swartz II*"), 476 F.3d 756, 761 (9th Cir. 2012). Astria does not support its argument by referencing a more recent opinion by the Washington Supreme Court or the Ninth Circuit. Instead, Astria asks the Court to reject the Ninth Circuit's holding in *Swartz II* and to apply dicta from an intermediate Washington appellate court (in *Behnke*). The Ninth Circuit's reasoning in *Swartz II* was, and remains, sound.

In *Swartz II*, the Ninth Circuit correctly recognized that, under some circumstances, the number of consumers who could potentially be at risk is so small the group cannot logically be deemed a "substantial portion of the public" without straining credulity. As Astria notes in its Objections, there are only approximately 117 hospitals in the State of Washington. *See* Objections at p. 13, fn. 8. It is difficult to fathom how a group of 117 hospitals could possibly represent a "substantial portion of the public" (in a state comprised of approximately 7.6 million citizens).

Moreover, Astria claims Cerner engaged in alleged unfair or deceptive conduct with respect to only one of Washington's health systems (Astria). Astria admits it has no evidence to support additional well-pleaded facts regarding risk to a "substantial portion of the public." The best Astria could muster in its response was that "Cerner may have already solicited any number of [other hospitals] before Astria, or they may have had (or still have) plans to do so." Objections at p. 13. In

Cerner's Reply ISO Motion to Dismiss - 11

other words, Astria offers nothing more than a "hypothetical possibility of an [alleged] isolated unfair or deceptive act's being repeated," which the court in *Behnke* held is not enough. *Behnke*, 172 Wash. App. at 295.

The Court, sitting in diversity, "must apply the substantive law of the forum state." *See Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980). When there is no controlling state court decision or law on a particular issue of substantive law, the federal court's obligation in a diversity case is to apply "our own best judgment in predicting how the state's highest court would decide the case." *Fiorito Bros. Inc. v. Fruehauf Corp.*, 747 F.2d 1309, 1314 (9th Cir. 1984). Here, the parties agree the Washington Supreme Court has not specifically addressed the "substantial portion of the public" question presented here. But the Ninth Circuit has. Astria, not liking the Ninth Circuit's holding and rationale, argues in favor of ignoring the Ninth Circuit and instead urges the Court to apply the Washington Court of Appeals' pure dicta in *Behnke*. Astria, presumably recognizing its argument is based on dicta, goes so far as to suggest the Court *must* follow dicta by an intermediate state court of appeals, citing and selectively quoting *Rocky Mountain Fire & Casualty Co. v. Dairyland Ins. Co.*, 452 F.2d 603, 603-04 (9th Cir. 1971), in a footnote. *See* Objections at p. 12, fn.7. First, the Ninth Circuit in *Rocky Mountain* was referencing dicta by the state's (Arizona) Supreme Court, not an intermediate court of appeals. Second, two years later, in *Hartford Accident*

*& Indemnity Co. v. Aetna Casualty & Surety Co.*, 792 P.2d 749, 755 (Ariz. 1990), the Arizona Supreme Court said the Ninth Circuit's application of its earlier dicta was improper, forcing the court to "overrule" its prior dicta to the extent it could be interpreted as rejecting equitable subrogation.

There are inherent risks in attempting to divine a state's substantive law based on dicta, even from the state's highest court. In any event, the Court certainly is not bound by dicta from an intermediate state court of appeals. The Ninth Circuit's well-reasoned (non-dicta) holding in *Swartz II* should guide the Court. The Ninth Circuit's opinion is also in line with other Washington state court opinions. The Washington Court of Appeals applied the same rationale (though under the third, public interest, element) in *Goodyear Tire*, a case Cerner cited in its moving brief (which Astria did not address in its Objections). The Court in *Goodyear* was asked whether one (of many) tire dealers could maintain a CPA claim against Goodyear Tire based on allegations Goodyear provided false profit projections unfairly or deceptively to entice the dealer (and other dealers) into entering deals with Goodyear. *Goodyear Tire*, 86 Wash. App. at 744-45. The *Goodyear Tire* court held no CPA claim existed:

> [T]he relationship between [Goodyear] and [the plaintiff] was not typical of those present in cases giving rise to cognizable consumer protection complaints. Rather, [the plaintiff] was an experienced businessman who had dealt with Goodyear for years. Even dealers without such a long association with Goodyear were persons whose experience indicated they were better able than the average consumer

Cerner's Reply ISO Motion to Dismiss - 13

> to judge for themselves the risks associated with Goodyear's proposals. They are not representative of bargainers vulnerable to exploitation."

*Id*. at 745.

The *Goodyear Tire* court did not have to look any further than the fact the plaintiff/tire dealer was "not representative of bargainers vulnerable to exploitation" to "hold as a matter of law Goodyear's alleged unfair and deceptive acts did not affect the public interest" and to affirm the trial court's dismissal of the CPA claim. *Id.* The *Goodyear Tire* court's holding is fatal to Astria's CPA claim. There is no meaningful way for Astria to distinguish its CPA claim from the plaintiff/tire dealer's claim in *Goodyear*. Astria is "not representative of bargainers vulnerable to exploitation." *See id*. Rather, Astria's "experience indicated [it] w[as] better able than the average consumer to judge for [itself] the risks associated with [Cerner's] proposals." *See id.* Indeed, Astria specifically represented to Cerner in the Cerner Business Agreement that it was a sophisticated business entity contemporaneous with its voluntary agreement to "waive all protections of any trade practices statutes." *See* ECF No. 11 at ¶ 622.

If the Court properly applies the non-dicta portion of the Washington State Court of Appeal's decision in *Behnke*, *Swartz II* become a moot point because Astria admittedly has no way to plead or prove other Washington consumers have been or will be injured in exactly the same fashion as Astria alleges it was injured. Regardless, the Ninth Circuit's instruction in *Swartz II* "that, as a matter of law, a

Cerner's Reply ISO Motion to Dismiss - 14

scheme marketed to a 'select audience' of persons . . . lacks the capacity to deceive the substantial portion of the public" remains good law based on sound logic and a rational understanding of the English language. *Swartz v. KPMG* ("*Swartz II*"), 476 F.3d 756, 761 (9th Cir. 2012). It also remains consistent with other (non-dicta) pronouncements by Washington State courts. *See Goodyear Tire*, 86 Wash. App. at 745. Astria's CPA claim should be dismissed.

## III. CONCLUSION

Astria has failed to state a CPA claim against Cerner. Astria has pleaded no facts to suggest another Washington consumer, let alone a Washington hospital or health system, has allegedly been or will be injured in the same fashion Astria claims it was injured. No amount of linguistic gymnastics on Astria's part can twist the phrase "substantial portion of the public" to mean one member of the public (or even 117 hospitals for that matter). And Astria cannot alter its status as a sophisticated business entity—as opposed to a naïve consumer vulnerable to exploitation that the CPA was enacted to protect. The private dispute between two sophisticated business entities who negotiated terms in an arms' length business deal does not affect the public and should be dismissed. *See Goodyear Tire*, 86 Wash. App. at 745.

Dated this 25th day of May 2021.

DAVIDSON BACKMAN MEDEIROS PLLC

*/s/ Bruce K. Medeiros*
Barry W. Davidson, WSBA No. 07908
Bruce K. Medeiros, WSBA No. 16380
1550 Bank of America Financial Center
601 West Riverside Avenue
Spokane, Washington  99201
Telephone:  (509) 624-4600
Facsimile:  (509) 623-1660
Email:     bdavidson@dbm-law.net
           bmedeiros@dbm-law.net

and

PEAK LITIGATION LLP

*/s/ Patrick N. Fanning*
Patrick N. Fanning (*admitted pro hac vice*)
4900 Main Street, Suite 160
Kansas City, MO 64112
Telephone:  816-281-5404
Email :     pfanning@peaklitigation.com

*Attorneys for Cerner Corporation and Cerner Revworks, LLC*

Cerner's Reply ISO Motion to Dismiss - 16