Bruce K. Medeiros (WSBA No. 16380)
DAVIDSON BACKMAN MEDEIROS PLLC
601 West Riverside Avenue, Suite 1550
Spokane, Washington 99201
Telephone: (509) 624-4600
Email: bmedeiros@dbm-law.net

Patrick N. Fanning (*pro hac vice*)
Kristina L. Burmeister (*pro hac vice*)
J. Aaron Craig (*pro hac vice*)
PEAK Litigation LLP
4900 Main Street
Kansas City, Missouri 64112
Telephone: (816) 281-5504
Email: pfanning@peaklitigation.com
kburmeister@peaklitigation.com
acraig@peaklitigation.com

*Attorneys for Cerner Corporation and Cerner Revenue Cycle, LLC*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| In re: | ) | Case No. 19-01189-WLH11 |
| ASTRIA HEALTH, | ) | |
| Debtor. | ) | |
| | ) | |
| ASTRIA HEALTH, | ) | Adv. Proc. No. 21-80005-WLH |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| v. | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **PROTECTIVE ORDER TO** |
| CERNER CORPORATION AND | ) | **PREVENT PLAINTIFFS FROM** |
| CERNER REVENUE CYCLE LLC, | ) | **SERVING SUBPOENAS ON** |
| | ) | **CERNER'S CLIENTS** |
| Defendants. | ) | |

Memo in Support of Motion for Protective Order - 1

Defendant Cerner Corporation asks the Court to enter a protective order under Fed. R. Civ. P. 26(c) to forbid Astria from issuing subpoenas to two existing Cerner clients. The subpoenas are harassing, overbroad, and seek to inquire into collateral matters that have nothing to do with the dispute between Astria and Cerner. Particularly, Astria has issued proposed subpoenas that seek to require Cerner clients Trinity Health (located in North Dakota) and Benewah Community Hospital (located in Idaho) to review and produce a substantial volume of documents. Astria's subpoenas concern issues or disputes that may have existed between the clients and Cerner on tangential matters (which, in the case of Trinity Health, involved a litigated dispute that arose, and was resolved, nearly a decade ago).

Astria's proposed subpoenas are also improper under Fed. R. Civ. P. 45(c)(3)(B)(i) because, to answer Astria's subpoenas, Cerner's clients would either have to produce documents arising from either a confidential business relationship (Benewah) or an arbitration that was subject to a confidentiality agreement (Trinity).

Finally, Astria's proposed subpoenas to Cerner's clients are improper because—if Astria believed the documents it seeks were relevant and responsive under Rule 26—it could have requested the documents through a timely discovery

Memo in Support of Motion for Protective Order - 2

request to Cerner. While Cerner would have likely objected to the requests citing relevance, proportionality, and overbreadth, Astria cannot reasonably argue the documents it now seeks from Cerner's clients could not have initially been pursued through Cerner.

STANDARD OF REVIEW

Rule 26(c) (as incorporated into adversary proceedings by Fed. R. Bankr. P. 7026) allows a party to obtain a protective order to narrow or limit the scope of discovery into collateral matters. Rule 26(c)(1) states that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending...." *Id.* "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including… forbidding the disclosure or discovery." *Id*. Moreover, the Western District has noted: "[a] party has standing to challenge a subpoena issued to third parties where its own interests may be implicated." *Johnson v. Bancorp*, No. C11-02010 RAJ, 2012 WL 6726523, at *2 (W.D. Wash. Dec. 27, 2012).

Additionally, Rule 45(c)(3)(B)(i) allows the court to modify or quash a subpoena that would require a non-party to disclose confidential information. While the moving party has the burden of persuasion to quash a subpoena under Rule 45(c)(3), the party that issues the subpoena must demonstrate the

Memo in Support of Motion for Protective Order - 3

relevance of the discovery it seeks. *EON Corp. IP Holdings, LLC v. T–Mobile USA, Inc.,* No. 12–cv–080082 LHK (PSG), 2012 WL 1980361, at *1 (N.D. Cal. June 1, 2012). When deciding whether to quash a subpoena, "relevance of the subpoenaed information has an important bearing upon the determination of claim that a subpoena duces tecum is unreasonable or oppressive, as well as to a claim of confidentiality for the material sought to be produced...". *Id.* (*citing N.Y. State Energy Research v. Nuclear Fuel Serv.*, 97 F.R.D. 709, 712 (W.D.N.Y.1983)).

ARGUMENT

A. <u>Astria intends to serve overbroad discovery requests on two current Cerner clients</u>.

Benewah Community Hospital is an Idaho health system that uses Cerner's electronic health record ("EHR") platform.[1] In its proposed subpoena, Astria has asked Cerner's client Benewah to produce:

1. Documents sufficient to show how Cerner caused a "cash crunch," for [Benewah], as reported in, *inter alia*, the articles found at the following links. http://www.gazetterecord.com/news/article_cbf288e8-3da3-11e8-9695-3381142e3856.html [**attached as Exhibit A**]; and https://www.beckershospitalreview.com/finance/idaho-hospital-faces-cash-crunch-after-software-glitch-causes-billing-problems.html;

_____

[1] Due to the confidential nature of its business relationships with its clients, Cerner relies on publicly available information to support its statements. *See* Patient Portal – Secure, Portable Online Health Records – Benewah Community Hospital (bchmed.org) (which states: "Benewah Community Hospital offers you access to your health records through Cerner Health.")

Memo in Support of Motion for Protective Order - 4

2. Documents sufficient to show Cerner's knowledge of the problems caused by its software and/or services, leading to the above-referenced reported "cash crunch"; and

3. [Benewah's] contracts with Cerner for the provision of electronic health records or revenue cycle management services and/or services, and/or business office services.

Dkt. No. 81, at p. 15 of 15.

Like Benewah, Trinity Health is a North Dakota health system that uses Cerner's EHR platform,[2] and Astria seeks the following documents regarding Trinity and Cerner's confidential arbitration:

1. Any orders, decisions, judgments, or recommendations issues as part of the Arbitration;

2. All documents filed, submitted, served, and/or exchanged by or between [Trinity] and Cerner as part of the Arbitration;

3. Documents sufficient to show the basis for damages [Trinity] sought from Cerner through the Arbitration; and

4. [Trinity's] contracts with Cerner for the provision of electronic health records or revenue cycle management software and/or services, and/or business office services.

Dkt. No. 81, at p. 9 of 15.

---

[2] *See* Patient Portal - Trinity Health, which states "Trinity Health North Dakota uses Cerner Health to provide a secure username and password used to access your patient record information."

Memo in Support of Motion for Protective Order - 5

Astria's requests for documents from Cerner's clients are grossly overbroad and not tailored or proportional to Astria's allegations against Cerner. For example, Astria submits an unbounded request to non-party Benewah to produce documents that will satisfy Astria's interest in learning "how Cerner caused a 'cash crunch'" or otherwise had knowledge of unspecified "problems" experienced by Benewah. Astria's request necessarily calls for Benewah to produce its financial information as well as any communications between Benewah and Cerner over the course of Benewah's 15-month implementation and the period following go-live. *See* Becker's CFO Report, *Idaho Hospital Faces Cash Crunch After Software Glitch Causes Billing Problems* (2018, April 12)[3] (noting Benewah worked with Cerner for 15 months to implement Cerner's software).

Astria's subpoena to Trinity is even more broad. Astria opts for a sledgehammer rather than a scalpel, as it demands that Cerner's client produce *every* document produced or submitted during Trinity and Cerner's lengthy and confidential arbitration proceeding. *See, e.g.,* Dkt. No. 81, at p. 9 of 15 (seeking, "All documents filed, submitted, served, and/or exchanged by or between You and Cerner as part of the Arbitration"). Astria made no attempt to limit its request or to

---

[3] *See* https://www.beckershospitalreview.com/finance/idaho-hospital-faces-cash-crunch-after-software-glitch-causes-billing-problems.html.

Memo in Support of Motion for Protective Order - 6

account for the burden its subpoenas would impose on Trinity (as Astria's request could require Trinity to produce hundreds of thousands, if not more than a million, pages of documents).

Astria also has not explained why it could not have first asked Cerner to produce the documents it now seeks from Cerner's clients. Although Cerner has no right to require Astria to pursue discovery in a particular way, the appropriate first step for securing the documents would have been to serve a discovery request on Cerner. Although Cerner would likely have objected to Astria's requests, Astria should not be allowed to side-step the ordinary discovery process by serving Cerner's clients with harassing, over broad subpoenas. "Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc*., 300 F.R.D. 406, 410 (C.D. Cal. 2014); *see also Precourt v. Fairbank Reconstruction Corp*., 280 F.R.D. 462, 467 (D.S.D. 2011) ("When a nonparty is subpoenaed, the court is particularly mindful of Rule 45's undue burden and expense cautions.").

B. Astria's requests are tangential and collateral to any of the issues in the dispute.

The information Astria seeks through its proposed subpoenas to Benewah and Trinity are irrelevant to Astria's claims and are not proportional to the issues in the dispute. "While the scope of relevancy is broader for discovery purposes, discovery permissible from nonparties is narrower than that permissible from

Memo in Support of Motion for Protective Order - 7

parties to the action." *F.T.C. v. AMG Servs., Inc*., 291 F.R.D. 544, 553 (D. Nev. 2013); *see also Dart Industries Co. v. Westwood Chemical Co*., 649 F.2d 646, 649–50 (9th Cir.1980) (broader restrictions on discovery are appropriate to protect nonparties); *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev.1986) ("The standards for non-party discovery . . . require a stronger showing of relevance than for simple party discovery.").

Rule 26(b) limits the scope of discovery to matters that are both relevant to a claim or defense "and proportional to the needs of the case." Fed. R. Civ. P. 26(b) (Current through 11-01-21). In determining the proportionality of the request, the Court must consider:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.*

Astria's proposed subpoena to Benewah is neither relevant nor proportional to the needs of the case. Without evaluating the truth of Astria's contention that Benewah was experiencing a "cash crunch" caused by Cerner, Cerner's relationship with Benewah has no bearing on Astria's claims.

Memo in Support of Motion for Protective Order - 8

Astria alleges Cerner committed fraud when Cerner sold Astria RevWorks in June 2018, because, according to Astria, Cerner told Astria that the issues at Benewah were "one-off." Specifically, Astria alleges:

> [O]n June 6, 2018, Astria met with Cerner's President of CommunityWorks and RevWorks. When asked specifically about a recent news article that stated that another hospital system [Benewah] using RevWorks was facing significant cash collection issues because of flaws in the RevWorks platform, Cerner told Astria that the issue that hospital was facing was a one-off, that those issues do not otherwise happen with RevWorks, and that Cerner had fixed the issue for the hospital…

Am. Compl. at ¶96.

However, the information Astria uses to build its argument (media reports) confirms Benewah was truly a "one-off." Particularly, the news article Astria references in its subpoena confirms the Medicare billing issue Benewah experienced following go-live was not particularly common: "The hospital can bill private insurers properly, but the software glitches prevented it from billing Medicare." Becker's CFO Report, *Idaho Hospital Faces Cash Crunch After Software Glitch Causes Billing Problems* (2018, April 12) URL at fn. 2.[4]

Moreover, according to the follow-up news report from the same local outlet that initially reported the glitch (which was coincidentally posted the same day as

_____

[4] Logically, Cerner (a Fortune 500 EHR company) would not be able to last very long if its EHR clients could not bill Medicare using Cerner's platform.

Memo in Support of Motion for Protective Order - 9

the June 6, 2018 meeting between Cerner and Astria representatives), Benewah's billing issues had "improved dramatically" and "[t]he billing portion of the system, *implemented in February*, now works more efficiently than the system it replaced." *See* St. Marie's Gazette Record, *Hospital gains on software issues* (2018, June 6) (emphasis added), attached as **Exhibit B**. Accordingly, at or around the time of the June 6, 2018 meeting that Astria cites as the foundation for its fraud and consumer protection act claims, the local news media reported that the Medicare billing issue Benewah complained about at go-live had been resolved.

Unlike Benewah's issue, Astria does not plead any alleged software "glitch" prevented it from billing Medicare properly. *See* Am. Compl. Rather, Astria's CPA and fraud claims center around allegations that Cerner representatives improperly promoted and sold RevWorks (*i.e.*, a contracted-for *service*) to Astria. The Benewah news article Astria references in its subpoena does not suggest or otherwise infer that Benewah was using Cerner's RevWorks services at the time it experienced the Medicare software glitch. And Astria has not come forward with any independent evidence indicating Benewah was using RevWorks as of June 6, 2018. (The witnesses who have testified to-date have confirmed Benewah had not contracted with Cerner for RevWorks services as of June 6, 2018.)

Astria signed the Cerner Business Agreement ("CBA") to purchase Cerner's EHR (along with Cerner's patient accounting solution) on June 30, 2017. Am.

Memo in Support of Motion for Protective Order - 10

Compl., ¶41. Astria represents that Cerner's build of the Astria EHR "took about one year" and the EHR went live at the first hospital (Sunnyside) in June 2018. *Id.* at ¶69. Astria nevertheless pleads Cerner committed fraud in the inducement that led Astria to sign the CBA in June 2017 and to sign the RevWorks Agreement in June 2018. Am. Compl., Count I. However, the Benewah software glitch—which according to the news media arose in February 2018—had not yet manifested itself when Astria signed the CBA in June 2017. And the undisputed evidence elicited thus far confirms Benewah was not yet a party to a RevWorks contract by June 2018.

Because Astria's proposed subpoena to Benewah would shed no light on Astria's liability theories against Cerner, the Court should quash Astria's subpoena to Benewah. *See Booker v. State of Arizona*, No. 2:09-cv-00902-ROS, 2010 WL 2720828, at *2 (D. Ariz. July 9, 2010), ECF No. 44 (granting motion for protective order because discovery did not pertain to pleaded causes of action and explaining that if "Plaintiffs wish to obtain the discovery they have propounded, they must amend their complaint to plead additional theories").

Similarly, Trinity's business relationship with Cerner and the parties' participation in a 2013 confidential arbitration cannot possibly have any relevance or bearing on the lawsuit filed by Astria. Astria has not alleged or come forward with any evidence establishing that it was using the same software Trinity

Memo in Support of Motion for Protective Order - 11

purchased more than a decade earlier. Astria has not pleaded that Trinity was using Cerner's RevWorks services or CommunityWorks platform, a prerequisite to the nine-year-old Trinity arbitration having any shred of relevance to Astria's claims. (Indeed, Cerner's RevWorks offering did not even exist in 2012 when Trinity initiated arbitration against Cerner.)

C. Astria seeks to have Cerner's clients divulge confidential business information.

Much like its contractual relationship with Astria, Cerner has bilateral confidential relationships with its other clients (like Benewah and Trinity). Astria's proposed subpoenas are also improper because they seek confidential information.

Both Benewah and Trinity are current clients, and the parties agreed to secure and protect the other parties' confidential information, which includes the terms of the parties' business agreements, disputes between the parties, pricing, and all other non-public information regarding Cerner's products and services. Trinity and Cerner also had a confidential arbitration agreement and they adhered to the confidentiality both throughout and after the arbitration.

Astria's proposed subpoenas seek documents Trinity, Benewah, and Cerner agreed would be kept in strict confidence. Accordingly, the Court should grant Cerner's motion to quash the subpoena. *See Eric v. Van Cleave*, No. C16-1278RSM, 2017 WL 553276, at *6 (W.D. Wash. Feb. 10, 2017) (granting the plaintiffs' motion for protective order and quashing the defendant's subpoena to a

Memo in Support of Motion for Protective Order - 12

third-party seeking plaintiffs' confidential medical records because the records sought contained confidential information, were not relevant to any claim or defense, were not proportional to the needs of the case, and were overbroad).

## CONCLUSION

Astria's proposed subpoenas to Cerner's clients are harassing, over broad, not relevant, and not proportional to the issues in the dispute. Cerner respectfully asks the Court to enter an order quashing Astria's subpoena to nonparties Benewah and Trinity, which ask Cerner's clients to produce an overwhelming amount of confidential and irrelevant materials.

Dated: November 15, 2021.

/s/ Bruce K. Medeiros
Bruce K. Medeiros (WSBA No. 16380)
DAVIDSON BACKMAN MEDEIROS PLLC
601 West Riverside Avenue, Suite 1550
Spokane, Washington 99201
Telephone:   (509) 624-4600
Email:        bmedeiros@dbm-law.net

/s/ Patrick N. Fanning
Patrick N Fanning (admitted pro hac vice)
Kristina L. Burmeister (pro hac vice)
J. Aaron Craig (pro hac vice)
PEAK Litigation LLP
4900 Main Street
Kansas City, Missouri 64112
Telephone:    (816) 281-5504
Email: pfanning@peaklitigation.com
         kburmeister@peaklitigation.com
         acraig@peaklitigation.com

Memo in Support of Motion for Protective Order - 13

*Attorneys for Cerner Corporation and
Cerner Revenue Cycle, LLC*

Memo in Support of Motion for Protective Order - 14

# Exhibit A

http://www.gazetterecord.com/news/article_cbf288e8-3da3-11e8-9695-3381142e3856.html

# Software glitch produces cash crunch at hospital

By Devon Barta The Gazette Record
Apr 11, 2018



Problems with software at Benewah Community Hospital are causing billing issues.

FILE | GAZETTE RECORD

Benewah Community Hospital faces a cash shortage after problems with new software caused a myriad of billing problems. The county commissioners said they will loan the hospital money until the software is fixed.

"We are going to do what is necessary to help the hospital," Jack Buell, chairman of the county commission, said.

The hospital, which is owned by the county, converted to the software in February. Problems with billing are largely tied to Medicare and surfaced shortly after the change.

"Our billing department is doing a fantastic job under some difficult circumstances," Dan Hammes, chairman of the hospital board, said. "They are working closely with the vendor to rectify issues as they arise."

The software is sold by Cerner Corporation, which is based in Kansas City. The company provides software services to hundreds of hospitals throughout the United States and has about $5 billion in annual sales.

The hospital has worked with Cerner over the last 15 months in preparation for the changeover. Problems surfaced in the final weeks when issues with an update in Kansas City prevented proper testing of the billing functions of the software.

"Because of the lag between providing services and issuing bills, we did not encounter the problem for about a week after we went live," Mr. Hammes said. "While Cerner has been supportive, we have made it quite clear how critical the situation is."

Benewah Community Hospital has about $27 million a year in gross revenue with more than half of that billed to Medicare. While billing to private insurers functions properly, most bills for Medicare patients cannot be sent because of software glitches. It takes about 21 days after bills are transmitted to Medicare for the hospital to receive payment.

"We've used our cash reserves to operate for the past several weeks but sometime late next week we will be low on cash," Mr. Hammes said. "Our cash flow will return to normal some three weeks after the software is fully operational, but in meantime we will need a source of cash to operate."

This week Cerner dispatched a technician to St. Maries in an effort to expedite repairs to the system.

The hospital spends about $200,000 per week.

Mr. Buell said the county will investigate securing a line of credit for the hospital.

"We will look at our options and we will keep our hospital operating," Mr. Buell said.

The federal government pushed hospitals to convert from paper medical records to electronic record-keeping, that includes billing, during Obama's first term.

Prior to the change, Benewah Community Hospital used a system provided through Kootenai Health. About two years ago, the Coeur d'Alene hospital started plans to change software vendors.

Because of differences in how a small hospital bills compared to a large facility like Kootenai Health, Benewah Community Hospital opted for a different vendor; Cerner.

"The company has a good reputation. In fact, the Grangeville hospital has used their software for years and they are quite satisifed," Mr. Hammes said. "The good reports we received combined with the lower cost convinced us to go with Cerner."

Cerner reports that it has 27,000 clients in 35 countries worldwide. In addition, the company recently signed a multi-million dollar contract with the Veterans' Administration.

Although the company boasts thousands of satisfied clients, and grew revenue by some 7% last year, this is not the first time there has been billing issues with Cerner software.

Agnesian Healthcare, a hospital in Wisconsin with $466.2 million in annual revenue, is suing Cerner over problems it had with billing. The company seeks $16 million in damages.

http://www.gazetterecord.com/news/article_17648370-69a1-11e8-adc9-07f1f7aeecff.html

# Hospital gains on software issues

By Marcus White The Gazette Record
Jun 6, 2018

Billing issues at Benewah Community Hospital caused by the conversion to new software have improved dramatically. Considerable work, however, remains to process bills from the time when the new software was not working properly.

The billing portion of the system, implemented in February, now works more efficiently than the system it replaced.

A backlog of nearly 12 weeks of claims from February to April is still left to be sorted through, however, and CEO Anthony Koroush said it will take time.

"February 19 to April 1 is where most of the issues are," he said. "They all need to be reprocessed manually and individually."

He said Cerner, the company that sold the software, is working closely with the hospital to get on track.

Statements are generating slowly, from February onward since BCH has made the decision to double-check the accuracy of each account before it is mailed.

To alleviate cash deficits, Medicare advanced the facility $692,000 last month to help prevent revenue shortfalls. Likewise, Benewah County loaned the hospital  $475,000 for emergency spending.

Mr. Koroush said BCH has not cashed the check from the county, and only plans to do so if it becomes absolutely necessary.

Problems with the new software were expected, according to Mr. Koroush. The problems, however, were much worse.

"We didn't know the multitude of issues," he said. "It usually does a take a year to work out a system, though."

Mr. Koroush said any patron of BCH that is wondering where his or her bill is, or has questions about how the new system works should call him or visit the hospital and speak with staff.

The number to the hospital is 208-245-5551.

# Exhibit B

# Idaho hospital faces cash crunch after software glitch causes billing problems

Ayla Ellison ([Twitter](#)) - Friday, April 13th, 2018 [Print](#) | [Email](#)

Benewah Community Hospital in St. Maries, Idaho, faces a cash shortage after it implemented new Cerner software that caused billing problems, according to the *[St. Maries Gazette Record](#)*.

The hospital, which is owned by Benewah County, worked with Cerner for 15 months to implement the software, but the problem reportedly didn't come to light until after the hospital went live following a software update. The hospital can bill private insurers properly, but the software glitches prevent it from billing Medicare.

"Because of the lag between providing services and issuing bills, we did not encounter the problem for about a week after we went live," Dan Hammes, chairman of the hospital board, told the *St. Maries Gazette Record*.

The Benewah County commissioners said the county will loan the hospital money until the software issue is resolved. Mr. Hammes said the hospital's billing department is working closely with Cerner to fix the issue.

Mr. Hammes said the hospital's cash flow will return to normal about three weeks after the software is fully functional because it takes 21 days after bills are submitted to Medicare for the hospital to receive payment.

## More articles on healthcare finance:

[New York oncology practice files for bankruptcy following FBI raid](#)
[5 latest hospital bankruptcies, closures](#)
[10 hospitals seeking CFOs](#)

*Copyright © 2021 Becker's Healthcare. All Rights Reserved. [Privacy Policy](#). [Cookie Policy](#). [Linking and Reprinting Policy](#).*