Bruce K. Medeiros (WSBA No. 16380)
DAVIDSON BACKMAN MEDEIROS PLLC
2021-601 W. Riverside Avenue, Suite 1550
Spokane, Washington 99201
Telephone: (509) 624-4600
Facsimile: (509) 623-1660
Email : bmedeiros@dbm-law.net

Patrick N. Fanning (*pro hac vice*)
Kristina L. Burmeister (*pro hac vice*)
J. Aaron Craig (*pro hac vice*)
Lathrop GPM LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108
Telephone: 816-292-2000
Email : patrick.fanning@lathropgpm.com
kristi.burmeister@lathropgpm.com
aaron.craig@lathropgpm.com

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| In re:<br>ASTRIA HEALTH, et al.,<br>Debtor(s) | Case No. 19-01189-WLH11<br><br>Adv. Proc. No. 21-80005-WLH |
| ASTRIA HEALTH, et al.,<br><br>Plaintiffs,<br>v.<br><br>CERNER CORPORATION AND CERNER REVWORKS, LLC,<br><br>Defendants. | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** |

Opposition to Motion to Compel - 1

## INTRODUCTION

Plaintiff Astria Health has served over broad discovery requests on Defendant Cerner Corporation that are not proportional to the issues in the litigation. Astria has made no meaningful attempt to tailor its discovery requests to the issues in dispute but has instead opted to engage in a fishing expedition. Astria seeks discovery into Cerner's interactions with other clients nationwide, including clients who bought services and solutions dissimilar to the ones Astria bought. If Cerner had to respond to Astria's requests, it would have to engage in a herculean effort.

First, Astria asks Cerner to produce nationwide marketing materials (in draft or final form, including Cerner's associated internal communications) concerning nearly all of Cerner's marketing efforts. Cerner has produced or agreed to produce all marketing communications it prepared for Astria in conjunction with Astria's sales process. Cerner's other marketing materials are irrelevant because, of course, Astria could not possibly have relied upon them in making its decision to purchase Cerner's electronic health record ("EHR") software platform or RevWorks business office services. Even if Astria could somehow establish even marginal relevance to its request for Cerner's marketing materials, Astria made no attempt here to tailor its request to the issues in dispute. Additionally, Astria has not shown

how its request is relevant to its Washington Consumer Protection Act ("CPA") claim.

Astria has also misstated its standard of proof under the CPA. Astria claims it need only establish that "other customers have been *similarly harmed* or are likely to be harmed by Cerner's deception." Dkt. No. 76 at p. 2 (emphasis added). However, "similar" harm is not the standard. Instead, Astria must show *exact* harm to other Washington consumers to convert the parties' entirely private dispute into a redressable public dispute under the CPA. Notwithstanding the applicable standard, Astria made no attempt to tailor its discovery request to seek marketing materials sent to Washington consumers similarly situated to Astria (*i.e.*, other Washington health systems that purchased Cerner's RevWorks services).[1]

Astria also seeks "all documents and communications related to any issues or delays associated with any implementation or use" of Cerner's systems or services "in Washington State or for use in Washington State." Again, Astria's request is overbroad and unduly burdensome, and Astria made no attempt to limit

---

[1] Astria limits its CPA claim to Cerner's alleged conduct in selling the RevWorks business office services ("BOS") agreement to Astria in June 2018. Astria does not assert any CPA claim arising from Cerner's sale of its EHR platform to Astria in 2017. *See* Am. Compl., Count III.

Opposition to Motion to Compel - 3

its request either to RevWorks business office services or in proportion to the needs of this case.

Finally, Astria seeks documents relating to Cerner's response to questions from customers and potential customers related to unspecified "issues or media reporting associated with other Cerner customers." As phrased, Astria's request is vague and hopelessly overly broad. And Astria has refused to narrow the request to specific issues it believes may be pertinent to the dispute.

## ARGUMENT

A. <u>Cerner's nationwide marketing presentations to clients other than Astria is irrelevant and not proportional and would force Cerner to sustain an undue burden and substantial cost if it was required to respond to Astria's overly broad requests.</u>

Astria's Request for Production No. 25 demands Cerner produce every marketing document and communication, in draft and final form, concerning nearly every Cerner client or potential client, regardless of the subject matter or location. Specifically, Astria demands:

> All documents and communications related to marketing of the Cerner EHR, RevWorks, BOS Services, or other revenue cycle management-related software or services to any hospital, hospital system, clinic or health care provider aimed nationwide, in Washington State, or elsewhere for use in Washington State, including, but not limited to, all communications between Your employees discussing meetings with such entities and/or sales pitches, marketing efforts, sales materials, marketing materials, purported success stories of other Cerner customers, and/or other promotional materials to be shared with or potentially shared with such entities, whether in draft or final form.

Opposition to Motion to Compel - 4

> These documents and communications include both standard sales and marketing documents and communications and target-specific sales and marketing documents and communications.

Dkt. No. 76-2, at pg. 22-24 of 27.

Astria's Interrogatory No. 5 is equally overbroad as it demands Cerner provide information regarding "any nationwide . . . marketing efforts":

> Identify every hospital, hospital system, clinic or health care provider in Washington State to which you have marketed the Cerner EHR, RevWorks, BOS Services, or other revenue cycle management-related software or services. Include hospitals, hospital systems, clinics or health care providers located outside of Washington State if any aspect of the Cerner EHR, RevWorks or BOS Services was to be used in Washington State. Include any nationwide or regional marketing efforts, which would have necessarily included Washington State.

*See* Dkt. No. 76-1, at pg. 6 of 15.

Astria's over broad attempt to obtain discovery into Cerner's nationwide marketing efforts for its "EHR" or "other revenue cycle management-related software or services" does not jibe with Astria's pleaded CPA claim. Particularly, in its CPA claim (Count III of its Amended Complaint) Astria pleads:

> In fraudulently inducing Astria to enter into the [June 26, 2018] RevWorks Agreement, Cerner and [*sic.*] engaged in unfair or deceptive acts or practices affecting the people and the economy, and therefore trade or commerce, in Washington. Cerner's actions impacted a public interest because they targeted and led to the bankruptcy of a non-profit hospital system that provided critical services to the community in Yakima Valley, Washington . . . .

Dkt. No. 63, p. 35, ¶ 108; *see* ¶ 26 for the date of the RevWorks Agreement.

Opposition to Motion to Compel - 5

Astria limited its CPA claim to Cerner's sale of RevWorks BOS to Astria. Nevertheless, Astria now seeks to engage in nationwide, far-reaching discovery into Cerner's marketing of its EHR platform (which is the overwhelming majority of Cerner's business; Cerner's former RevWorks business was but a small part.). Astria's requests are the quintessential definition of an impermissible fishing expedition. *See Inst. For Wildlife Prot. v. Norton*, 337 F. Supp. 2d 1223, 1226 (W.D. Wash. 2004) ("[D]iscovery may not be used to conduct a fishing expedition in hopes that some fact supporting an allegation will be uncovered.") (citing *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) (explaining "district courts need not condone the use of discovery to engage in 'fishing expedition[s]'")).

Astria drafted its boundless discovery requests in such an overly broad manner that there is simply no possible or practical way for Cerner to respond. Astria attempts to downplay the over broad nature of its requests. (For example, in its Motion, Astria failed set forth the full language of the discovery requests at issue as required by Local Rule 7026-1). Instead, Astria opted to paraphrase and cite selective portions of the discovery requests to seemingly limit the scope of information and documents sought. But Astria's requests, viewed as a whole, are facially overbroad and essentially unlimited in scope. When juxtaposed with Astria's pleaded CPA claim, their discovery requests are unsalvageable. *See, e.g., Hall v. L-3 Commc'ns Corp.*, No. 2:15-CV-00231-SAB, 2017 WL 216707, at *4

(E.D. Wash. Jan. 18, 2017) ("[T]he Court is not in the business of drafting discovery requests and rejects the request from Plaintiffs to redraft the offending discovery requests.").

Cerner has produced and will continue to produce documents related to Cerner's marketing specific to Astria. However, Cerner's *nationwide* marketing efforts—including internal communications and drafts for all conceivable EHR clients—are not relevant to any of Astria's claims or Cerner's defenses. Cerner should not be for forced to locate, upload, review, and produce marketing materials Astria seemingly admits it never saw or relied upon. Astria's requests are not proportional to the needs of the case.

Astria cites no case law to support its contention Cerner should be forced to produce documents "related to its commercial efforts nationwide" in response to Astria's Washington CPA claim. Astria cites to *Trujillo v. Northwest Trust Services, Inc.*, 183 Wash. 2d 820 (2015), *Eastlake Construction Company Inc. v. Hess*, 102 Wash. 2d 30 (1984), and *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778 (1986), to support its request for nationwide discovery. But none of the listed cases are concerned with the proper scope of discovery when a CPA claim is alleged. Rather, the cases speak to the elements of a CPA claim. Indeed, the parties referenced the same authorities when they briefed Cerner's Partial Motion to Dismiss. Simply put, none of Astria's cited

cases support Astria's effort to force Cerner to review and produce documents regarding Cerner's nationwide sales and marketing efforts (which bearing on the ultimate question under the Washington CPA of whether other *Washington* consumers have been or are likely to be injured in *exactly the same* fashion as Astria alleges it was injured). In fact, *Hangman Ridge* cuts against Astria's argument.

As the Washington Supreme Court explained in *Hangman Ridge*, the purpose of the CPA is to protect Washingtonians from acts that could, if repeated in the future, cause injury to the public: "It is . . . the intent of the legislature that this act shall not be construed to prohibit acts or practices which . . . are not injurious to the public interest . . .." *See Hangman Ridge*, 105 Wash. 2d at 788, 719 P.2d at 537 (quoting RCW 19.86.920).

Astria focused its CPA claim exclusively on Cerner's sale of RevWorks services to Astria in June 2018. However, Cerner sold its RevWorks business to R1 RCM (an unaffiliated company) in August 2020.[2] Accordingly, Astria cannot argue Cerner would be able to injure any future Washington consumer in exactly the same fashion Astria alleges it was injured here because Cerner is no longer in the BOS business.

---

[2] Deposition of Joshua Gall, at p. 7:9-15, cited pages attached as Exhibit A.

Opposition to Motion to Compel - 8

"Washington is very clearly in the minority in requiring a public interest showing of a private plaintiff," but such a showing is an essential element of every private CPA claim. *Hangman Ridge*, 105 Wash. 2d at 787. Moreover, the Washington Supreme Court acknowledged that while it is "aware of the general criticism that a public interest requirement is unnecessarily restrictive as to private plaintiffs . . . we continue to adhere to our position." *Id*. at 788.

To determine if the public interest element of the CPA has been satisfied, the Court considers a number of factors, with the key factor being "[i]s there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff?" *Id*. Here, Cerner's 2020 sale of its business makes clear the answer to any question about the potential for repetition is a resounding "NO." Astria cannot satisfy the public interest element. Astria's discovery requests are facially overbroad and objectionable, but the fatal flaw in Astria's CPA claim further highlights the overreach and impropriety of Astria's over broad discovery requests.

Moreover, discovery regarding Cerner's marketing to existing clients is irrelevant because no client could possibly be "injured in exactly the same fashion" as Astria alleges. *See Hangman Ridge*, 105 Wash. 2d at 790, 719 P.2d at 538 "[I]t is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that

affects the public interest."). Every Cerner implementation and client experience is different and necessarily depends on a host of factors.

Astria's situation highlights the point perfectly: each of Astria's three hospitals interacted with Cerner's solutions and services with varying levels of success. Astria's CEO, John Gallagher, admitted in an email to Cerner executives that, by December 2018 (approximately 6 months following Cerner's initial go-live at Sunnyside) Astria's Sunnyside Hospital was collecting 100 percent of its anticipated net revenue:

> James
> I appreciate the additional resources as we are 6 months in at sunnyside and just now collecting 100% as of December with 30M in net AR outstanding from a june go live and 4 months in at Yakima and Toppenish and still collecting only 65% of net. Unfortunately issues interrelated and are directly related to the ehr implementation and subsequent collection process. I hope we can come to some resolution while you are on site this week to accelerate the collection process and accelerate the discussion on cash infusion for some short term relief.
> Thank you
>
> John M. Gallagher, FACHE
> President and CEO
> Astria Health
> 1806 Yakima Valley Hwy.
> Sunnyside, WA 98944
> P 509.837.1300

*See* Jan. 8, 2019 email from John Gallagher (emphasis added), attached as Exhibit B; *see also* Amended Complaint, Dkt. No. 63, p. 25, ¶ 72 (alleging Yakima and Toppenish struggled because "Cerner built the billing rules for RevWorks exclusively around Sunnyside… ."). Astria's own words demonstrate the specific nature of Cerner's implementation and success with any given client. *Id.*

Additionally, the former Cerner associate who managed Cerner's RevWorks engagement with Astria, Joshua Gall, gave his deposition and testified to the

Opposition to Motion to Compel - 10

differences between the three Astria hospitals. When asked if he felt "like the rev cycle process was working about the same at the three hospitals," he responded in the negative and declared:

> Between the three for Astria, I would say that Sunnyside seemed to be -- seemed to be going at a better rate initially than Yakima might have been. I think part of that has to go into the fact that one of the things that we discovered was the communications between those locations wasn't always happening, so some of stuff that we were communicating, I think, was being implemented at Sunnyside, and we found that some of the stuff we had requested wasn't being implemented at Yakima….

Ex. A, Gall deposition, at p. 142:16-143:7.

Mr. Gall also testified regarding the many differences between clients and confirmed how every go-live is different and based on multiple factors:

> Q: Would you agree that as between the Cerner her and revenue cycle software and the RevWorks services, that it's a quick and easy process to integrate those two and get a hospital's revenue cycle process running smoothly?
>
> [objection omitted]
>
> A: Again, it can be, but again, it's not just laying the system in. I mean, there is a lot of prep, there's a lot of timing that has to go into it. You know, there's buy-in from both sides because I know that, you know, there is a lot of review and questions that Cerner build teams go over with clients. You know, there's a lot of requests on the client's side to make sure that the system can do what they need it to do, based on the services that they've providing. So again, I've seen it go very smoothly, but I've also seen it not go smoothly. But unfortunately in our industry there is [are] so many different variables that you have to take into account or that you're dealing with, it's hard to know or foresee which issue you might run into or might be driving the issues or concerns.

Opposition to Motion to Compel - 11

Ex. A, Gall deposition at p. 141:14-142:14.[3]

Similarly, Astria alleges in its Complaint that its issues stem from Cerner's EHR implementation and build process, which further demonstrates the individuality associated with Astria's claims (as they are based on a customized, client-specific build of the EHR system). *See* Amended Complaint, Dkt. No. 63, p. 25, ¶ 72 ("Astria learned of numerous problems with the billing and collections platform. For example, Cerner built the billing rules for RevWorks exclusively around Sunnyside, but Sunnyside had cost-based billing, whereas Toppenish and Yakima used diagnosis-related group (DRG) billing systems."); *id.* at ¶ 86 ("Due to the implementation of the EHR system and the shortfall in cash collections, Astria lost so much money… ."). Nevertheless, Astria seeks to compel Cerner to produce an overwhelming volume of documents concerning actual or potential Cerner clients beyond Astria, beyond the State of Washington, beyond the list of software solutions Astria licensed, and beyond the limits of Astria's CPA claim (which focuses exclusively on RevWorks business office services).

---

[3] Even though the question to Mr. Gall appears to focus on the EHR implementation and the differences associated with every client, the logic is the same. Every single client presents Cerner with a different scenario. In some instances, like Astria, Cerner faced multiple different scenarios within the same health system as it attempted to provide the client with RevWorks services.

Opposition to Motion to Compel - 12

B. <u>Cerner should not be compelled to produce "all documents and communications related to any issues or delays associated with any implementation or use" of Cerner's systems or service "in Washington State or for use in Washington State."</u>

In its Request for Production No. 26, Astria seeks:

> All documents and communications related to any issues or delays associated with any implementation or use of the Cerner EHR, RevWorks, BOS Services, or any other revenue cycle management or patient accounting software or services at any hospital, hospital system, clinic or health care provider in Washington State or for use in Washington State.

Dkt. No. 76-2, at pg. 23-24 of 27.

It is not entirely clear what Astria wants Cerner to produce (which renders the request ambiguous and objectionable). However, to the extent Astria seeks all documents and communications related to "any issues or delays associated with any implementation or use" of Cerner's systems or other services that could be used by a client in the State of Washington (or any client other than Astria regardless of location), then the request is patently over broad and forcing Cerner to comply would be an impossible task.[4] Moreover, Astria has not pleaded in its

---

[4] Astria's use of the phrase "for use in Washington State" is not limiting. Cerner does not implement different software solutions depending on the state where the implementation occurs. Essentially all of Cerner's offerings could be licensed or purchased "for use in Washington State" and the specific solutions are implemented based on each clients individualized and localized needs.

Opposition to Motion to Compel - 13

CPA claim that Cerner delayed in its implementation or go live of the RevWorks services. *See, e.g.,* Count III, Am. Compl., pp. 34-35.

The request is also unduly burdensome given the lack of proportionality. Cerner does not understand the relevance of Astria's claim because there is no allegation that Cerner delayed the go live of RevWorks services at Astria. Because Astria does not plead any CPA claim associated with Cerner's implementation of Astria's EHR (which might bring into play other Washington health systems), Cerner should not be required to examine every other relationship it has with a Washington client to see if there was ever any "issue" or "delay" associated with the "implementation or use" of the Cerner EHR. Nevertheless, to comply with Astria's request would force Cerner to review every single relationship with any Washington client to determine if there was even a single "issue" raised by the client during either its implementation or use of the Cerner EHR. Astria has effectively asked Cerner to produce every single document it has generated in any relationship it may have with any other Washington health system.

> C. <u>Cerner should not be compelled to produce all documents and communications relating to responding to questions from customers and potential customers related to unspecified "issues or media reporting associated with other Cerner customers."</u>

Astria also moves to compel Cerner to produce documents in response to its Request No. 27. Particularly, Astria asks Cerner to produce:

Opposition to Motion to Compel - 14

> All documents and communications instructing or otherwise providing guidance to Your employees and/or representatives on how to respond to questions from Cerner's customers or potential customers related to issues or media reporting associated with other Cerner customers.

*Id.*

Astria's request is over broad, unduly burdensome, and not proportional to the needs of the case. As phrased, Astria's request seeks documents or communications relating to an endless variety of undefined "issues <u>or</u> media reporting" experienced by any Cerner client. Astria's request also seeks informal internal communications as well as official policies of Cerner. *Id.* (emphasis added). Astria has made no attempt to tailor its request to the issues alleged in this case. And Cerner cannot understand how Astria's request ties in with any of its liability theories. Cerner's media communications, internal communications about media responses, or media policies cannot possibly be germane to any claim asserted by Astria. Nonetheless, in the spirit of compromise, and without waiving its proper objections, Cerner responded with the following offer:

> [I]f Astria could identify the specific media reporting or issue(s) that form(s) the basis for its request, Cerner could search for any possible reaction, guidance, or other statement that may have been provided by Cerner's marketing or public relations department in response to the specific media report or identified issue.

Ex. B, to Astria's Motion, at Request No. 27.

Opposition to Motion to Compel - 15

Astria did not take Cerner up on its offer and instead seeks to compel Cerner to respond to an over broad request. Astria's motion to compel responses to Request No. 27 should be denied.

## CONCLUSION

Astria's discovery requests would require Cerner to comb through millions of pages of documents—involving dissimilar Cerner clients buying different software, services, and support throughout the country—to attempt to respond to its nearly unbounded requests. Astria seeks to have Cerner engage in an immense effort despite the lack of proportionality to the needs of the case. Cerner respectfully asks the Court to deny Astria's Motion to Compel.

Dated: November 16, 2021     Respectfully Submitted:

/s/Bruce K. Medeiros
Bruce K. Medeiros (WSBA No. 16380)
DAVIDSON BACKMAN MEDEIROS PLLC
2021-601 W. Riverside Avenue, Suite 1550
Spokane, Washington 99201
Telephone: (509) 624-4600
Facsimile: (509) 623-1660
Email : bmedeiros@dbm-law.net

/s/Patrick N. Fanning
Patrick N. Fanning (*pro hac vice*)
Kristina L. Burmeister (*pro hac vice*)
J. Aaron Craig (*pro hac vice*)
LATHROP GPM LLP
2345 Grand Blvd, Suite 2200
Kansas City, MO 64108
Telephone: 816-292-2000
Email : patrick.fanning@lathropgpm.com

Opposition to Motion to Compel - 16

kristi.burmeister@lathropgpm.com
aaron.craig@lathropgpm.com

Opposition to Motion to Compel - 17