So Ordered.

Dated: June 2nd, 2022



FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>ASTRIA HEALTH,<br><br>        Remaining Debtor. | Case No. 19-01189-WLH11 |
| ASTRIA HEALTH,<br><br>        Plaintiff,<br>v.<br><br>CERNER CORPORATION and<br>CERNER REVWORKS, LLC,<br><br>        Defendants. | Adv. Proc. No. 21-80005-WLH<br><br>**MEMORANDUM OPINION** |

    Bankruptcy law confers the power to assume or reject certain agreements. This basic concept and the resulting choice are simple enough, but matters can become complicated when parties dispute the *effects* of assumption or rejection on a particular relationship. Despite important guidance from the Supreme Court, the statutory mechanism at issue carries the potential for complexity and confusion nearly unrivaled in the Bankruptcy Code.

    The plaintiff in this adversary proceeding exercised its option to assume a certain executory contract during the underlying bankruptcy cases. Defendants, which include the contract counterparty, contend that this act constituted ratification of the contract or otherwise irrevocably bound plaintiff to a damages-

limitation clause. Therefore, defendants assert, they are entitled to summary judgment on this issue. The court disagrees for the reasons detailed below.

## BACKGROUND & PROCEDURAL POSTURE

*The Astria-Cerner Relationship Generally*

Plaintiff Astria Health is part of a corporate group that owned and operated three hospitals and associated healthcare clinics in eastern Washington.[1] Defendant Cerner Corporation provides electronic health records and other medical software, products, and solutions.[2] Defendant Cerner RevWorks, LLC was a subsidiary of Cerner Corporation during the period relevant to this litigation that offered business office services for medical billing management.[3]

One of Astria's predecessor entities and Cerner Corporation entered into a Cerner Business Agreement (or "CBA") with an effective date in June 2017.[4] Pursuant to the CBA, Cerner, among other things, provides the Astria group with an electronic health records system.[5] Section 5.7 of the CBA is an expansive limitation-of-liability clause stating that, among other things, "neither party is liable for any special, indirect, incidental, punitive, or consequential damages based upon breach of warranty, breach of contract, negligence, strict liability, or any other legal theory" and "Cerner's maximum liability for any claim or series of related claims arising under this Agreement is limited to the amount paid by [Astria] to Cerner for the affected solution or Cerner Services during the 18 months preceding the event giving rise to the claim."[6]

One of Astria's predecessor entities also entered into a separate contract with Cerner RevWorks (the "RevWorks Agreement") in June 2018, which entitled Astria to receive certain professional services, including in connection with medical billing processes.[7]

---

[1]  *See* ECF No. 145 ¶¶ 1, 5, 38; ECF No. 178 Resp. to ¶¶ 1, 5, 38.

[2]  *See* ECF No. 145 ¶ 4; ECF No. 178 Resp. to ¶ 4.

[3]  *See* ECF No. 145 ¶ 43; ECF No. 178 Resp. to ¶ 43.

[4]  *See* ECF No. 145 ¶ 28; ECF No. 178 Resp. to ¶ 28.

[5]  *See* ECF No. 145 ¶ 29; ECF No. 178 Resp. to ¶ 29.

[6]  *See* ECF No. 145 ¶ 34; ECF No. 178 Resp. to ¶ 34; ECF No. 160 Ex. 38 § 5.7 at p. 13 of 131 (all-caps font removed).

[7]  *See* ECF No. 145 ¶¶ 44, 46; *id.* Ex. N; ECF No. 178 Resp. to ¶¶ 44, 46.

*The Astria Bankruptcy Cases and Relevant Events Therein*

In May 2019, Astria and numerous affiliated entities filed chapter 11 cases that were administratively consolidated before this court. The bankruptcy cases were complex and contentious, with numerous twists and turns culminating in confirmation of a chapter 11 plan in late December 2020.[8]

As the cases moved toward confirmation, various disputes between Cerner and the debtors began to percolate. Cerner filed a request for allowance and payment of an administrative expense claim based on amounts Cerner contended were due for services it provided under the CBA after the petition date.[9] The debtors eventually objected to the request, contending they owe Cerner nothing, including based on allegations that Cerner failed "to perform its duties and obligations under and in connection with the arrangements that the [administrative expense request] asserts gives rise to Cerner's claim" and that Cerner had engaged in "representations and actions" which "rise to the level of fraud and intentional misrepresentation."[10] The allegedly problematic representations noted by the debtors were specifically keyed to **both** the CBA and the RevWorks Agreement.[11]

The debtors separately moved under Bankruptcy Code section 365(a) to reject the RevWorks Agreement and to assume the CBA (the debtors represented that they wanted to assume the latter because "[t]he services that Cerner provides under the CBA are critical to the Debtors' operations and the maintenance of the high quality of care provided to patients").[12] Cerner opposed the assumption motion and filed a lengthy objection to confirmation of the debtors' proposed plan that, among other things, raised issues about the amounts required to be paid under Bankruptcy Code section 365(b)(1)(A) as part of the assumption.[13] At one of

---

[8] *See generally In re Astria Health*, 623 B.R. 793 (Bankr. E.D. Wash. 2021). Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of all referenced filings and events in the underlying lead bankruptcy case. *See, e.g.*, *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1008 n.2 (9th Cir. 2014) (observing that materials "filed with the bankruptcy court and . . . a publicly available record" are "properly subject to judicial notice").

[9] *See* Case No. 19-01189-WLH11, ECF No. 1573 (Bankr. E.D. Wash. July 22, 2020).

[10] *See* Case No. 19-01189-WLH11, ECF No. 1973 at pp. 2-4 (Bankr. E.D. Wash. Nov. 5, 2020).

[11] *See id.* at pp. 2-3 ("Based upon those and other representations, prepetition the Debtors entered into separate agreements under which Cerner agreed to provide two separate systems and related services to Astria: the Electronic Medical Records ('EMR') and the revenue cycle ('RevCycle')." (footnotes omitted)).

[12] *See* Case No. 19-01189-WLH11, ECF No. 2086 (Bankr. E.D. Wash. Dec. 7, 2020).

[13] *See* Case No. 19-01189-WLH11, ECF No. 2133 (Bankr. E.D. Wash. Dec. 15, 2020), ECF No. 2144 (Bankr. E.D. Wash. Dec. 16, 2020).

several hearings held during December 2020, the court noted the complexity of the issues raised by the various disputes between the debtors and Cerner and invited the parties to reach a resolution that deferred the significant and complex litigation obviously brewing.[14]

The debtors and Cerner, each represented by competent counsel, ultimately agreed on an arrangement detailed across several pages of the order confirming the debtors' plan.[15] The arrangement provides, among other things, that the debtors would assume the CBA and reject the RevWorks Agreement, that the parties would resolve the cure amount associated with assumption and other assorted issues in a forthcoming adversary proceeding, and that they would consensually resolve or promptly litigate which of various schedules and other documents are part of the CBA. The negotiated arrangement also includes broad reservations, such as by providing that "[n]otwithstanding anything in the Plan or this Order to the contrary, . . . all prepetition and postpetition claims, obligations, causes of action or other rights existing between the Debtors and Cerner, including any cure and administrative claims asserted by Cerner, shall be included and determined in the Adversary Proceeding" and that "[n]othing in the Plan or this Order shall impair, prevent, or otherwise adversely affect any of the Debtors' or Cerner's rights, remedies, claims, and defenses to Vendor Claims."[16] Cerner and the reorganized debtors subsequently entered into a stipulation regarding which specific materials constitute the CBA, which stipulation underscored that the 5+ pages of the confirmation order reserving myriad issues for resolution in an adversary proceeding "remains in full force and effect."[17]

### *Posture of the Adversary Proceeding*

This adversary proceeding is the expansive litigation contemplated by the language just discussed in the confirmation order. The operative complaint asserts a range of claims, including (i) fraud and negligent misrepresentation stemming from both the CBA and the RevWorks Agreement and (ii) avoidance actions under

---

[14] *See* Case No. 19-01189-WLH11, ECF Nos. 2167 & 2170 (Bankr. E.D. Wash. Dec. 17, 2020).

[15] *See* Case No. 19-01189-WLH11, ECF No. 2217 ¶ 19 at pp. 54-59 (Bankr. E.D. Wash. Dec. 23, 2020).

[16] *Id.* at pp. 55, 59. "Vendor Claims" is a term defined in the chapter 11 plan as "any and all actual or potential claims and causes of action of the Debtors against" Cerner Corporation and all of its subsidiaries and affiliates, including any and all avoidance actions. *See* Case No. 19-01189-WLH11, ECF No. 2196 § 1.160 at p. 21 (Bankr. E.D. Wash. Dec. 22, 2020).

[17] *See* Case No. 19-01189-WLH11, ECF No. 2269 at p. 4 of 6 (Bankr. E.D. Wash. Jan. 20, 2021).

Bankruptcy Code sections 544(b) and 548 seeking to avoid all transfers and obligations related to both the CBA and the RevWorks Agreement.[18]

Defendants seek partial summary judgment, including on the ground that assumption of the CBA binds plaintiff to the limitations contained in section 5.7 of the CBA and means that "Astria cannot recover any indirect or consequential damages against Cerner Corporation for alleged misrepresentations made during the negotiation of the CBA, no matter how Astria attempts to position its theory of liability."[19] Plaintiff disputes this conclusion and opposes summary judgment. The court has received the benefit of comprehensive briefing and oral argument regarding defendants' motion and the matter is now ready for decision.

## GENERAL PRINCIPLES

### *Jurisdiction & Power*

The court has subject matter jurisdiction regarding this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) & 157(a) and LCivR 83.5(a) (E.D. Wash.). This court is a proper venue for this litigation as a result of the pendency of the underlying Astria Health bankruptcy cases in this district.[20] Both sides have expressly consented to the court's final adjudication of this litigation.[21] Accordingly, the court may properly exercise the judicial power necessary to decide the pending motion.[22]

### *Standard for Partial Summary Judgment*

Federal Rule of Civil Procedure 56, which applies here through Bankruptcy Rule 7056, allows a party to move for complete or partial summary judgment. A court should grant relief only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23]

---

[18] *See* ECF No. 63 ¶¶ 90-105, 120-134.

[19] *See* ECF No. 143 pp. 1-2. Defendants also move for partial summary judgment based on their contention that various alleged statements are unactionable for one or more of three reasons under Washington state law. *See id.* at p. 2. The court separately addressed these aspects of the motion in an oral ruling read into the record on June 1, 2022. *See* Audio File, ECF No. 201.

[20] *See* 28 U.S.C. § 1409(a).

[21] *See* ECF No. 63 ¶ 23; ECF No. 82 at pp. 49-50.

[22] *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 674-81 (2015).

[23] Fed. R. Civ. P. 56(a).

"The determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[24]

A summary judgment analysis requires the court to consider the evidence offered by the parties "in the light most favorable to the nonmoving party."[25] Summary judgment is generally disfavored in the context of intensely factual disputes.[26]

*Assumption & Rejection Under the Bankruptcy Code*

Bankruptcy Code section 365(a) endows an estate representative with the option to assume or reject executory contracts and certain unexpired leases. To be considered executory, a contract generally must be one under which future performance remains due by both parties.[27] "Such an agreement represents both an asset (the debtor's right to the counterparty's future performance) and a liability (the debtor's own obligations to perform)."[28] The ability to assume such contracts allows estate representatives to maximize the value of bankruptcy estates for stakeholders and facilitate reorganizations by locking in net-beneficial contracts (i.e., those where the value of the embedded "asset" exceeds the cost of the "liability").[29] Alternatively, the ability to reject contracts furthers the same goal by shedding unfavorable agreements, which generally frees the bankruptcy estate of the future "liability" associated with the debtor's unperformed obligations and, with a "twist as to timing," creates a deemed breach of contract "immediately before the date of the filing of the petition."[30]

---

[24] *Sonner v. Schwabe N. Am., Inc*., 911 F.3d 989, 992 (9th Cir. 2018) (cleaned up).

[25] *See, e.g.*, *Pauma Band of Luiseno Mission Indians of the Pauma & Yuima Reservation v. California*, 973 F.3d 953, 961 (9th Cir. 2020).

[26] *See, e.g.*, *Marketquest Grp., Inc. v. BIC Corp*., 862 F.3d 927, 932 (9th Cir. 2017); *Int'l Healthcare Mgmt. v. Haw. Coalition for Health*, 332 F.3d 600, 604 (9th Cir. 2003).

[27] *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019).

[28] *Id.*

[29] The Bankruptcy Code enhances this power by allowing the trustee or debtor in possession to assign contracts once assumed. *See* 11 U.S.C. § 365(f).

[30] *See id.* § 365(g)(1); *Tempnology*, 139 S. Ct. at 1661.

This assumption/rejection option is one of the extraordinary powers provided by the Bankruptcy Code.[31] In the chapter 11 context, Congress concluded that it advances basic reorganizational purposes for a debtor in possession to be "empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have employed absent the bankruptcy filing" and to generally enjoy a flexible period before confirmation of a plan to determine whether to assume or reject particular contracts.[32]

As mentioned, the Bankruptcy Code directly instructs that "rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease."[33] There is no analogous statement about the general effect of assumption. Nevertheless, some noteworthy consequences flow from assumption:

- The contract counterparty is generally entitled to a "cure" of most defaults, certain compensation, and adequate assurance of future performance.[34]

- "The assumption of an executory contract has the effect of making the debtors' obligations an administrative expense of the estate," thereby elevating the relative priority of those obligations.[35]

---

[31] The modern Bankruptcy Code codifies a power with a long lineage in insolvency law. *See, e.g.*, *Sunflower Oil Co. v. Wilson*, 142 U.S. 313, 322-23 (1892) (allowing railway receiver choice between assumption and rejection of contracts).

[32] *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528-29 (1984). *See also, e.g.*, *In re Norquist*, 43 B.R. 224, 225 (Bankr. E.D. Wash. 1984) (Klobucher, J.) ("The purpose for allowing the trustee or debtor-in-possession to assume or reject an executory contract is to enable a trustee or troubled debtor to take advantage of a contract that will benefit the estate by assuming it or alternatively, to relieve the estate of a burdensome contract by rejecting it.").

[33] 11 U.S.C. § 365(g). *See also Tempnology*, 139 S. Ct. at 1663 ("Rejection is breach, and has only its consequences.").

[34] 11 U.S.C. § 365(b)(1). Counterparties to some subspecies of agreements enjoy additional rights and protections. *See id.* § 365(b)(3) (shopping center leases), (c)(1) (otherwise unassignable agreements). One law professor astutely notes that section 365 has seen more than its share of "botched, incomplete, and tardy amendments" and that parts of the convoluted statute resemble "the plot of *The Marx Brothers Amend The Bankruptcy Code*." *See* Daniel J. Bussel, *Textualism's Failures: A Study of Overruled Bankruptcy Decisions*, 53 VAND. L. REV. 887, 915 (2000).

[35] *In re Bergt*, 241 B.R. 17, 22 (Bankr. D. Alaska 1999). *See also, e.g.*, *Bildisco*, 465 U.S. at 532 (observing that after assumption, "the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate"); *HDR Architecture, P.C. v. Maguire Grp. Holdings*, 523 B.R. 879, 891-92 (S.D. Fla. 2014) ("A pre-petition claim — such as a contingent claim for indemnification or contribution based on a pre-petition obligation — can be elevated and transformed into a post-petition administrative claim, but only where the debtor assumes the pre-petition contract such that the existence of a post-petition transaction can be seen as benefiting the bankruptcy estate.").

- Pursuant to the *cum onere* principle, assumption must be performed on a holistic basis as to a particular agreement (or series of interrelated agreements forming a single, integrated arrangement), which means the estate representative may not assume just the desirable portions of an agreement and reject the rest.[36]

- Assumption is not necessarily forever. The Bankruptcy Code expressly contemplates that a particular agreement might be assumed one day but rejected later.[37]

After weighing these and other factors, an estate representative must move for court approval to either assume or reject a contract under section 365(a). Such motions are "summary proceedings" at which the bankruptcy court plays a limited role.[38] For either option, the court considers whether the estate representative's selection satisfies the business judgment rule – this is a "deferential" standard pursuant to which a "bankruptcy court will generally approve that choice."[39] Before permitting assumption of a contract that is the subject of a default, the court usually resolves any disputes about the cure of such default.[40] Upon fulfilling these requirements, the court's role is complete and the summary proceeding ends. Fundamental questions related to the parties' contractual and other state-law rights

---

[36] *See, e.g.*, *Bildisco*, 465 U.S. at 532 ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere* . . . ."); *Thompson v. Texas Mexican Ry. Co.*, 328 U.S. 134, 141 (1946) (Douglas, J.) ("Cancellation of a contract pursuant to its terms alters, of course, rights and duties of the trustee. But the bankruptcy rule is that he takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed *cum onere*."); *In re 47 Hops LLC*, 2020 Bankr. LEXIS 1287, at *7 (Bankr. E.D. Wash. May 13, 2020) (explaining that "the estate representative must address any given contract in its entirety and may not forage among favorable or unfavorable components").

[37] *See* 11 U.S.C. §§ 365(g)(2), 503(b)(7).

[38] *See, e.g.*, *Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1282 (9th Cir. 2000) ("A bankruptcy court's hearing on a motion to reject is a summary proceeding that involves only a cursory review of a trustee's decision to reject the contract."); *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098-99 (2d Cir. 1993) ("At heart, a motion to assume should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate. It is not the time or place for prolonged discovery or a lengthy trial with disputed issues.").

[39] *Tempnology*, 139 S. Ct. at 1658. *See also, e.g.*, *In re G.I. Indus.*, 204 F.3d at 1282 (describing the business judgment rule as involving "only a cursory review of a trustee's decision"); *In re Orion Pictures Corp.*, 4 F.3d at 1099 ("[I]t is important to keep in mind that the bankruptcy court's 'business judgment' in deciding a motion to assume is just that—a judgment of the sort a businessman would make. In no way is this decision a formal ruling on the underlying disputed issues, and thus will receive no collateral estoppel effect."). When the counterparty to an agreement is a fiduciary or insider of the debtor, the estate representative's proposal is appropriately subject to more rigid scrutiny. *See generally, e.g.*, *Sawyer v. Hoag*, 84 U.S. (17 Wall.) 610, 623 (1873).

[40] *See* 11 U.S.C. § 365(b).

– such as the validity or legality of an agreement, the enforceability of particular provisions, or whether one side has breached or terminated the agreement – are not considered at this stage. Because such issues are not addressed during the summary proceeding under section 365(a), the bankruptcy court's resulting order does not dispose of such questions but leaves all existing rights intact for full plenary litigation on the merits, such as in the instant adversary proceeding.[41] The preserved rights typically arise under applicable nonbankruptcy law. Here, the rights at issue arise from Washington state law.

*Washington Contract Law*

Under Washington law, when a contract is procured by fraud, the defrauded party has the ability to rescind or void the contract.[42] The party can forfeit this remedy, however, if it ratifies the contract or otherwise waives its claim for rescission.[43]

As the Washington Supreme Court explained, an act of ratification sufficient for such forfeiture requires showing that the defrauded party acted with "unequivocal" intent to forgo its right to rescind and rebind itself to the potentially voidable contract.[44] This exacting standard comports with Washington's more general rule that an "[i]mplied waiver of contractual rights requires unequivocal acts" and cannot be inferred from conduct (such as agreeing to negotiate with the counterparty) that is equivocal.[45]

---

[41] *See, e.g.*, *In re G.I. Indus.*, 204 F.3d at 1282 (generally describing the proper procedural framework); *In re 950 Meat & Grocery Corp.*, 617 B.R. 224, 230 (Bankr. S.D.N.Y. 2020) (determining that "the Court cannot adjudicate the termination dispute between the Debtor and GLC as part of the motion to assume"); *Sentry Operating Co. v. Billings (In re Sentry Operating Co. of Tex., Inc.)*, 273 B.R. 515, 524 (Bankr. S.D. Tex. 2002) (highlighting multiple circuit courts' "admonition . . . that the contract issues must not be tried in a summary proceeding brought to assume or to reject the executory contract").

[42] *See, e.g.*, *Baker v. Robbins*, 51 Wash. 467, 468 (1909).

[43] *See, e.g.*, *Poweroil Mfg. Co. v. Carstensen*, 69 Wash. 2d 673, 678 (1966); *Owen v. Matz*, 68 Wash. 2d 374, 376-77 (1966).

[44] *See Wickre v. Allen*, 58 Wash. 2d 770, 776 (1961); *Cent. Life Assurance Soc. v. Impelmans*, 13 Wash. 2d 632, 647 (1942).

[45] *Am. Safety Cas. Ins. Co. v. City of Olympia*, 162 Wash. 2d 762, 773 (2007) (en banc). *See also, e.g.*, *Cent. Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wash. 2d 346, 354 (1989) ("To constitute implied waiver, there must exist unequivocal acts or conduct evidencing an intent to waive; waiver will not be inferred from doubtful or ambiguous factors.").

# SUMMARY JUDGMENT ANALYSIS[46]

Defendants' central thesis on summary judgment is that Astria's assumption of the CBA waived rights now pressed in this adversary proceeding and unconditionally bound the Astria debtors to the remedies specifically contemplated by the CBA, in particular the damages-limitation clause in section 5.7. This outcome, defendants further contend, is a corollary of assumption based on the *cum onere* principle and follows from the ratification principles set forth under Washington law already discussed. Thus, defendants conclude, they are entitled to summary judgment on this issue. For several reasons, the court disagrees.

***First***, defendants place undue weight and overbroad impact on the *cum onere* principle. This principle prevents a party from using the power available under Bankruptcy Code section 365 to "cherry pick" contractual terms by assuming those it finds favorable and freeing itself from others it finds unfavorable. The principle thus hems the power of assumption and rejection to a binary decision; the estate representative is not allowed to use section 365(a) to rewrite or line-item veto the debtors' agreements but must assume or reject each on a wholesale basis with all existing benefits and burdens. But nothing about courts' articulation of the *cum onere* principle, let alone the statutory text, suggests that the principle has a broader effect that ossifies an agreement against a latent defect or an attack otherwise available under applicable nonbankruptcy law. To the contrary, several considerations weigh strongly against such an application:

- Bankruptcy Code section 365 expressly negates certain aspects of applicable nonbankruptcy law to override certain features found in some debtors' agreements.[47] The codification of provisions altering the nonbankruptcy state of affairs suggests that Congress otherwise intended to leave the parties' prepetition, nonbankruptcy rights and remedies unaffected.[48]

---

[46] The discussion in this part provides the court's conclusions in a general sense regarding the issues raised by defendants' motion. Consistent with Federal Rule of Civil Procedure 52(a)(3), which applies here through Bankruptcy Rule 7052, the court makes no factual findings or legal conclusions at this stage of the litigation.

[47] *See* 11 U.S.C. § 365(b)(2) (various defaults excluded from the cure requirement), (c) (overruling certain antiassignment clauses), (e)(1) (invalidating *ipso facto* clauses), (f)(1) (again overruling certain antiassignment clauses), (f)(3) (overruling certain termination or modification provisions).

[48] *See, e.g.*, A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 10, pp. 107-11 (2012) (describing the negative-implication canon and the associated Latin maxim *expressio unius est exclusio alterius*). While analyzing the effects of rejection, the Supreme Court observed that "Section 365 does not grant the debtor an exemption from all the burdens that generally applicable law—whether involving contracts or trademarks—imposes on property owners" and that the statutory scheme reflects Congress's policy decisions

- Whatever limitations applicable nonbankruptcy law may place on the enforceability or validity of particular aspects of an agreement are themselves ***part of the agreement***.[49]  Thus, when a contract is assumed, whatever wrinkles and warts nonbankruptcy law provides to alter or even negate some of the contractual terms are part of the whole contract under the *cum onere* principle.  Indeed, it would be inconsistent with the *cum onere* principle to allow the act of assumption to cleave away otherwise applicable nonbankruptcy law that equally forms part of the contract.

- As discussed above, a motion to assume a contract is a summary proceeding triggering a narrow inquiry for the bankruptcy court. Assumption does not resolve issues about the validity, enforceability, scope, or extent of the contract, and hence the *cum onere* principle cannot bind the estate representative to an outcome regarding those issues.

- As also discussed above, assumption is not irrevocable; the same agreement may later be rejected (or breached by the estate representative for a different reason, or terminated, cancelled, or invalidated by either side).  If assumption forever locked in all terms of an assumed agreement, then that effect would make assumption a far more consequential act than is contemplated by the statute or case law.

To be sure, the *cum onere* principle is significant and imposes important constraints on a bankruptcy estate representative's ability to manipulate the terms of prebankruptcy contracts using the power of assumption or rejection.  But there is no reason to believe that this principle is broader and does more than throttle the scope of assumption itself.  Assumption of a given agreement (in its entirety, of course) does not alter or eliminate otherwise applicable nonbankruptcy law bearing on the agreement, except in the very specific instances detailed in Bankruptcy Code section 365.

---

about "the burdens that a debtor may and may not escape." *See Tempnology*, 139 S. Ct. at 1665-66.  These same considerations, as well as the Supreme Court's broader jurisprudential trend rejecting other theories of bankruptcy exceptionalism, extend into the assumption context: Unless the statute provides otherwise, there is no reason a debtor or a counterparty should be able to escape whatever result obtains outside of bankruptcy under generally applicable law merely because the debtor assumed an executory contract.

49 *See, e.g.*, *Skandia Am. Reinsurance Corp. v. Schenck*, 441 F. Supp. 715, 724 (S.D.N.Y. 1977) ("Unless the contract provides otherwise, the law in force at the time it is entered into becomes a part of the contract."); *Fischler v. Nicklin*, 51 Wash. 2d 518, 522 (1958) (explaining that "existing law is a part of every contract, and must be read into it").

***Second***, assuming for purposes of analysis that assumption of an executory contract may in some instances constitute a state-law ratification or waiver,[50] the record here does not present such an instance. This is especially true when viewed in the light most favorable to the nonmoving plaintiff.

As already discussed, Washington courts have held that ratification and waiver require a party to express ***unequivocal*** intent to forsake its ability to void a problematic contract. Just the opposite occurred here, and the record contains evidence of significant equivocation. Specifically, the debtors assumed the CBA in conjunction with express, extensive, and unequivocal reservations of rights. These reservations include language preserving "all prepetition and postpetition claims, obligations, causes of action or other rights existing between the Debtors and Cerner" notwithstanding ***anything*** else in the confirmation order, including the part permitting assumption of the CBA.[51] This expansive language creates equivocation precluding the proof of ratification required by Washington law and, ultimately, summary judgment in defendants' favor.[52] This is particularly true given that the debtors had, albeit somewhat obliquely, filed papers indicating that they intended to litigate alleged problems regarding both the CBA and the RevWorks agreement, which papers were filed before and undoubtedly framed the

---

[50] The parties cite only a single case in which any court has concluded that assumption constitutes ratification under state law, *Empire State Bldg. Co. v. New York Skyline, Inc. (In re New York Skyline, Inc.)*, 432 B.R. 66 (Bankr. S.D.N.Y. 2010). Even assuming the *New York Skyline* case was correctly decided, it is distinguishable based on the unique background of this matter and the requirements of Washington law. The court has deep concerns about the conclusion in *New York Skyline*, however, including based on issues that are never addressed by the opinion and may not have been argued in that litigation. To begin, there is a serious argument that state law should be preempted or negated if it would interfere with or create nonuniform consequences from a chapter 11 debtor utilizing the federal tool of contract assumption. *See, e.g.*, *In re Am. Suzuki Motor Corp.*, 494 B.R. 466, 475-77 (Bankr. C.D. Cal. 2013) (highlighting how "[a] significant body of federal case law exists supporting the view that state laws are preempted when they seek to impair a bankruptcy trustee or debtor from assuming or rejecting executory contracts" and finding state law is preempted when it would "skew the costs" of an assumption/rejection decision and thereby "impair debtors' opportunities to avail themselves of the overarching principles of federal bankruptcy law"). *But see* note 48 *supra*. Additionally, if the act of assumption itself creates a defense for the counterparty that would not exist outside of bankruptcy, then that result is at odds with the concept that assumption operates to place the parties in the prebankruptcy *status quo ante* and further arguably gives the counterparty a prohibited "windfall merely by reason of the happenstance of bankruptcy." *See, e.g.*, *Lewis v. Mfrs. Nat'l Bank*, 364 U.S. 603, 609 (1961) (Douglas, J.). Because *New York Skyline* is ultimately distinguishable, the court need not resolve these complex additional questions today. *See, e.g.*, *Turner v. United States Parole Comm'n*, 810 F.2d 612, 613 n.3 (7th Cir. 1987) (highlighting federal courts' "general duty to avoid deciding unnecessary issues").

[51] As plaintiff notes, a "notwithstanding" clause in a contract, statute, or court order broadly operates to nullify or override conflicting provisions. *See, e.g.*, *Merit Mgmt. Grp. v. FTI Consulting, Inc.*, 138 S. Ct. 883, 893 (2018); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1083 (9th Cir. 2014); *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 817 (3d Cir. 2010).

[52] *Cf. Am. Safety Cas. Ins.*, 162 Wash. 2d at 770-71 (finding city acted equivocally, and thus did not waive any rights, by sending correspondence with general reservations of rights and defenses).

parties' negotiation of the reservations of rights. Simply put, defendants provide no authority indicating that the specific events occurring in the underlying bankruptcy cases constitute ratification or waiver under Washington law, let alone that such a conclusion must be reached when viewing the current record in the light most favorable to plaintiff.[53]

Defendants argue that it is inconsistent with the confirmation order's reservations language for their defenses predicated on ratification or waiver to be stymied by that language. This argument puts the cart before the horse, however; in the moment *before* assumption, defendants would be unable to contend that assumption of the CBA constituted ratification or waiver (because it hadn't happened), which means at that moment there was no extant defense to be preserved or left unimpaired by the reservations. What the reservations do is crystalize the preexisting state of affairs "notwithstanding" assumption of the CBA, confirmation of the plan, or anything else in the confirmation order. While the end result may be that defendants lose access to a *new* defense that might have been colorable absent the reservations, that is not analogous to the impairment of a preexisting defense. The detailed language the parties negotiated to include in the confirmation order effectively serves to negate or sidestep whatever backdrop consequence, if any, might otherwise result under Washington law were the CBA assumed with no reservations.[54]

***Third***, plaintiff is pursuing causes of action that attack the CBA and any attendant transfers and obligations as avoidable fraudulent transactions. If successful, these causes of action could nullify the CBA, including its limitation-

---

[53] The ratification cases defendants cite arose in very different contexts. For example, in *Owen v. Matz*, the allegedly defrauded party chose to enter into favorable amendments to the contract, rather than attempting to rescind the contract, thereby bringing "the case clearly within the principle that when a party claiming to have been defrauded, enters after discovery of the fraud into new arrangements or engagements concerning the subject matter of the contract claimed to have been procured by fraud, he is deemed to have waived any claim for rescission and under certain circumstances for damages." *See* 68 Wash. 2d at 376-77. Here, there has been no amendment to the CBA nor any new engagements between the parties.

[54] It might be that Cerner or its counsel had a different expectation of how the confirmation order's language would eventually interact with the assumption theories. Any such subjective understanding is irrelevant, however, as the plain language contained in the confirmation order (now a final, unappealable order) ultimately determines the outcome, even if some of the parties find that outcome surprising. *Cf. Kravitz v. Samson Energy Co. (In re Samson Res. Corp.)*, 590 B.R. 643 (Bankr. D. Del. 2018) (enforcing release provisions contained in confirmed chapter 11 plan despite a bankruptcy trustee's arguments that "it is simply inconceivable that the Plan would operate to release some or all of these defendants"). Thus far, defendants have not offered a plausible competing interpretation of the confirmation order's text that gives it clear substantive effect or explains exactly what rights were actually reserved notwithstanding anything to the contrary in the confirmation order, specifically including assumption of the CBA pursuant to that order. Simply labeling the generalized reservations "generic" does not render them meaningless or inoperative.

of-liability clause.[55] This, in turn, would remove any constraints the limitation-of-liability clause imposes on plaintiff's ability to recover damages on the other assorted causes of action. Because defendants have not moved for summary judgment regarding the avoidance actions, they have not established a roadblock that necessarily insulates the limitation-of-liability clause as a matter of law.

Allowing all plaintiff's asserted damages to survive summary judgment based on potential knock-on consequences of a successful fraudulent transfer claim vis-à-vis the CBA is the appropriate result here even though some courts have held in other contexts that assumption of an agreement during the bankruptcy case precludes a later avoidance attack related to the same agreement.

In the preference context, these courts typically reason that assumption eliminates the estate representative's ability to satisfy the requirement of Bankruptcy Code section 547(b)(5) (because if the preferential payments had hypothetically not been paid to the defendant, those amounts still would need to be paid in full as part of the cure required by Bankruptcy Code section 365(b)(1)).[56] In the fraudulent transfer context, the case law is less developed, but several bankruptcy courts have concluded that assumption may preclude a fraudulent transfer claim.[57] Even if this court found the latter line of cases persuasive and

---

[55] *See, e.g.*, *United States v. Sims (In re Feiler)*, 218 F.3d 948, 953 (9th Cir. 2000) ("Once avoided, the transaction is a nullity and is treated as if it never happened."); *McRoberts v. Transouth Fin. (In re Bell)*, 194 B.R. 192, 197 (Bankr. S.D. Ill. 1996) (detailing how a consequence of successful avoidance "is nullification of the transfer" and "nullification means that the transfer is retroactively ineffective and that the transferee—here, the defendant creditors—legally acquired nothing through it"); 5 COLLIER ON BANKRUPTCY ¶ 548.10[1] (16th ed. rev. 2022) ("Avoidance is the setting aside or nullification of a transaction. Nullification generally means that the transfer is retroactively ineffective and that the transferee legally acquired nothing as a result of the transfer. In short, the trustee may act as if the transfer had not occurred. If the trustee avoids an obligation, nullification means that the transferee acquired no rights as a result of the transaction and that the trustee need not consider the obligation valid as against the estate." (footnote omitted)).

[56] *See, e.g.*, *Kimmelman v. Port Auth. (In re Kiwi Int'l Air Lines, Inc.)*, 344 F.3d 311, 323 (3d Cir. 2003); *In re Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1173-75 (7th Cir. 1996); *Alvarado v. Walsh (In re LCO Enters.)*, 12 F.3d 938, 943-44 (9th Cir. 1993); *Weinman v. Allison Payment Sys., LLC (In re Centrix Fin., LLC)*, 434 B.R. 880, 887-88 (Bankr. D. Colo. 2010).

[57] *See, e.g.*, *Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC)*, 590 B.R. 211, 270-71 (Bankr. D. Del. 2018); *Paradigm Air Carriers, Inc. v. Tex. Rangers Baseball Partners (In re Tex. Rangers Baseball Partners)*, 521 B.R. 134, 186-87 (Bankr. N.D. Tex. 2014); *In re Centrix Fin., LLC*, 434 B.R. at 888; *Official Comm. for Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.)*, 330 B.R. 67, 76-77 (Bankr. D. Del. 2005); *Vision Metals, Inc. v. SMS DEMAG, Inc. (In re Vision Metals, Inc.)*, 325 B.R. 138, 147 (Bankr. D. Del. 2005), *further opinion on reconsideration*, 327 B.R. 719 (Bankr. D. Del. 2005). Unlike in the preference context, there appears to be no appellate-level authority regarding this issue.

correctly decided as a general matter,[58] the unique context in which assumption occurred here distinguishes those authorities. Once again, the debtors assumed the CBA as part of a broader, negotiated resolution including expansive reservations of rights, not in isolation or without qualification. Among the reservations is an express statement that nothing in the confirmation order (again, including its approval of the CBA's assumption) will "impair, prevent, or otherwise adversely affect any of the Debtors' or Cerner's rights, remedies, claims, and defenses to Vendor Claims." The defined term "Vendor Claims" pointedly includes any and all avoidance actions against defendants.[59] Concluding that assumption of the CBA eliminated otherwise extant avoidance actions would undoubtedly "impair . . . or otherwise adversely affect" the debtors' rights, remedies, and claims. In the face of the operative order's specific language expressly and broadly preserving the viability of the Vendor Claims, the court cannot conclude that assumption of the CBA extinguished any such claims.

*    *    *

For the preceding reasons, plaintiff has multiple paths that, depending on the record ultimately developed at trial, could conceivably result in the entire CBA

---

[58] The rationale behind these decisions generally falls into two camps. The first camp consists of estoppel concepts (usual either judicial or equitable estoppel) whereby the same party cannot simultaneously claim that an agreement is beneficial to the bankruptcy estate while attacking the agreement as a fraudulent transfer. The use of estoppel concepts is always fact- and context-specific, *e.g.*, *In re Kane*, 628 F.3d 631, 638-40 (3d Cir. 2010), and courts applying those concepts recognize that, "[o]f course, assumption of a contract under section 365 of the Bankruptcy Code may not always provide a defense to a fraudulent conveyance action." *See In re Vision Metals, Inc.*, 327 B.R. at 724. The second camp looks to the "law of the case" doctrine, reasoning that if the estate representative satisfied the business judgment test for assumption, then it cannot later establish that the agreement constitutes a fraudulent transaction. But the "law of the case" rationale does not square with the summary nature of the assumption/rejection proceeding mandated by *G.I. Industries* and *Orion Pictures*. *See, e.g.*, *In re Orion Pictures Corp.*, 4 F.3d at 1099 ("In a given case, a bankruptcy court might decide that it would be beneficial for the trustee or debtor-in-possession to assume a certain contract because the court thinks it unlikely that a court would hold that the debtor had breached the contract, and thus assuming the contract would be a good 'business judgment.' This 'business judgment' could turn out to be wrong, however, if a later fact finder in an adversary proceeding decides that the underlying contract was in fact breached. In such a case, the judge's wrong decision is simply an error of business judgment, not legal error."); *In re 611 Sixth Ave. Corp.*, 191 B.R. 295, 300 (Bankr. S.D.N.Y. 1996) ("The bankruptcy court must treat the motion to assume and the adversary proceeding conceptually separate, even if it tries them together. Further, its assumption decision is not a formal ruling on the underlying disputed issues, and thus will receive no collateral estoppel effect. Since the ruling lacks any preclusive effect, another court – ***or even the same bankruptcy court*** – may reach a different conclusion after it tries the underlying dispute[.]" (citations and quotation marks omitted; emphasis added)). Moreover, the "law of the case" rationale simply ignores the potentially important temporal difference between the relevant dates of analysis; something that is a reasonable business decision on a given postposition date may nevertheless have been a poor decision creating an avoidable transaction on an earlier date (depending on the specific available reachback period, perhaps as many as ten years earlier, *see, e.g.*, *Hillen v. City of Many Trees, LLC (In re CVAH, Inc.)*, 570 B.R. 816, 825, 834 (Bankr. D. Idaho 2017)).

[59] *See* note 16 *supra*.

being voided or avoided. The possible viability of these paths means defendants are not entitled to judgment as a matter of law that section 5.7 of the CBA applies and constrains plaintiff's asserted damages.[60]

## SUMMATION

At day's end, defendants have not established an entitlement to summary judgment based on their theories about assumption of the CBA. The court will enter a separate order consistent with this opinion and the court's prior oral ruling regarding the remainder of defendants' motion for partial summary judgment.

---

[60] Plaintiff briefed and argued additional attacks on the applicability and enforceability of section 5.7. Because the points discussed above are sufficient to resolve the pending motion, the court need not – and does not – address the details of plaintiff's additional arguments.